1  Linda J. Linton, Esq. (Counsel for Service)
   (California Bar No. 177821)
2  Linton & Associates, P.C.
3  6900 S. McCarran Blvd., #2040
   Reno, NV  89509
4  Telephone: (775) 333-0881
   Facsimile: (775) 333-0877
5  llinton@lintonlegal.com

6  Douglas S. Burdin, Esq.
   (D.C. Bar No. 434107)
7  Anna M. Seidman, Esq.
   (D.C. Bar No. 417091)
8  Safari Club International
   501 2nd Street N.E.
9  Washington, D. C.  20002
   Telephone: (202) 543-8733
10 Facsimile: (202) 543-1205
11 dburdin@safariclub.org
   aseidman@safariclub.org
12
   Counsel for Plaintiff
13 Safari Club International

14
15          **IN THE DISTRICT COURT FOR THE**
            **EASTERN DISTRICT OF CALIFORNIA**
16

17 SAFARI CLUB INTERNATIONAL          )
18 501 Second St., NE                 )
   Washington, D.C. 20002,            )
19                                    )   Case No. _____
                   Plaintiff,         )
20                                    )
                       v.             )
21                                    )   **COMPLAINT FOR**
                                      )   **DECLARATIVE AND**
22 KAMALA D. HARRIS, in her official  )   **INJUNCTIVE RELIEF**
   capacity as the Attorney General of )
23 California                         )
   1300 "I" Street                    )
24 Sacramento, CA 95814-2919,         )

25 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
   (SAFARI CLUB INTERNATIONAL)

1

1  CHARLTON H. BONHAM, in his            )
2  official capacity as the Director of the   )
   California Department of Fish and         )
3  Wildlife                                         )
   1416 9th Street, 12th Floor                 )
4  Sacramento, CA 95814,                      )
                                                      )
5                 Defendants.                     )
6  _____  )

7  **I.      INTRODUCTION**

8       1.      In this lawsuit, Plaintiff Safari Club International ("Safari Club") challenges the

9  State of California's ban on the importation, transportation, and possession in California of

10 mountain lions hunted outside of California (collectively referred to as "Import Ban").  The

11 Import Ban is unconstitutional under the U.S. Constitution's Commerce Clause (art. I, § 8, cl. 3)

12 and Equal Protection Clause (amend. XIV).  Section 4800 of the California Fish and Game Code

13 makes it "unlawful to take, injure, possess, transport, import, or sell any mountain lion or any

14 part or product thereof," subject to limited exceptions (none of which apply to the importation,

15 transportation, and possession of imported mountain lions).  CAL. FISH & GAME CODE §

16 4800(b)(1).  The Import Ban adversely and significantly harms interstate commerce and serves

17 no legitimate state or local interest.  It discriminates against those persons who want to hunt

18 mountain lions outside of California and import, transfer, and possess any such mountain lions in

19 California.  In contrast, those who hunt other species outside California, including some

20 protected species, are permitted to import, transfer, and possess them in California.  The

21 enforcement of the Import Ban under color of state law by defendants Kamala D. Harris and

22 Charlton H. Bonham ("State Defendants") also violates 42 U.S.C. § 1983.  In this lawsuit, Safari

23

24

25 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
   (SAFARI CLUB INTERNATIONAL)

2

Club does not challenge Section 4800's ban on the taking, injuring, possessing, transporting, or selling of mountain lions hunted within the State of California, or the import ban as it might apply to live mountain lions.

2.      Mountain lions (genus Puma) are not an endangered or threatened species under the Federal Endangered Species Act.  Although California designates the mountain lion as a "specially protected mammal," on information and belief, the mountain lion is not protected as an endangered or threatened species (or comparable status) under any state law.  In fact, in many states and foreign nations, the mountain lion is a game animal and is managed through regulated hunting.  Many other states and countries permit the hunting of mountain lions.  But for the Import Ban, residents of California (and others) could hunt mountain lions in other states and countries and import into, transport and possess within California those legally hunted mountain lions, as they can for numerous other game animals, birds, and fish.

3.      In 1990, California voters enacted by initiative Proposition 117, the California Wildlife Protection Act of 1990, which includes the Import Ban and other provisions related to mountain lions.  *See* CAL. FISH & GAME CODE § 4800 *et seq.*  Section 4800 does not prohibit the possession or sale of mountain lions or mountain lion parts if the owner can demonstrate that the mountain lion or part was in his or her possession on June 6, 1990.  *Id.*  In 2011, the legislature amended Section 4800 to allow the possession of mountain lion parts if all the following conditions are met: (1) the parts are being displayed for scientific or educational purposes at a public museum or a public or private postsecondary institution; (2) the mountain lion was taken within California under the exceptions to the take prohibition; and (3) the Department of Game and Fish authorizes the possession.  *Id.* § 4800(b)(3).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

3

4.      Proposition 117 included findings and declarations related to the purpose behind the initiative.  The findings and declarations almost exclusively relate to concerns over adverse impacts to wildlife habitats and the need to protect, enhance, and restore the wildlife habitats (including specifically for mountain lions) and fisheries.  CAL. FISH & GAME CODE § 2780. Proposition 117 also finds and declares that "wildlife and fisheries conservation is in the public interest," *id.* § 2781, but the findings and declarations do not mention the need to ban the hunting of mountains lions within California, much less any purpose behind banning the importation, transportation, and possession of mountain lions hunted outside of California.

5.      Numerous members of Safari Club desire to either (1) import into, transport within, and possess within California mountain lions that they have already legally hunted outside of California; (2) participate in already planned mountain lion hunts outside of California in the near future and be able to import into, transport within, and possess within California any mountain lions harvested in those hunts; or (3) participate in mountain lion hunts outside of California with the intent of importing any harvested mountain lion into California (and make definite plans to do so as soon as possible after the lifting of the ban on importation, transportation, and possession of mountain lions hunted outside of California).  Other members of Safari Club, both within California and outside of California, would benefit from a lifting of the Import Ban in their guiding, taxidermy, and other commercial activities related to mountain lion hunting outside of California.

6.      On information and belief, other residents of California, including both members of Safari Club and persons who are not members of Safari Club, have similar desires, would

make similar plans to hunt mountain lions outside of California, and would benefit commercially from a lifting of the Import Ban.

7.      The Import Ban seriously interferes with interstate commerce, including by discouraging California residents from travelling to other states, where they would spend money in pursuit of a mountain lion hunt; by preventing the movement of harvested mountain lions into California, where they would generate income through taxidermy, transportation, and related activities; and by flatly prohibiting a legally obtained article of commerce from entering the state. A properly taxidermied or handled mountain lion poses no threat to the safety, health, or welfare of the people or resources of California.  Numerous other harvested animals enter California, including from other countries, and are transported and possessed throughout the state without harm or risk to the safety, health, or welfare of the people or resources of California.

8.      The Import Ban singles out and discriminates against the group of hunters who wish to hunt mountain lions out of state and import into, transfer and possess within California their harvested mountain lions.  Hunters of other species, including those which are not protected under state or federal law (*e.g.,* are not endangered), are not subject to a complete ban on the importation, transportation, and possession of their harvested animal in California.  Hunters of some other species which are protected under state or federal law (*e.g.,* are listed as threatened or endangered) are not subject to a complete ban on the importation, transportation, and possession of their harvested animal in California.

II.      **JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action because Safari Club and members of Safari Club are currently adversely affected and aggrieved by the Import Ban, which

is enforced by the State Defendants, and will continue to be harmed by it unless this Court

declares it illegal and enjoins enforcement of it.  Safari Club has standing to assert these claims

in its own right and on behalf of its members who desire to import into, transport and possess

within the State of California mountain lions legally hunted outside of California.  This Court has

jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction).

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, which provides that:

(b) Venue in general.--A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or ….

The State Defendants' official places of business are located in this district.  A substantial part of

the events giving rise to these claims occurred in this district.

11.     This Court can grant declarative and injunctive relief pursuant to 28 U.S.C. §

2201 ("In a case of actual controversy within its jurisdiction, …  any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought.")

and 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or

decree may be granted, after reasonable notice and hearing, against any adverse party whose

rights have been determined by such judgment.").

## III.    PARTIES

12.     Safari Club is a nonprofit corporation incorporated in the State of Arizona,

operating under § 501(c)(4) of the Internal Revenue Code, with its principal office and place of

6

business in Tucson, Arizona.  Safari Club maintains an office in Washington, D.C.  Its

membership includes approximately 50,000 individuals from the United States and many of the

countries around the world.  Safari Club has approximately 5,031 members in California.  Safari

Club has 13 chapters in California.  Safari Club's missions include the conservation of wildlife,

protection of the hunter, and education of the public concerning hunting and its use as a

conservation tool.  Advocating for enhanced opportunities to hunt and the ability to enjoy the

fruits of hunts, including by being able to import, transport, and possess mountain lions legally

hunted outside of California, advances and is germane to Safari Club's missions.

13.     Safari Club carries out its conservation mission in part through its sister

organization, Safari Club International Foundation ("SCI Foundation").  The SCI Foundation is a

nonprofit IRC § 501(c)(3) corporation.  Its missions are to fund and direct worldwide programs

dedicated to wildlife conservation and outdoor education.  More specifically, the conservation

mission of SCI Foundation is to conduct and support scientific and technical studies in the field

of wildlife conservation, to assist in the design and development of scientifically sound wildlife

programs for the management of wildlife and sustainable-use hunting, and to demonstrate the

constructive role that hunting and hunters play in the conservation of wildlife and in preserving

biodiversity worldwide.

14.     Safari Club and the SCI Foundation are organizations which promote the

principle and practice of sustainable use conservation.  Safari Club's and Safari Club members'

interests include the sound management and conservation of wildlife, including mountain lions,

in the United States and around the world.  The ability of hunters to harvest animals and freely

transport those animals between and within states advances sustainable use conservation by

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

encouraging more hunters to hunt animals that state and other governmental entities manage and conserve.

15.     Safari Club members have successfully hunted mountain lions outside of California and wish to import their sport-hunted mountain lions into California.  Safari Club members have definite plans to hunt mountain lions outside of California in the near future and wish to import their sport-hunted mountain lions into California if successful in their hunt. Safari Club members desire to hunt mountain lions outside of California and import their sport-hunted mountain lions into California but have not made plans to do so because of the Import Ban.  These members also desire to transport and possess within California any mountain lion hunted outside of California.  Other Safari Club members are outfitters and guides who would benefit from providing more mountain lion hunts outside of California to California residents (many of whom decide not to purchase such hunts because of the Import Ban).

16.     Safari Club possesses sufficient interests in the subject matter of this litigation to establish standing.  Safari Club and Safari Club members have suffered concrete and ongoing injury in fact caused by the Import Ban.  A court ruling declaring the Import Ban unconstitutional and illegal, setting aside the Import Ban, and enjoining enforcement of the Import Ban would redress those injuries by allowing Safari Club members to import mountain lions hunted outside of California and to transport and possess them within California.  Members of Safari Club would have standing to bring this lawsuit in their own right.  Overturning the Import Ban so that Safari Club members and others can import any legally hunted mountain lion into the state and transport and possess that mountain lion within the state is germane to Safari

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

8

Club's purposes.  The claims Safari Club has asserted in this Complaint and the relief it has requested do not require the participation of individual Safari Club members in this lawsuit.

17.    Defendant Kamala D. Harris is the Attorney General of California.  She is sued in her official capacity.  She is responsible for enforcing and directing others to enforce the laws of California, including through arresting and prosecuting any person found to be in violation of the Import Ban.  Cal. CONST. art. V., § 13; *see, e.g.,* CAL. GOV'T CODE §§ 12511, 12550.

18.    Defendant Charlton H. Bonham is the Director of the California Department of Fish and Wildlife.  He is sued in his official capacity.  He is responsible for enforcing the game laws of California, including the Import Ban, and preventing any person, including Safari Club members, from importing, transporting, or possessing a mountain lion hunted outside of California.  *See* CAL. FISH & GAME CODE §§ 700, 702, 704.  Within his department and under his authority are "Wildlife Officers," also known as "Game Wardens."  The Game Wardens have statewide jurisdiction and their primary function is to enforce the Fish and Game Code, including the Import Ban.

## IV.    LEGAL BACKGROUND

### A.    The Import Ban

19.    The voters in California enacted the Import Ban in 1990 as part of a larger initiative measure – Proposition 117.  Proposition 117 primarily concerned the establishment, funding, and use of the "Habitat Conservation Fund" ("Fund"). The purpose of the Fund was to acquire various types of habitat.  CAL. FISH & GAME CODE § 2786.  Proposition 117 requires that the State spend no less than $30,000,000 per year on habitat conservation and related actions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

*See id.* § 2796.  The only part of Proposition 117 which does not concern habitat conservation is Chapter 10, which deals with the mountain lion and contains the Import Ban.  *Id.* §§ 4800-4809.

20.     The Import Ban makes it unlawful to, among other things, import mountain lions into California, and transport or possess within California a mountain lion hunted outside of California.  *Id.* § 4800.  There are no exceptions to these prohibitions for mountain lions hunted outside of California.

21.     The two findings and declaration sections of Proposition 117 focus almost exclusively on the need to protect the habitats and ranges of California's fish and wildlife.  *Id.* §§ 2780-2781.  Neither of these two sections mentions the ban on mountain lion hunting, importation, transportation, or possession.  Neither of these two sections provides any justification for banning the importation, transportation, or possession of mountain lions hunted outside of California.  *Id.*  Banning importation and discouraging the hunting of mountain lions outside of California by California residents does not in any way enhance or support habitat conservation in California.

22.     Whether or not Safari Club agrees with this conclusion, the State, here through the voter initiative process, could conclude that taking (killing), injuring, possessing, transporting, or selling of mountain lions hunted within California serves the purpose of managing the individual animals and the species within California.  Banning the importation of mountain lions parts from outside of California, including all U.S. states and foreign countries, does not serve the purpose of managing the individual animals and the species within California.

23.     The intent behind passage of the Import Ban appears to have been to discourage California residents from travelling to other states to hunt mountain lions.  It would have been

10

reasonable to assume in 1990 that many California hunters would not undertake the costs and effort of hunting mountain lions outside of California if they could not import, transport, and possess any harvested mountain lion.  The Import Ban has achieved this goal.  Since the passage of the Import Ban in 1990, numerous Safari Club members in California have had an interest in hunting mountain lions outside of California but have chosen not to undertake such a hunt because of the Import Ban.  Discouraging the hunting of mountain lions outside of California by California residents serves no legitimate state interest.

24.     Section 4800 allows a person to continue to possess a mountain lion which was in that person's possession before June 6, 1990.  To enforce the possession and transportation bans, the law assumes that law enforcement officers, including those under the jurisdiction of the State Defendants, possess the ability to ascertain when a mountain lion in someone's possession was first in that person's possession – before or after June 6, 1990.  The kinds of proof required to make this showing are similar to the proof a law enforcement officer would need to generate to assert a mountain lion was hunted outside of California.  In addition, tags or other permanent markers placed on any mountain lion hunted outside of California before importation into California would allow law enforcement officers to make this determination.

25.     State action, such as enforcing the Import Ban, is subject to the U.S. Constitution's Commerce Clause and Equal Protection Clause through the Supremacy Clause and any state law found to violate the Commerce Clause or Equal Protection Clause must be set aside and made unenforceable.  *See, e.g.,* U.S. CONST. art. VI, cl. 2.

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

### B.    U.S. Constitution - Commerce Clause

26.    The Commerce Clause of the U.S. Constitution provides in part the authority "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; ...."  U.S. CONST. art. I, § 8, cl. 3.  "Although the Clause thus speaks in terms of powers bestowed upon Congress, the Court long has recognized that it also limits the power of the States to erect barriers against interstate trade."  *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35 (1980).  This principle is sometimes referred to as the "dormant Commerce Clause."  To determine whether a state action violates the Commerce Clause, the courts conduct the following inquiry:

> Under that general rule, we must inquire (1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so, (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce. The burden to show discrimination rests on the party challenging the validity of the statute, but "[w]hen discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake."

*Hughes v. Oklahoma,* 441 U.S. 322, 336 (1979), *quoting Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 353 (1977).  "All objects of interstate trade merit Commerce Clause protection; none is excluded by definition at the outset."  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622 (1978).

27.    Hunters travelling between states affect interstate commerce, and wildlife, once reduced to possession by the hunter (or trapper or angler), becomes an article of interstate

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

commerce.  *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993-95 (9th Cir. 2002); *Hughes v. Oklahoma*, 441 U.S. 322, 339 (1979).

### C.   U.S. Constitution - Equal Protection Clause, Fourteenth Amendment

28.   The U.S. Constitution prohibits the states from denying any person the equal protection of the laws.  U.S. CONST. amend. XIV ("Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.").  This amendment directly applies to the States, including the State Defendants.

29.   The Supreme Court has explained in general that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996) (striking Colorado law discriminating against homosexuals).  The Import Ban does not involve a fundamental right or suspect class, so the "rational relation" test applies.

### D.   42 U.S.C. § 1983 – Constitutional Violations Under Color of State Law

30.   A federal statute provides a civil remedy for violations of federal constitutional law under the color of state law.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .”).

31.     Defendants Harris and Bonham are “persons” under § 1983 because Safari Club is suing them for prospective declaratory and injunctive relief.  “A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because ‘official-capacity actions for prospective relief are not treated as actions against the State.’” *Will v. Mich. Dep’t of State Police*, 491 U.S. 58, 71 n.10 (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985); *Ex parte Young,* 209 U.S. 123, 159-60 (1908)).  Safari Club is not bringing a Section 1983 claim for monetary damages and is not bringing any claim directly against the State of California.

**V.     FACTUAL BACKGROUND**

32.     As explained on the California Department of Fish and Wildlife website, “Mountain lions are not threatened nor endangered in California. In fact, the lion population is relatively high in California and their numbers appear to be stable. Mountain lions are legally classified as ‘specially protected species’. This has nothing to do with their relative abundance and does not imply that they are rare. … More than half of California is prime mountain lion habitat. Generally speaking, mountain lions can be found wherever deer are present, since deer are a mountain lion's main food source. Foothills and mountains and [sic] most suitable mountain lion habitat, while valleys and deserts are considered unsuitable.”

http://www.dfg.ca.gov/wildlife/lion/lion_faq.html (Updated 12/07).

33.     Since the effective date of the California Wildlife Protection Act of 1990, Safari Club members and others have been barred from importing legally hunted mountain lions into

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

14

California.  Since this same date, Safari Club members and others have been barred from transporting and possessing within California any mountain lion hunted outside of California.

34.     Residents of California can hunt mountain lions in the following Western states: Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Washington, and Wyoming. On information and belief, residents of California can hunt mountain lions in several other states in the United States.  Residents of California can hunt mountain lions in other countries, including but not limited to Argentina and Mexico.  Federal law does not prohibit the importation into the United States of mountain lions legally hunted in foreign countries if all permitting or other requirements are satisfied.  On information and belief, mountain lions legally hunted in any state in the United States can be imported into, and transported and possessed within, every state and territory in the United States except California.

35.     Some Safari Club members have already successfully hunted mountain lions outside of California, wish to import their sport-hunted mountain lions into California and wish to transport and possess them within California.

36.     Other Safari Club members have definite plans to hunt mountain lions outside of California in the near future, wish to import any harvested animal into California and wish to transport and possess any harvested animal within California.

37.     Numerous other Safari Club members desire to hunt mountain lions outside of California and (if they are successful) import any harvested animal into California, and transport and possess any harvested animal within California.  Some of these members have already hunted mountain lions outside of California but were not able to harvest a mountain lion and wish to try again.  Others have been offered the opportunity to hunt a mountain lion outside of

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

California but turned down the invitation because of the inability to import, transport, and possess any harvested mountain lion parts in California.  All of these members would make definite plans to hunt mountain lions in the near future and import, transport, and possess any harvested animal in California if the Import Ban were lifted.  Some of these members have already contacted outfitters and guides about possible mountain lion hunts outside of California.  Others Safari Club members have researched the types of tags, equipment, and travel plans they would have to make.

38.  Other Safari Club members are outfitters and guides who would benefit from selling mountain lion hunts outside of California to California residents who would purchase such hunts if the Import Ban were not in place.  The Import Ban harms these individuals and their companies by reducing the amount of commerce they can conduct and the market for their services.

39.  Safari Club holds an annual convention in January or February.  At these conventions, Safari Club holds auctions for hunting opportunities (and other things associated with hunting), including for mountain lion hunts outside of California.  Safari Club members who are residents of California have decided not to bid on these auction items in the past because of their inability to import any harvested mountain lion into California.  Safari Club's 2015 convention will include at least one auction item for a mountain lion hunt outside of California.  The decision by California residents not to bid on these auction items due to the Import Ban reduces the value of these auction items and the revenue which Safari Club receives.

40.  For all Safari Club members interested in mountain lion hunting, being able to import, transport, and possess any legally hunted mountain lion in California is very important.

16

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

California is their home state where they want to display their mountain lions in their homes or offices.  Possessing the mountain lion from a successful hunt means many things to hunters, including a reminder of the experience, the difficulty of the hunt, and the persons who shared the experience.  Particularly for older hunters, the taxidermied mountain lion can be a reminder of hunts which the person may not be able to undertake again.  For the hunter, it also represents respect for the animal hunted.  Placing restrictions on the hunter's ability to enjoy his or her sport-hunted mountain lion, including a ban on importation, transportation, and possession, discourages hunters from hunting that species.

## VI.    CLAIMS FOR RELIEF

### First Claim for Relief
### Violation of the U.S. Constitution Commerce Clause
### (Art. I, § 8, cl. 3)

41.    Safari Club realleges and incorporates by reference all the allegations preceding the Claims for Relief section of this Complaint, as though fully set forth below.

42.    The Import Ban violates the Commerce Clause of the U.S. Constitution.

43.    Once harvested, a mountain lion hunted outside of California becomes the personal property of the hunter and an article of commerce.

44.    The harvested mountain lion can be taxidermied, which can cost significant amounts of money.  But for the Import Ban, at least some California residents who hunt mountain lions outside of California would transport their mountain lion into California for taxidermy work.  Those who choose to have the taxidermy work done outside of California would incur transportation costs in shipping or moving the sport-hunted mountain lion into California.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

45.     The Import Ban discourages many California residents from booking mountain lion hunts outside of California.  Undertaking a mountain lion hunt outside of California would require the hunter to buy ammunition, arrange transportation, obtain out of state licenses (which are generally higher than in-state licenses), secure accommodations, and buy food and other items.  In some cases, the California resident would retain the services of a professional outfitter or guide for a mountain lion hunt outside of California.

46.     The natural and intended consequence of the Import Ban is to discourage California residents from travelling outside of California to hunt mountain lions.  The natural and intended consequence of the Import Ban also is to bar California residents from bringing any harvested mountain lion into the state, either as a fully taxidermied product or as a raw product for taxidermy or related work within California.

47.     The adverse impacts on interstate commerce outweigh any local interests the State Defendants might claim is advanced by the Import Ban.  The State Defendants have less restrictive means of accomplishing any local interest they might claim is advanced by the Import Ban.

48.     The Import Ban harms Safari Club and its members who desire to hunt mountain lions outside of California and import into and transport and possess within California their sport-hunted mountain lions, but are prohibited from doing so.  The Import Ban also harms Safari Club's and Safari Club members' interests in sustainable use conservation and proper management of wildlife by discouraging Safari Club members in California from hunting mountain lions outside of California and preventing any Safari Club members who do harvest a mountain lion outside of California from bringing their mountain lion into California.

18

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

Defendants Harris and Bonham cause these injuries by enforcing the Import Ban.  Declaring unconstitutional and setting aside the Import Ban and enjoining the enforcement of it would redress these injuries.

**Second Claim for Relief**
**Violation of the U.S. Constitution Equal Protection Clause**
**(Amend. XIV)**

49.     Safari Club realleges and incorporates by reference all the allegations preceding the Claims for Relief section of this Complaint, as though fully set forth below.

50.     The Import Ban violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

51.     The Import Ban singles out and discriminates against the group of hunters who wish to legally hunt mountain lions out of state and import into, and transfer and possess within California their harvested mountain lion.  Hunters of other species which are not protected under state or federal law (and hunters of some protected animals) are not subject to a complete ban on the importation, transportation, and possession of their harvested animals in California.

52.     The Import Ban arbitrarily and without justification denies the group of hunters who wish to hunt mountain lions outside of California the ability to import into, and transport and possess any harvested mountain lion within California, while allowing others to engage in the hunting of numerous other protected and unprotected species without restrictions as to importation, transportation, and possession within California.  The only difference between these two groups of hunters is the target of the hunt and the state's desire to discourage mountain lion hunting outside of California.

19

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

53.     The Import Ban harms Safari Club and its members by prohibiting those who desire to hunt mountain lions outside of California from importing, transporting, and possessing their sport-hunted mountain lions in California.  The Import Ban also harms Safari Club's and Safari Club members' interests in sustainable use conservation and proper management of wildlife by discouraging Safari Club members in California from hunting mountain lions outside of California and preventing any Safari Club members who do harvest a mountain lion outside of California from bringing their mountain lion into California.  Defendants Harris and Bonham cause these injuries by enforcing the Import Ban.  Declaring unconstitutional, setting aside the Import Ban and enjoining the enforcement of it would redress these injuries.

### Third Claim for Relief
### Liability Under 42 U.S.C. § 1983

54.     Safari Club realleges and incorporates by reference all the allegations preceding the Claims for Relief section of this Complaint, as though fully set forth below.

55.     Defendants Harris and Bonham are liable under 42 U.S.C § 1983 because enforcement of the Import Ban violates the United States Constitution's Commerce Clause and Equal Protection Clause.  The Import Ban deprives members of Safari Club of guaranteed constitutional rights.  Defendants Harris and Bonham, in enforcing the Import Ban, are acting under color of state law and in their official capacities.  They are enforcing laws of the State of California and any applicable regulations.  Their actions are the proximate cause of the deprivation of the federal constitutional rights of Safari Club members.

56.     The Import Ban harms Safari Club and its members who desire to hunt mountain lions outside of California and import into and transport and possess within California their

20

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

sport-hunted mountain lions, but are prohibited from doing so.  The Import Ban also harms Safari Club's and Safari Club members' interests in sustainable use conservation and proper management of wildlife by discouraging Safari Club members in California from hunting mountain lions outside of California and preventing any Safari Club members who do harvest a mountain lion outside of California from bringing their mountain lion into California. Defendants Harris and Bonham cause these injuries by enforcing the Import Ban.  Declaring unconstitutional and setting aside the Import Ban and enjoining the enforcement of it would redress these injuries.

## VII.   PRAYER FOR RELIEF

For the reasons stated above, Safari Club respectfully requests that the Court grant the following relief:

A.   Declare that the Import Ban and enforcement of it violate the Commerce Clause of the United States Constitution.

B.   Declare that the Import Ban and enforcement of it violate the Equal Protection Clause of the United States Constitution.

C.   Declare that Defendants Harris and Bonham, through enforcing the Import Ban under color of state law, are liable under 42 U.S.C. § 1983.

D.   Set aside the Import Ban and any other applicable laws and regulations that implement the Import Ban.

E.   Enjoin the State Defendants from enforcing the Import Ban and any other applicable laws and regulations which implement the Import Ban.

21

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

F.      Award Safari Club the costs of litigation, including reasonable attorney fees and costs, including under 42 U.S.C. § 1988 and any other applicable federal law.

G.      Award Safari Club such other relief that is just and proper.

Dated this 6th day of August, 2014.

Respectfully submitted,

/s/Linda J. Linton_____
Linda J. Linton, Esq.
(California Bar No. 177821)
Linton & Associates, P.C.
6900 S. McCarran Blvd., #2040
Reno, NV  89509
Telephone: (775) 333-0881
Facsimile: (775) 333-0877
llinton@lintonlegal.com

Douglas S. Burdin, Esq.*
(D.C. Bar No. 434107)
Anna M. Seidman, Esq.*
(D.C. Bar No. 417091)
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org
aseidman@safariclub.org

Counsel for Plaintiff
Safari Club International

* Pro Hac Vice Application to be filed

22

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)