1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  ALEXANDRA ROBERT GORDON, State Bar No.
   207650
4  Deputy Attorney General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 703-5509
6    Fax:  (415) 703-5480
     E-mail:  Alexandra.RobertGordon@doj.ca.gov
7  *Attorneys for Defendants*
   *Attorney General Harris and Director Bonham*

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE EASTERN DISTRICT OF CALIFORNIA

11                   SACRAMENTO DIVISION

12

13
   **SAFARI CLUB INTERNATIONAL,**          2:14-cv-01856-GEB-AC
14
                          Plaintiff,
15
             v.                            **DEFENDANTS' NOTICE OF MOTION
16                                         AND MOTION TO DISMISS PURSUANT
                                           TO FEDERAL RULE OF CIVIL
17 **KAMALA D. HARRIS, in her official     PROCEDURE 12(b)(6)**
   capacity as the Attorney General of
18 California; CHARLTON H. BONHAM, in       Date:         November 17, 2014
   his official capacity as the Director of the   Time:         9:00 a.m.
19 California Department of Fish and Wildlife,   Courtroom:    10
                                           Judge:        Hon. Garland E. Burrell, Jr.
20                        Defendants.      Action Filed:  August 7, 2014

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 2

INTRODUCTION ...................................................................................................................... 2

BACKGROUND ........................................................................................................................ 2

    I.     Relevant Law and Procedural History ............................................................... 2

    II.    The Allegations of the Complaint .................................................................... 4

ARGUMENT ............................................................................................................................ 5

    I.     Legal Standard ................................................................................................. 5

    II.    The Complaint Fails to State a Claim ............................................................... 6

        A.    Plaintiff's Commerce Clause Claim Fails ................................................. 6

            1.    Plaintiff has not alleged discrimination against interstate commerce ................................................................................... 8

            2.    Plaintiff has not alleged that the Mountain Lion Prohibition regulates extraterritorially ................................................. 8

            3.    *Pike* balancing is not required, but even if it were, the Mountain Lion Prohibition serves a legitimate local purpose and its benefits outweigh any burden on interstate commerce ................................................................................. 10

        B.    Plaintiff's Equal Protection Claim Fails ................................................. 14

        C.    Plaintiff's 42 U.S.C. Section 1983 Claim Fails ....................................... 16

CONCLUSION ....................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .................................................................................. passim

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013) ................................................................ 8, 10, 11

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ....................................................................................... 1, 5, 6

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
    476 U.S. 573 (1986) ............................................................................................... 7

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*
    511 U.S. 383 (1994) ........................................................................................... 7, 11

*Chinatown Neighborhood Ass'n v. Harris*
    12-CV-03759-WHO, 2014 WL 1245047 (N.D. Cal. Mar. 25, 2014) ............ passim

*City of Cleburne v. Cleburne Living Center*
    473 U.S. 432 (1985) ......................................................................................... 14, 15

*CTS Corp. v. Dynamics Corp. of America*
    481 U.S. 69 (1987) ................................................................................................. 13

*Daniels-Hall v. National Educ. Ass'n*
    629 F.3d 992 (9th Cir. 2010) ............................................................................... 6

*Exxon Corp. v. Governor of Md.*
    437 U.S. 117 (1978) ............................................................................................... 11

*FCC v. Beach Communications, Inc.*
    508 U.S. 307 (1993) ............................................................................................... 16

*Fields v. Legacy Health Sys.*
    413 F.3d 943 (9th Cir. 2005) ........................................................................... 14, 15

*Freedom Holdings Inc. v. Spitzer*
    357 F.3d 205 (2d Cir. 2004) ................................................................................. 9

*General Motors Corp. v. Tracy*
    519 U.S. 278 (1997) ............................................................................................... 10

*Gerling Global Reinsurance Corp. of Am. v. Low*
    240 F.3d 739 (9th Cir. 2001) ............................................................................... 9

ii

*Grutter v. Bollinger*
539 U.S. 306 (2003) ......................................................................... 14

*Healy v. Beer Inst.*
491 U.S. 324 (1989) ........................................................................ 7, 9

*Heller v. Doe*
509 U.S. 312 (1993) ......................................................................... 15

*King v. Christie*
981 F. Supp. 2d 296 (D.N.J. 2013) .................................................. 12

*Legislature v. Eu*
54 Cal.3d 492 (Cal. 1991) ......................................................... 13, 15

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
416 F.3d 940 (9th Cir. 2005) .............................................................. 6

*Maine v. Taylor*
477 U.S. 131 (1986) ........................................................................... 7

*Minnesota v. Clover Leaf Creamery Co.*
449 U.S. 456 (1981) ........................................................................... 9

*Mourning v. Family Publ'n Serv., Inc.*
411 U.S. 356 (1973) ......................................................................... 16

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) .................................................. passim

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
272 F.3d 104 (2d Cir. 2001) ............................................................. 12

*Nat'l Paint Coatings Ass'n v. City of Chicago*
45 F.3d 1124 (7th Cir. 1995) ........................................................... 12

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) .............................................................. 5

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*
511 U.S. 93 (1994) ............................................................................. 8

*Pacific Nw. Venison Producers v. Smitch*
20 F.3d 1008 (9th Cir. 1994) ............................................. 8, 11, 13, 16

## TABLE OF AUTHORITIES
### (continued)

Page

*Pharmaceutical Research and Mfrs. of America v. County of Alameda*
  No. 13-16833, 2014 WL 4814407 (9th Cir. Sept. 30, 2014) ................................... 9

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) ........................................................................... 10, 12

*PTI, Inc. v. Philip Morris, Inc.*
  100 F. Supp. 2d 1179 (C.D. Cal. 2000) ............................................... 13

*Reynolds v. Buchholzer*
  87 F.3d 827 (6th Cir. 1996) ................................................................. 8

*Robertson v. Dean Witter Reynolds, Inc.*
  749 F.2d 530 (9th Cir. 1984) ............................................................... 5

*Romer v. Evans*
  517 U.S. 620 (1996) ........................................................................... 14

*Teixeira v. Cty. of Alameda*
  No. 12-cv-03288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ................. 15

*UFO Chuting of Hawaii, Inc. v. Smith*
  508 F.3d 1189 (9th Cir. 2007) ............................................................. 12

*United States v. Carolene Products Co.*
  304 U.S. 144 (1938) ........................................................................... 15

*Van Buskirk v. Cable News Network, Inc.*
  284 F.3d 977 (9th Cir. 2002) ............................................................... 6

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009) ............................................................... 6

STATUTES

California Fish and Game Code
  § 1801 ................................................................................................ 13
  § 2780 ..................................................................................... 2, 12, 15
  § 4800 ........................................................................................ passim

California Stats. 1963, Chapter 2022
  § 1 ....................................................................................................... 3

California Stats. 1967, Chapter 196
  § 1 ....................................................................................................... 3
  § 2 ....................................................................................................... 3

iv

United States Code, Title 42
§ 1983 ................................................................................................. 1, 4, 16

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Commerce Clause, Article I, § 8, Clause 3 ...................................... passim
Equal Protection Clause, Fourteenth Amendment .......................... passim

**COURT RULES**

Federal Rule of Civil Procedure
rule 12 ................................................................................................ 1, 2, 5, 6

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on November 17, 2014 at 9 a.m., or as soon thereafter as the matter may be heard before the Honorable Garland E. Burrell, Jr. in Courtroom 10 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, Defendants Attorney General Kamala D. Harris and Director of the California Department of Fish and Wildlife Charlton H. Bonham will move this Court to dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion to dismiss is made on the following grounds: (1) the Complaint fails to satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and (2) the Complaint fails to state a claim upon which relief can be granted under the Commerce and Equal Protection Clauses and/or 42 U.S.C. section 1983. This motion is based on this Notice, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the papers and pleadings on file in this action, and upon such matters as may be presented to the Court at the time of the hearing.

Dated: October 6, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

*/s/ Alexandra Robert Gordon*

ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants Attorney General
Harris and Director Bonham*

1

## INTRODUCTION

To protect mountain lions and promote the conservation and sustainability of its wildlife, California Fish and Game Code section 4800 makes it illegal to kill, injure, possess, import, or sell a mountain lion or mountain lion parts in California. While plaintiff does not appear to challenge the ban on the killing, injuring, and possession of mountain lions killed in California, it alleges that the prohibition on importation, transportation, and possession of mountain lion and mountain lion parts legally hunted in other states and jurisdictions violates the Commerce and Equal Protection Clauses of the U.S. Constitution. As a threshold matter, the Complaint should be dismissed in its entirety because plaintiff does not allege sufficient facts in support of its constitutional claims. Rather, the Complaint is comprised of little more than boilerplate legal conclusions that fail to satisfy the pleading burden under Federal Rule of Civil Procedure 12(b). Moreover, and of greater significance, the challenged statute does not implicate the Commerce or Equal Protection Clauses, let alone violate them. California Fish and Game Code section 4800 is facially neutral, does not discriminate in favor of in state interests or against out of state interests, does not regulate extraterritorially, and is rationally related to a legitimate governmental interest in protecting wildlife and the environment. Because plaintiff cannot demonstrate that the law is unconstitutional, it cannot state a claim upon which relief can be granted. Accordingly, defendants Attorney General Kamala D. Harris and Director Charlton H. Bonham respectfully request that this Court dismiss the Complaint with prejudice.

## BACKGROUND

### I. RELEVANT LAW AND PROCEDURAL HISTORY

The Wildlife Protection Act of 1990, California Fish & Game Code sections 2780 et seq., was approved by the voters as Proposition 117 on June 5, 1990. The measure made a number of findings, including that: (1) the "[p]rotection, enhancement, and restoration of wildlife habitat and fisheries are vital to maintaining the quality of life in California"; (2) "there is an urgent need to protect the rapidly disappearing wildlife habitats that support California's unique and varied wildlife resources"; and (3) wildlife habitat, specifically including mountain lion habitat, "is

disappearing rapidly"; and (4) "natural habitat must be preserved to maintain the genetic integrity of California's wildlife."  Prop. 117 § 2(a) & (d).  In keeping with these findings and with the State's policy of preserving and conserving all species of wildlife, and to stop the "cruel and unnecessary" slaughter of mountain lions,[1] Proposition 117 added California Fish & Game Code sections 4800 et seq. (the Mountain Lion Prohibition), which designate the mountain lion as a "specially protected mammal" and make it illegal to "take, injure, possess, transport, import, or sell any mountain lion or any part thereof"  Cal. Fish & Game Code § 4800.  Violation of the Mountain Lion Prohibition is a misdemeanor punishable by imprisonment of up to one year, or a fine of up to $10,000, or a combination of imprisonment and a fine.  *Id.* § 4800(c).  The Mountain Lion Prohibition does not apply to any mountain lion or part or product thereof that an owner can demonstrate was in his or her possession on June 6, 1990.  *Id.* § 4800(b)(2).  The Mountain Lion Prohibition also contains two exceptions:  one for an agency taking of a mountain lion deemed an "imminent threat to public health or safety" and another for citizens to acquire a permit to take a mountain lion that has "injured, damaged, or destroyed" livestock or other property.  *Id.* § 4801.  The legislature amended the Mountain Lion Prohibition in 2011 to allow for the possession of mountain lion parts where all of the following requirements are met:  (1) the mountain lion carcass or carcass part or product is prepared or being prepared for display, exhibition, or storage, for a bona fide scientific or educational purpose; (2) the mountain lion was otherwise taken in accordance with the Mountain Lion Prohibition and/or other applicable law; and (3) the Department of Fish & Wildlife authorizes the possession.  *Id.* § 4800(b)(3).

On August 6, 2014, plaintiff filed its Complaint for Declarative and Injunctive Relief ("Complaint").  Plaintiffs have sued Kamala D. Harris, in her official capacity as the Attorney General of California and Charlton H. Bonham, in his capacity as the Director of the California

---

[1] California operated under a bounty system until the 1960s.  Between 1907 and 1963, bounty hunters in California killed more mountain lions than in any other state, approximately 12,500.  In 1969, the species was designated a game mammal, a designation it held until recreational hunting of lions was outlawed in 1972.  In response to proposed hunting seasons in the late 1980s, Proposition 117 was placed on the ballot in 1990.  *See generally*, Cal. Sec'y of State, California Ballot Pamphlet 40-43 (1990), attached as Exhibit A to the accompanying Defendants' Request for Judicial Notice; 1963 Cal. Stat. ch. 2022, § 1, at 4146; 1967 Cal. Stat. ch. 196, §§ 1 & 2.

Department of Fish and Wildlife, alleging that the Mountain Lion Prohibition violates the Commerce and Equal Protection Clauses of the United States Constitution as well as 42 U.S.C section 1983.

## II.    THE ALLEGATIONS OF THE COMPLAINT

Plaintiff Safari Club International is a non-profit corporation incorporated in the State of Arizona, with approximately 13 chapters and 5,031 members in California.  Complaint ¶ 12. Plaintiff's "missions include the protection of the hunter, and education of the public concerning hunting and its use as a conservation tool."  *Id.*  To advance these missions, plaintiff advocates for "enhanced opportunities to hunt and the ability to enjoy the fruits of hunts, including by being able to import, transport, and possess mountain lions legally hunted outside of California."  *Id.* Plaintiff alleges that the ability of hunters to freely transport harvested animals between states "advances sustainable use conservation by encouraging more hunters to hunt animals that state and other governmental entities manage and conserve."  *Id.* ¶ 14.  Plaintiff's members have hunted mountain lions outside of California and wish to import their sport-hunted mountain lions into California.  *Id.* ¶ 15.  Some of plaintiff's members have "definite plans" to hunt mountain lions outside of California and wish to import and possess these mountain lions into and in California.  *Id.*  Other of plaintiff's members are outfitters and guides "who would benefit from providing more mountain lion hunts outside of California to California residents."  *Id.*  The Complaint alleges that the Mountain Lion Prohibition harms plaintiff's members by "reducing the amount of commerce they can conduct and the market for their services."  *Id.* ¶ 38.  Specifically, plaintiff alleges that it holds an annual auction for mountain lion hunts outside of California and that due to the Mountain Lion Prohibition its members who are California residents have decided not to bid on these hunts, which "reduces the value of these auction items and the revenue which [plaintiff] receives."  *Id.* ¶ 39.

Plaintiff alleges that the Mountain Lion Prohibition's ban on the importation of mountain lion and mountain lion parts from outside of California "serves no legitimate interest," does not serve the purpose of managing mountain lion species within California, and was apparently enacted to "discourage California residents from travelling to other states to hunt mountain lions."

4

*Id.* ¶¶ 22-24.  Plaintiff alleges that findings and declaration sections of Proposition 117, which enacted the Mountain Lion Prohibition, provide no "justification for banning the importation, transportation, or possession of mountain lions hunted outside of California." *Id.* ¶ 21.  The Complaint alleges that residents of California can legally hunt mountain lions in other countries and states, and that federal law does not prohibit the importation into the United States of mountain lions legally hunted in other countries.  *Id.* ¶ 34.  It also alleges that California is the only state in the United States that does not allow the importation of mountain lion legally hunted elsewhere.  *Id.*  The Complaint states that the Mountain Lion Prohibition could have allowed hunters to prove that a mountain lion was killed outside the state in the same way that legal possession of mountain lion is established pursuant to Fish and Game Code section 4800(b)(2)).  *Id.* ¶ 24.  It further states that being able to import and possess any legally hunted mountain lion in California is "very important" as hunters want to be able to "display their mountain lions in their homes or offices" in their home state and that "[p]lacing restrictions on the hunter's ability to enjoy his or her sport-hunted mountain lion, including a ban on importation, transportation, and possession, discourages hunters from hunting that species." *Id.* ¶ 40.

## ARGUMENT

### I.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is proper where there is no cognizable legal theory or there are insufficient facts alleged to support a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); that is, the plaintiff must allege facts that consist of "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; instead, the plaintiff must allege facts sufficient to "raise a right

to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of fact are true and must draw all reasonable inferences in his or her favor. *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. While the court generally looks only to the face of the complaint and its exhibits, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), the court may also consider documents that are proper subjects of judicial notice, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## II.  THE COMPLAINT FAILS TO STATE A CLAIM

### A.  Plaintiff's Commerce Clause Claim Fails

Claim One of the Complaint alleges that the Mountain Lion Prohibition facially violates the Commerce Clause because it: (1) "seriously interferes with interstate commerce, including by discouraging California residents from travelling to other states, where they would spend money in pursuit of a mountain lion hunt," Complaint ¶ 7; (2) "seriously interferes with interstate commerce" by "flatly prohibiting a legally obtained article of commerce from entering the state" and thus preventing the generation of "income through taxidermy, transportation and related activities," *id.*; *see also id.* ¶¶ 44-46; (3) the "natural and unintended consequence[s] of the [Mountain Lion Prohibition] is to discourage California residents from travelling outside of California to hunt mountain lions" and "to bar California residents from bringing any harvested mountain lion into the state," *id.* ¶ 46; (4) "[t]he adverse impacts on interstate commerce outweigh any local interests the State Defendants might claim is advanced by the [Mountain Lion Prohibition]," *id.* ¶ 47; and (5) the State has "less restrictive means of accomplishing any local interest [it] might claim is advanced by the [Mountain Lion Prohibition], *id.* These allegations do not satisfy plaintiff's pleading burden and are insufficient to state a cause of action for violation of the Commerce Clause. *See Twombly*, 550 U.S. at 557, 570; *Nat'l Ass'n of Optometrists &*

6

1    *Opticians v. Harris*, 682 F.3d 1144, 1147-57 (9th Cir. 2012), *cert. denied*, 81 U.S.L.W. 3452

2    (U.S. Feb. 19, 2013) (No. 12-461).

3          The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations,

4    and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It includes an implied limitation

5    on the states' authority to adopt legislation that affects commerce, often referred to as the

6    negative or dormant Commerce Clause.  *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).  The

7    purpose of the dormant Commerce Clause is to "prohibit state or municipal laws whose object is

8    local economic protectionism, laws that would excite those jealousies and retaliatory measures

9    the Constitution was designed to prevent."  *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*,

10   511 U.S. 383, 390 (1994).  However, its restrictions are "by no means absolute" and "[s]tates

11   retain authority under their general police powers to regulate matters of legitimate local concern,

12   even though interstate commerce may be affected."  *Maine v. Taylor*, 477 U.S. 131, 138 (1986)

13   (citations and quotations omitted).  "As long as a State does not needlessly obstruct interstate

14   trade or attempt to place itself in a position of economic isolation, it retains broad regulatory

15   authority to protect the health and safety of its citizens and the integrity of its natural resources."

16   *Id*. at 151 (citations and quotations omitted).

17         Whether state legislation violates the dormant Commerce Clause is generally analyzed

18   under a two-tiered approach.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476

19   U.S. 573, 578-79 (1986).  A statute is essentially per se invalid if it directly regulates or

20   discriminates against interstate commerce or if its effect is to favor in-state economic interests

21   over out-of-state interests.  *Id*. at 579.  On the other hand, when a statute is nondiscriminatory and

22   "has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has]

23   examined whether the State's interest is legitimate and whether the burden on interstate

24   commerce clearly exceeds the local benefits."  *Id*. (citing *Pike v. Bruce Church, Inc*., 397 U.S.

25   137, 142 (1970)).

26

27

28

### 1. Plaintiff has not alleged discrimination against interstate commerce.

For purposes of the dormant Commerce Clause, discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99 (1994). Plaintiff does not, and cannot, allege that the Mountain Lion Prohibition discriminates in favor of in-state interests. The Mountain Lion Prohibition bans, subject to limited exceptions, the killing, injuring, possession, transport, importation, or sale of mountain lions and/or mountain lion product or parts in California. *See generally*, Cal. Fish & Game Code § 4800. The Mountain Lion Prohibition regulates even-handedly and treats all mountain lions and/or mountain lion parts, regardless of their point of origin, exactly the same. *See id*. The bald allegation that the Mountain Lion Prohibition "seriously interferes with interstate commerce" by "flatly prohibiting a legally obtained article of commerce from entering the state," Complaint ¶ 7, even taken as true, does not establish discrimination and/or a viable Commerce Clause claim. An "import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items." *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013), *petition for cert. filed*, (U.S. April 28, 2014) (No. 13-1313); *Reynolds v. Buchholzer*, 87 F.3d 827, 831 (6th Cir. 1996). Further, a statute is not "invalid merely because it affects in some way the flow of commerce between the States." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (citation omitted). Accordingly, the Mountain Lion Prohibition does not discriminate within the meaning of the dormant Commerce Clause. *See Pacific Nw. Venison Producers*, 20 F.3d at 1012.

### 2. Plaintiff has not alleged that the Mountain Lion Prohibition regulates extraterritorially.

By its terms, the Mountain Lion Prohibition regulates conduct — specifically, the killing, injuring, possession, transport, importation, or sale of mountain lions — in and into California. *See* Cal. Fish & Game Code § 4800. Plaintiff alleges that the Mountain Lion Prohibition "discourage[s] the hunting of mountain lions outside of California by California residents,"

Complaint ¶ 23; "discourages many California residents from booking mountain lion hunts outside of California," and consequently prevents the purchase of ammunition, licenses, accommodations, and food in other states, *id.* ¶ 45; and "bar[s] California residents from bringing any harvested mountain lion into the state, either as a fully taxidermied product or as a raw product for taxidermy or related work within California," *id.* ¶ 46. However, a statute impermissibly regulates extraterritorial conduct in violation of the Commerce Clause where it "has the undeniable effect of controlling commercial activity occurring *wholly* outside the boundary of the State." *Healy v. Beer Inst.*, 491 U.S. at 336 (invalidating a statute under the Commerce Clause because it had the practical effect of controlling prices in other states) (emphasis added); *see also Pharmaceutical Research and Mfrs. of America v. County of Alameda*, No. 13-16833, 2014 WL 4814407, *4 (9th Cir. Sept. 30, 2014). Plaintiff makes no allegation, and could not in good faith do so, that the Mountain Lion Prohibition either directly, or indirectly, controls commerce occurring wholly outside of California.

Even assuming that the statute may have an effect on industries outside of California, "[t]he mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids." *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 220-21 (2d Cir. 2004). California has not "projected its regulatory regime" into other states, and other states are free to take any action they deem appropriate with respect to the treatment of mountain lions within their boundaries. *Healy*, 491 U.S. at 336-37. The Mountain Lion Prohibition thus does not offend the dormant Commerce Clause. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 548 (1981) (holding that despite effects "up" the chain of commerce that extended into other states, Minnesota could regulate its own milk market); *Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 746 (9th Cir. 2001) (holding state law did not violate Commerce Clause where statute, "on its face, does not regulate foreign insurance policies, or control the substantive conduct of a foreign insurer, or otherwise affect 'the business of insurance' in any other country"); *Chinatown Neighborhood Ass'n v. Harris*, 12-CV-03759-WHO, 2014 WL 1245047, *8 (N.D. Cal. Mar. 25, 2014) (dismissing dormant Commerce Clause challenge to California law prohibiting the

9

possession, sale, distribution, and trade of shark fin: "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States.") (citation omitted).

### 3. *Pike* balancing is not required, but even if it were, the Mountain Lion Prohibition serves a legitimate local purpose and its benefits outweigh any burden on interstate commerce.

Plaintiff alleges that "the adverse impacts on interstate commerce outweigh any local interests . . . advanced by" the Mountain Lion Prohibition. This unsupported conclusion is insufficient to state a cause of action. *See Iqbal*, 556 U.S. at 680-81. Moreover, to the extent that plaintiff suggests that the Mountain Lion Prohibition should be evaluated under the balancing test articulated by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, this is incorrect. Application of the *Pike* test requires that a plaintiff first establish a substantial burden on interstate commerce. *See, e.g.*, *Ass'n des Eleveurs de Canards*, 729 F.3d at 952. As the Ninth Circuit has held, a "state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148. Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*." *Id.* (emphasis in original). Such "significant burden[s]" generally involve "inconsistent regulation of activities that are inherently national or require a uniform system of regulation." *Id.* Burdens on commerce that result from regulations pursuant to the State's police power to protect the public health and safety are generally not regarded as significant even if they involve some loss of trade. *See id.* (citing *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)). Indeed, the Supreme Court "generally has supported the rights of states to 'impose even burdensome regulations in the interest of local health and safety.'" *Id.* (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)).[2]

---

[2] The Supreme Court has noted that many cases that have "purported to apply the undue burden test (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the challenged state regulations." *General Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997). "Because the purpose of the Commerce Clause is to protect the nation against economic Balkanization, legitimate regulations that have none of these effects [of discriminating against or regulating interstate commerce] arguably are not subject to invalidation under the

(continued…)

10

Here, plaintiff has not alleged any facts to show that the Mountain Lion Prohibition places a burden on commerce, let alone one that is substantial. The Complaint contains no allegations that the regulation of mountain lions and mountain lion products is "inherently national" or that the mountain lion trade requires a "uniform system of regulation." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also Pac. Nw. Venison Producers*, 20 F.3d at 1014 (finding importation of wildlife was "not a matter in which national uniformity is important" because most states and Canadian provinces ban some species of wildlife and the species vary). Beyond merely stating that the "adverse impacts" created by the Mountain Lion Prohibition are excessive, *see* Complaint ¶ 47, plaintiff neither identifies the nature of the "burden" here, nor suggests how it outweighs the putative benefits of the Mountain Lion Prohibition. At most, plaintiff indicates that the Mountain Lion Prohibition is damaging to its members and their industries. *See* Complaint ¶¶ 5-6, 15, 25-39, 44-46. However, the point of the dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-state interests, not to protect the economic interests of businesses engaged in interstate commerce. *See Carbone*, 511 U.S. at 390. Indeed, the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978); *see also Nat'l Optometrists*, 682 F. 3d at 1152 & n.11 ("the dormant Commerce Clause does not protect a particular company's profits"). While plaintiff states that the Mountain Lion Prohibition "seriously interferes with interstate commerce" by, among other things, prohibiting legally obtained mountain lions and mountain lion parts from entering the state and thus discouraging California residents from travelling to and spending money in other states, Complaint ¶ 7, this does not amount to a substantial or significant burden on interstate commerce. "Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet [plaintiffs'] burden." *Pac. Nw. Venison Producers*, 20 F.3d at 1015. Rather, for "a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate

_____

(…continued)
Commerce Clause." *Pac. Nw. Venison Producers*, 20 F.3d at 1015 (internal citations omitted); *see also Ass'n des Eleveurs de Canards*, 729 F.3d at 952.

commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001); *see also Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148-49.

Given that plaintiff has not alleged any facts to establish a cognizable burden on interstate commerce, *Pike* balancing is not required and plaintiff's Commerce Clause claim fails. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155-56; *see also Nat'l Paint Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[T]he ordinance affects interstate shipments, but it does not discriminate against interstate commerce in either terms or effect. No disparate treatment, no disparate impact, no problem under the dormant commerce clause."); *Chinatown Neighborhood Ass'n*, 2014 WL 1245047 at *8-9. However, and perhaps of greater significance, even if *Pike* balancing were applied, plaintiff could not demonstrate that whatever incidental burdens the Mountain Lion Prohibition might cause would outweigh its benefits. "A facially neutral statute may violate the Commerce Clause if 'the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational.'" *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (citation omitted). A statute is unreasonable or irrational when "the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." *Id.* That is not the case here. Although the Complaint states that the Mountain Lion Prohibition "serves no legitimate state interest," Complaint ¶ 23, this is incorrect. As noted above, the Mountain Lion Prohibition, including the prohibition on the importation and possession of mountain lions and parts of mountain lions legally killed in other states, was enacted to conserve and protect mountain lion populations. *See* Fish & Game Code §§ 2780, 4800.[3] It is well settled that the

_____

[3] Plaintiff alleges that the findings and declarations contained in California Fish and Game Code 2780 "do not mention the need to ban the hunting of mountain lions within California, much less any purpose behind banning the importation, transportation, and possession of mountain lions hunted outside California." Complaint ¶ 5; *see also id.* ¶ 21. While it is fairly obvious that the stated purpose of protecting wildlife set forth in section 2780 applies to the entirety of the Mountain Lion Prohibition, a state need not provide a justification or rationale for its legislative decisions. *See, e.g., King v. Christie,* 981 F. Supp. 2d 296, 325 (D.N.J. 2013), *aff'd, King v. Governor of the State of New Jersey*, No. 13-4429, 2014 WL 4455009 (3d Cir. Sept. 11, 2014) (citing *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)); *see also* Cal. Fish & Game Code § 1801 (stating that it is State policy to preserve, conserve, and maintain wildlife
(continued…)

protection of wildlife and the environment are legitimate state interests. *Pacific Nw. Venison Producers*, 20 F.3d at 1013. The Mountain Lion Prohibition thus carries "a strong presumption" of constitutional validity that the allegations in the Complaint have failed to rebut. *Id.* at 1014; *see also Legislature v. Eu*, 54 Cal. 3d 492, 501 (Cal. 1991) ("[A]ll presumptions favor the validity of initiative measures.").

Plaintiff asserts without any meaningful elaboration that the State's interests could be advanced by "less restrictive means." Complaint ¶ 47; *see also id.* ¶ 24. Not only is this unsubstantiated legal conclusion inadequate to meet plaintiff's pleading burden, *see Iqbal*, 556 U.S. at 678-79, it is legally irrelevant. Where, as here, a law is not discriminatory and places no significant burden on interstate commerce, it is "inappropriate for [a court] to set them aside based on a conclusion that the State's purposes could be served as well with alternative laws." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157. The Ninth Circuit has thus instructed that in such cases, courts should "not consider any evidence regarding alternative means for the State to achieve its goals." *Id.*; *see also id.* at 1156 (noting that where no constitutionally significant burden on interstate commerce has been shown, courts give even greater deference to the asserted benefits of a state law or regulation); *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 92 (1987) (noting that in context of dormant Commerce Clause analysis, courts should not "second guess the empirical judgments of lawmakers concerning the utility of legislation"). Accordingly, and because plaintiff has not stated, and cannot state, a claim under the Commerce Clause, this Court should dismiss plaintiff's First Claim for Relief. *See, e.g.*, *Chinatown Neighborhood Ass'n*, 2014 WL 1245047 at *8-9; *PTI, Inc. v. Philip Morris, Inc.*, 100 F. Supp. 2d 1179, 1202-03 (C.D. Cal. 2000) (dismissing Commerce Clause claim where plaintiffs could not allege a cognizable claim that statute's burden on interstate or foreign commerce was "clearly excessive" in relation to the statute's putative benefits).

_____

(…continued)
resources and that these objectives include maintaining sufficient populations of all species of wildlife and their habitats).

### B. Plaintiff's Equal Protection Claim Fails.

Plaintiff's Second Claim for Relief alleges that the Mountain Lion Prohibition facially discriminates against those hunters who wish to legally hunt mountain lions in other states and then import into and possess their harvested mountain lion in California, in violation the Equal Protection Clause. Complaint ¶ 51. The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Legislative provisions that arbitrarily or irrationally create discrete classes cannot withstand constitutional scrutiny under the Equal Protection Clause. *Romer v. Evans*, 517 U.S. 620, 623 (1996). However, courts must balance this principle with the "practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Id*. at 631 (citations omitted). In an attempt to reconcile the promise of equal protection with the reality of lawmaking, courts apply the most searching constitutional scrutiny to those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, or religion. *Id.* With respect to protected classifications, the government is required to demonstrate that the classification is narrowly tailored to further compelling government interests. *See Grutter v. Bollinger*, 539 U.S. 306, 326 (2003). Laws that do not burden a protected class or infringe on a constitutionally protected fundamental right are subject to rational basis review. *Romer*, 517 U.S. at 631. Under the deferential rational basis test, statutes are generally "presumed valid" and upheld if the classification drawn by the statute is rationally related to a legitimate state interest. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005). Such statutes must be "wholly irrational" to violate the Equal Protection Clause. *Id.*

As plaintiff concedes, because the Mountain Lion Prohibition does not involve a fundamental right or a suspect class, it is subject only to rational basis review. *See* Complaint ¶ 29. Challenged legislation survives rational basis review as long as, in enacting legislation, the legislature is acting in pursuit of a permissible government interest that bears a rational

14

relationship to the means chosen to achieve that interest. *Heller v. Doe*, 509 U.S. 312, 319 (1993). Under rational basis review, when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the legislature must be upheld if "any state of facts either known or which could reasonably be assumed affords support for it." *United States v. Carolene Products Co.*, 304 U.S. 144, 154 (1938). "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . ." *Heller*, 509 U.S. at 319 (internal quotation marks omitted).

Here, plaintiffs "have not alleged facts sufficient to overcome the presumption of rationality" that applies to duly-enacted legislation. *Teixeira v. Cty. of Alameda*, No. 12-cv-03288-WHO, 2013 WL 4804756, *10 (N.D. Cal. Sept. 9, 2013) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)); *see also City of Cleburne*, 473 U.S. at 440; *Fields*, 413 F.3d at 955; *Eu*, 54 Cal. 3d at 501. The Complaint alleges only that the Mountain Lion Prohibition violates the Equal Protection Clause because it "singles out and discriminates against" those hunters who want to hunt mountain lions out of state and import and possess their harvested mountain lion into and in California. Complaint ¶ 51. It states that the Mountain Lion Prohibition "arbitrarily and without justification" denies mountain lion hunters the ability to import, transfer, and possess harvested mountain lions, while no such prohibition exists for hunters of other species, *id.* ¶ 52, and that the "only difference between these two groups of hunters is the target of the hunt and the state's desire to discourage mountain lion hunting outside of California," *id.* Even read in the light most favorable to plaintiff, these allegations fall far short of establishing a plausible equal protection claim. Plaintiff has not alleged facts that, if true, "negative every conceivable basis which might support" the Mountain Lion Prohibition, *Heller*, 509 U.S. at 319, nor facts demonstrating that the law is wholly irrational. *See Fields*, 413 F.3d at 955; *Chinatown Neighborhood Ass'n*, 2014 WL 1245047 at *6.

The people of California have found and declared that the protection, enhancement, and restoration of wildlife habitats, including mountain lion habitats, is "vital to maintaining the quality of life in California," and that there is "an urgent need" to protect them and to "support California's unique and varied wildlife resources." Cal. Fish & Game Code § 2780. In keeping

15

1  with these findings, California has determined that the mountain lion is a specially protected

2  mammal under the laws of this state and that it should be unlawful to take, injure, possess,

3  transport, import, or sell any mountain lion or part of a mountain lion.  *Id.* § 4800.  To the extent

4  that the Complaint suggests that the Mountain Lion Prohibition, and specifically the ban on

5  importation and possession of mountain lions legally hunted and killed in other states, is not the

6  optimal way to achieve the State's interest in the protection of its wildlife and natural resources,

7  *see, e.g.*, Complaint ¶¶ 21-24, this is immaterial.  "[E]qual protection analysis is not a license for

8  courts to judge the wisdom, fairness, or logic of legislative choices."  *Beach Communications,*

9  *Inc.*, 508 U.S. at 313.  Further, rational basis review does not give courts the option to speculate

10 as to whether some other scheme could have better regulated the evils in question.  *Mourning v.*

11 *Family Publ'n Serv., Inc.*, 411 U.S. 356, 378 (1973).

12     Given that the Mountain Lion Prohibition is rationally related to the State's interest in the

13 protection of wildlife, plaintiff cannot state an equal protection claim as a matter of law.  *See*

14 *Pacific Nw. Venison Producers*, 20 F.3d at 1013; *Chinatown Neighborhood Ass'n*, 2014 WL

15 1245047 at *6.  The Court should thus dismiss plaintiff's Second Claim for Relief.

16     **C.     Plaintiff's 42 U.S.C. Section 1983 Claim Fails.**

17     Plaintiff's Third Claim for Relief alleges that Defendants are liable under 42 U.S.C. section

18 1983 because enforcement of the Mountain Lion Prohibition violates the Commerce and Equal

19 Protection Clauses.  Complaint ¶ 55.  However, because plaintiff has failed to adequately allege

20 violations of either of these clauses for the reasons set forth above, plaintiff's Third Claim

21 necessarily fails to state a claim and should be dismissed.

22 //

23 //

24 //

25 //

26

27

28

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss the Complaint in its entirety without leave to amend.

Dated:  October 6, 2014                                   Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants Attorney General Harris and Director Bonham*