# EXHIBIT A

**University of California, Hastings College of the Law**
# UC Hastings Scholarship Repository

| Propositions | California Ballot Propositions and Ballot Initiatives |
|---|---|

1990

# Wildlife Protection.

Follow this and additional works at: http://repository.uchastings.edu/ca_ballot_props

### Recommended Citation

Wildlife Protection. California Proposition 117 (1990).
http://repository.uchastings.edu/ca_ballot_props/1022

This Proposition is brought to you for free and open access by the California Ballot Propositions and Ballot Initiatives at UC Hastings Scholarship
Repository. It has been accepted for inclusion in Propositions by an authorized administrator of UC Hastings Scholarship Repository. For more
information, please contact emickt@uchastings.edu.

# 117  Wildlife Protection. Initiative Statute

## Official Title and Summary

WILDLIFE PROTECTION. INITIATIVE STATUTE. Establishes Habitat Conservation Fund. Transfers $30 million to Fund annually from existing environmental funds and General Fund. Monies from Fund appropriated to Wildlife Conservation Board; Coastal, Tahoe, Santa Monica Mountains Conservancies; state and local parks programs. Funds to be used principally for acquisition of deer and mountain lion habitat; rare and endangered species habitat. Remaining funding for wetlands; riparian and aquatic habitat; open space; other environmental purposes. Prohibits taking of mountain lions unless for protection of life, livestock or other property. Permit for taking required, but prohibits use of poison, leg-hold or metal-jawed traps and snares. Summary of Legislative Analyst's estimate of net state and local government fiscal impact: For 1990-91, approximately $18 million from Unallocated Account in Cigarette and Tobacco Products Surtax Fund and $12 million from General Fund will be transferred to the Habitat Conservation Fund, unless Legislature makes transfers from other funds. In subsequent years, General Fund transfers may increase if sales of cigarettes and tobacco products decline. Estimated annual costs of managing acquired properties could exceed $1 million, supported by sources other than Habitat Conservation Fund.

## Analysis by the Legislative Analyst

### Background

Currently there are a number of state programs designed to enhance and protect wildlife and to expand the acreage which is protected for wildlife use. The major programs include:

- *Protection of Wildlife.* The Department of Fish and Game (DFG) protects lands used by wildlife by enforcing laws that protect rare, threatened, or endangered plants and animals.
- *Acquisition of Lands.* The Wildlife Conservation Board (WCB) acquires, develops, and improves lands for wildlife. The Department of Parks and Recreation (DPR) purchases property for parks.

Funding for natural resources programs comes from various sources, including the state's General Fund and special funds dedicated to environmental programs. In 1988, the voters approved Proposition 99, which increased the taxes on cigarettes and tobacco. In part, that measure requires that 5 percent of the resulting funds be allocated for natural resources and 25 percent be put into an "unallocated account."

### Proposal

This measure creates the Habitat Conservation Fund (HCF) and guarantees it $30 million a year for the next 30 years. This funding would be obtained by transferring monies from various existing environmental funds and from the state's General Fund. These monies would be used to acquire, enhance, or restore specified types of lands for wildlife or open space.

On an annual basis this measure provides funding to the following agencies:

- $10 million (for five years) to the Santa Monica Mountains Conservancy.
- $4.5 million to the DPR. Of this amount, $1.5 million would be for projects located in the Santa Lucia Mountain Range in Monterey County, $1 million would be for additions to the state park system, and $2 million would be for matching grants to local agencies.
- $4 million to the State Coastal Conservancy.

- $0.5 million to the California Tahoe Conservancy.
- The balance of the money in the HCF would go to the WCB. For the first five years (1990-1991 through 1994-1995), this balance would be $11 million a year. Thereafter, the balance would be $21 million a year because the allocation to the Santa Monica Mountains Conservancy would have expired.

This measure requires that these funds be used for the acquisition of lands for the protection of deer and mountain lions, rare and endangered animals and plant life, wetlands, and for park purposes. The measure requires that, to the extent possible, half of the funds be spent in northern California and half of the funds be spent in southern California.

In addition, this measure designates mountain lions as a specially protected mammal, and prohibits their taking, injury, possession, or sale. However, under limited circumstances the measure allows the killing of mountain lions if the lion (1) is perceived to be an imminent threat to public health or safety or (2) damages livestock or other property.

### Fiscal Effect

The $30 million in annual HCF funding would come from the following sources:

1. 10 percent of the funds in the Proposition 99 "unallocated account."
2. The remainder from the state's General Fund, less any amounts the Legislature may transfer from other existing environmental funds.

We estimate that for 1990-91 these amounts would be $18 million from the unallocated account and $12 million from the General Fund, unless other transfers are made.

In subsequent years, the share of funds from the General Fund (or other environmental funds) may be higher because there will be less revenues in the unallocated account as the sale of cigarettes and tobacco products decline.

Ongoing costs to manage these properties would not come from the HCF, but would be supported by *other* state funds. These costs could exceed $1 million annually.

## Text of Proposed Law

This initiative measure is submitted to the people in accordance with provisions of Article II, Section 8 of the Constitution.

This initiative measure repeals and adds sections to the Fish and Game Code; therefore, existing sections proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

SECTION 1. This act shall be known and may be cited as the California Wildlife Protection Act of 1990.

SEC. 2. Chapter 9 (commencing with Section 2780) is added to Division 3 of the Fish and Game Code, to read:

*CHAPTER 9. CALIFORNIA WILDLIFE PROTECTION ACT OF 1990*

*Article 1. General Provisions*

*2780. The people of California find and declare all of the following:*

*(a) Protection, enhancement, and restoration of wildlife habitat and fisheries are vital to maintaining the quality of life in California. As the state's human population increases, there is an urgent need to protect the rapidly disappearing wildlife habitats that support California's unique and varied wildlife resources.*

*(b) Much of the state's most important deer winter ranges have been destroyed in the last 20 years.*

*(c) Critical winter ranges of migratory deer in the Sierra Nevada and Cascade mountain ranges are increasingly subject to incompatible land uses. In some counties, over 80 percent of the critical winter ranges fall on these lands. The potential for incompatible land uses on these lands is a major threat to the survival of many migratory deer herds.*

*(d) Deer, mountain lion, and other wildlife habitat within the Sierra Nevada, Cascade, Coast Range (including the Santa Lucia Mountains in Monterey County along the Central Coast), Siskiyou and Klamath Mountains; and the Santa Susana, Simi Hills, Santa Monica, San Gabriel, San Bernardino, San Jacinto, Santa Ana and other mountains and foothill areas within southern California, is disappearing rapidly. Small and often isolated wildlife populations are forced to depend upon these shrinking habitat areas within the heavily urbanizing areas of this state. Corridors of natural habitat must be preserved to maintain the genetic integrity of California's wildlife.*

*(e) This chapter shall be implemented in the most expeditious manner. All state officials shall implement this chapter to the fullest extent of their authority in order to preserve, maintain, and enhance California's diverse wildlife heritage and the habitats upon which it depends.*

*2781. The people of California find and declare that wildlife and fisheries conservation is in the public interest and that it is necessary to keep certain lands in open space and natural condition to protect significant environmental values of wildlife and native plant habitat, riparian and wetland areas, native oak woodlands, and other open-space lands, and to provide opportunities for the people of California to appreciate and visit natural environments and enjoy California's unique and varied fish and wildlife resources.*

*It is the intent of the people, in enacting this chapter, that additional funds are needed to protect fish, wildlife, and native plant resources and that the Legislature should provide those funds through bond acts and other appropriate sources.*

*Article 2. California Wildlife Protection*

*2785. The following definitions govern the construction of this chapter:*

*(a) "Acquisition" includes but is not limited to, gifts, purchases, leases, easements, the exercise of eminent domain if expressly authorized, the transfer or exchange of property for other property of like value, transfers of development rights or credits, and purchases of development rights and other interests.*

*(b) "Board" means the Wildlife Conservation Board.*

*(c) "Fund" means the Habitat Conservation Fund created by Section 2786.*

*(d) "Local agency" means a city, county, city and county, or a district as defined in subdivision (b) of Section 5902 of the Public Resources Code.*

*(e) "Riparian habitat" means lands which contain habitat which grows close to and which depends upon soil moisture from a nearby freshwater source.*

*(f) "Southern California" means the Counties of Imperial, Los Angeles, Orange, Riverside, San Bernardino, San Diego, Santa Barbara, and Ventura.*

*(g) "Wetlands" means lands which may be covered periodically or permanently with shallow water and which include saltwater marshes, freshwater marshes, open or closed brackish water marshes, swamps, mudflats, fens, and vernal pools.*

*2786. Except as otherwise expressly provided in paragraph (3) of subdivision (a) of Section 2787, the money in the Habitat Conservation Fund, which is hereby created, shall be used for the following purposes:*

*(a) The acquisition of habitat, including native oak woodlands, necessary to protect deer and mountain lions.*

*(b) The acquisition of habitat to protect rare, endangered, threatened, or fully protected species.*

*(c) The acquisition of habitat to further implement the Habitat Conservation Program pursuant to Article 2 (commencing with Section 2721) excepting Section 2722 and subdivision (a) of Section 2723, and Sections 2724 and 2729.*

*(d) The acquisition, enhancement, or restoration of wetlands.*

*(e) The acquisition, restoration, or enhancement of aquatic habitat for spawning and rearing of anadromous salmonids and trout resources.*

*(f) The acquisition, restoration, or enhancement of riparian habitat.*

*2787. Notwithstanding Section 13340 of the Government Code, the money in the fund is continuously appropriated, without regard to fiscal years, as follows:*

*(a) To the Department of Parks and Recreation, four million three hundred thousand dollars ($4,500,000) annually for allocation as follows:*

*(1) One million five hundred thousand dollars ($1,500,000) for projects that are located in the Santa Lucia Mountain Range in Monterey County for expenditure by the Department of Parks and Recreation and for grants to the Monterey Peninsula Regional Park District.*

*(2) One million dollars ($1,000,000) for acquisitions in, and adjacent to, units of the state park system.*

*(3) Two million dollars ($2,000,000) for 50 percent matching grants to local agencies for projects meeting the purposes specified in Section 2786 and, additionally, for the acquisition of wildlife corridors and urban trails, nature interpretation programs, and other programs which bring urban residents into park and wildlife areas. The grants made pursuant to this subdivision are subject to the conditions of subdivision (d) of Section 5910, and Sections 5917 and 5919, of the Public Resources Code, as nearly as may be practicable.*

*(b) To the State Coastal Conservancy, four million dollars ($4,000,000) annually.*

*(c) To the Santa Monica Mountains Conservancy, five million dollars ($5,000,000) annually for the next 10 fiscal years, commencing with the 1990-91 fiscal year. The money shall be used for the purposes specified in Section 2786 for wildlife habitat, and for related open-space projects, within the Santa Monica Mountains Zone, the Rim of the Valley Corridor, and the Santa Clarita Woodlands. Of the total amount appropriated pursuant to this subdivision, not less than a total of ten million dollars ($10,000,000) shall be spent within the Santa Susana Mountains and the Simi Hills, and not less than a total of ten million dollars ($10,000,000) shall be spent within the Santa Clarita Woodlands. These funds shall be expended in accordance with Division 23 (commencing with Section 33000) of the Public Resources Code during the operative period of this section as specified in subdivision (f) and in Section 2797. The Legislature may, by statute, extend the period for expenditure of the funds provided by this paragraph.*

*(d) To the California Tahoe Conservancy, five hundred thousand dollars ($500,000) annually.*

*(e) To the board, the balance of the fund.*

*(f) This section shall become operative on July 1, 1990, and, as of July 1, 2020, is repealed, unless a later enacted statute, which becomes effective on or before July 1, 2020, deletes or extends that date.*

*2788. Notwithstanding Section 13340 of the Government Code, the money in the fund is continuously appropriated, without regard to fiscal years, to the board.*

*This section shall become operative only if, and on the date that, Section 2787 is repealed.*

*(Continued on page 74)*

# 117 | Wildlife Protection. Initiative Statute

## Argument in Favor of Proposition 117

California is in danger of losing nearly 900 plant and animal species in the next twenty years unless we act now to protect them.

Proposition 117 will provide funding to help STOP THIS RAPID EXTINCTION before our priceless natural heritage is lost forever.

Although our state symbol, the grizzly bear, no longer roams the wild lands of California and the condor no longer soars over our mountains, we still have areas where one remaining symbol of our wilderness heritage, the mountain lion, is free to live.

In order to protect this last magnificent predator, Proposition 117 OUTLAWS THE TROPHY HUNTING OF MOUNTAIN LIONS.

Mountain lions have not been trophy hunted since GOVERNOR RONALD REAGAN signed a bill protecting this elusive animal. We need Proposition 117 to continue that protection.

Mountain lion hunting is cruel and unnecessary. A pack of hounds is set on the trail of the big cat until the exhausted lion seeks refuge in a tree. The trophy-hunter (who sometimes is brought in from hundreds of miles away after paying a huge fee to the houndsman) then walks over and blasts the lion off the limb at point-blank range. When nursing mothers are shot, the kittens starve. *THIS IS NOT SPORT; IT IS SLAUGHTER.*

Many hunters signed petitions to place this Act on the ballot because, like other conservationists, they believe mountain lion hunting should be abolished.

Prop. 117 fully PROTECTS THE PUBLIC SAFETY by permitting the taking of any lion which threatens livestock or people.

Mountain lions and endangered wildlife are not the only species that need help. Approximately one-third of the funds provided by Proposition 117 will help PROTECT DEER and rapidly diminishing OAK FORESTS upon which they rely.

Proposition 117 will also BENEFIT FISHING. Approximately $3 million per year will go to improve our trout and salmon streams.

An equal amount will be spent on WETLANDS, which are essential for migrating WATERFOWL and are our most critically threatened environment.

Funds from Proposition 117 will be spent under the careful and frugal supervision of public agencies such as the *Wildlife Conservation Board* and the *Coastal Conservancy.*

Proposition 117 is endorsed by every major conservation organization, including

- WILDERNESS SOCIETY
- DEFENDERS OF WILDLIFE
- SIERRA CLUB
- PLANNING AND CONSERVATION LEAGUE
- NATURAL RESOURCES DEFENSE COUNCIL
- CALIFORNIA PARK AND RECREATION SOCIETY
- NATIONAL AUDUBON SOCIETY CHAPTERS,

as well as *Senator Robert Presley* and *Assemblymember Lloyd Connelly* who have successfully fought for conservation measures.

PROPOSITION 117 WILL NOT RAISE TAXES. It allocates $30 million a year (less than one-tenth of one percent of the State budget) from existing programs for wildlife protection.

The NATURE CONSERVANCY Report "Sliding Toward Extinction" graphically illustrates the need for additional funding to save California species from extinction. Some wildlife experts say whatever we protect now is all we will ever be able to protect. Surely we can afford to SAVE OUR RICH NATURAL HERITAGE that makes California a special place to live, work and play.

*PLEASE VOTE YES on PROPOSITION 117.*

**JOHN VAN DE KAMP**
*Attorney General*

**ED DAVIS**
*State Senator, 19th District*
*Former Police Chief, City of Los Angeles*

**RICHARD KATZ**
*Member of the Assembly, 39th District*

## Rebuttal to Argument in Favor of Proposition 117

It is ironic that the proponents of Proposition 117 lament the loss of the California condor from the wild when Proposition 117 will hasten the loss of many threatened and endangered species in California. This proposition favors two species—mountain lions and deer—at the expense of most other species.

Proposition 117 actually diverts funds AWAY from protection of nongame wildlife species, endangered animals and plants. It also diverts funds AWAY from existing health services and programs, including clinic services, prenatal health care to women and children, and the California Healthcare for Indigents Program.

It is NOT TRUE that every major conservation group endorses Proposition 117. Groups which DO NOT endorse Proposition 117 include:

   California Wildlife Federation
   California Waterfowl Association
   Ducks Unlimited, Inc.
   The Wildlife Society, San Joaquin Valley Chapter

Society for Range Management, California Section

It is NOT TRUE that mountain lions are endangered. Wildlife and natural resources are now conserved for the people of California by wildlife biologists using scientific principles. Application of these principles resulted in mountain lions being one of the better examples of recovery of a game species.

Further, the two state entities with responsibility for oversight of natural resource management and regulation—the STATE BOARD OF FORESTRY and the STATE FISH AND GAME COMMISSION—adopted positions OPPOSING Proposition 117.

Vote "NO" on Proposition 117.

**DR. RALPH J. GUTIERREZ**
*Wildlife Ecologist and Professor*

**ROBERT BEVERLY**
*State Senator, 29th District*
*Vice Chair, Senate Appropriations Committee*

# Wildlife Protection. Initiative Statute | 117

## Argument Against Proposition 117

Please vote NO on Proposition 117.

Proposition 117 should be defeated because it takes money from needed current programs like health care, endangered species protection, etc.

For the second time in two years, California voters are asked to approve $900 million in taxpayer dollars to purchase land. Just two years ago, we approved $776 million for land acquisition; since 1980, over $1.5 billion has been approved to purchase private property for wildlife habitat, recreation areas, parks, etc. The ink is barely dry on the most recent funding, yet proponents of these previous measures are asking you for another $900 million for the same purpose!

Proposition 117 takes money away from existing programs, including up to $15 million *per year* for 30 years from the Proposition 99 Tobacco Tax Health Fund. Health programs which would be impacted may include the Child Health and Disability Prevention Program, Health Care for the Indigent Program, and Rural Health Services. Another serious consequence of Proposition 117 is its diversion of funding that state agencies use to protect wildlife, particularly endangered and nongame wildlife species.

The mountain lion is NOT an endangered species in California. Proposition 117, however, addresses mountain lions and deer at the expense of most other species of wildlife. Current programs funded by the Environmental License Plate Fund and the Endangered Species Tax Check-Off Fund will be ... as funds are redirected by Proposition 117. In fact, wildlife biologists are very concerned about how this initiative constrains their ability to balance the needs of all species.

Even after taking from these programs, some funds would still be diverted from the State General Fund. With over $1.5 billion already available for park, wildlife and endangered species protection, we do not need to cut important existing programs.

And what about access to the lands which will be purchased with your tax dollars? Proposition 117 specifically states that access will not be provided when it interferes with habitat protection. Thus, access to these public lands may be severely limited.

The state of California does have serious environmental problems; however, Proposition 117 only simplistically redirects existing wildlife, health care and other dollars away from critical programs. We urge the voters of California to read Proposition 117 and ask themselves "who is the first and the last group served?" It is not the mountain lions, the deer or the many endangered species in critical need of protection. It is not the recipient of health care, nor is it the voter of California. It is the special interest proponents who seek to redefine how your dollars are used.

With $1.5 billion already approved by voters for land for wildlife, it is not necessary to cut other programs at this time. In fact, let's be sure the $1.5 billion is being spent effectively before we approve another $900 million.

Please vote NO on Proposition 117.

**ROBERT BEVERLY**
*Senator, 29th District*
*Vice Chair, Senate Appropriations Committee*

**JONATHAN OLDHAM**
*President*
*San Joaquin Valley Chapter of the Wildlife Society*

**RICHARD GOLIGHTLY**
*Professional Wildlife Ecologist and Professor*

---

## Rebuttal to Argument Against Proposition 117

The arguments presented against protecting wildlife are not correct. There is more than sufficient funding in the state budget to pay for the small amount of money Proposition 117 provides for wildlife protection. Proposition 117 contains a cost-efficient, long-range plan of expenditure for wildlife protection.

The sponsors of the Tobacco Tax Initiative (Proposition 99) agree the impact on wildlife by cigarette-caused wildfires justifies spending some tobacco tax money on environmental protection. Proposition 99 states that a major purpose is "protection, restoration, enhancement, and maintenance of fish, waterfowl and wildlife habitat areas."

Why do all major conservation groups in California agree with the Chairman of the Senate Appropriations Committee that PROPOSITION 117 IS NEEDED TO PROTECT WILDLIFE? Because our wildlife and endangered species are slipping away due to California's incredible population growth.

No one who cares about our wildlife heritage thinks we are doing enough to protect it. Proposition 117 provides our wildlife protection agencies funding for carefully designed land acquisition and protection projects. Proposition 117 STOPS THE TROPHY HUNTING OF MOUNTAIN LIONS forever.

The real opposition to the California Wildlife Protection Act are CATTLEMEN who consistently OPPOSE EVERY WILDLIFE PROTECTION MEASURE that appears on the California ballot. They are against protecting any more wildlife or park areas, a view inconsistent with the needs and desires of most Californians.

Volunteers collected the signatures for this initiative. No signatures were paid for. THIS INITIATIVE IS FROM THE PEOPLE, not the special interests.

Please vote YES on Proposition 117.

**VIVIAN VAUGHT**
*Wildlife Chair, Sierra Club*

**TERRY FRIEDMAN**
*Member of the Assembly, 43rd District*

**PETE DANGERMOND**
*Former Director, California Department of Parks and Recreation*

---

(4)  *Grade separations.*

~~(4)~~ (5)  ~~Passenger ferries~~ *Ferry vessels* and terminals.

*(b)  Funds made available pursuant to Sections 199 and 199.1 of the Streets and Highways Code shall be appropriated to the department for allocation, as directed by the commission, solely to fund exclusive public mass transit guideways.*

~~(c)  Funds made available for capital outlay pursuant to subdivision (a) of Section 14031.6 of the Government Code and subdivision (a) of Section 99315 shall be appropriated to the department for allocation, as directed by the commission, solely for capital outlay improvements and rolling stock on intercity rail passenger routes.~~

~~(d)  The amount of funds allocated for a transit capital improvement project, except an intercity rail transit capital improvement project, pursuant to this section shall not exceed 50 percent of the amount of the nonfederal share of project cost. This requirement shall not apply to projects for intercity rail as defined in Section 163.55 of the Streets and Highways Code.~~

*(c)  With respect to the sum of money available each fiscal year from the State Highway Account and the Transportation Planning and Development Account for transit capital improvements, the commission shall include, in the state transportation improvement program, one-half of the sum for expenditure in those counties which have adopted a proposition pursuant to Section 4 of Article XIX of the California Constitution. The portion of the amount to be included in the state transportation improvement program for each of those counties shall be in the proportion that its population bears to the total population of all those counties. Allocations pursuant to this subdivision shall be subject to the requirements for guideway financial plans and the ability of an agency to encumber funds on a timely basis, as specified in Sections 199.1, 199.2 and 199.3 of the Streets and Highways Code.*

*(d)  The Legislature may amend this section, by statute passed in each house of the Legislature by rollcall vote entered in the journal, two-thirds of the membership concurring, if the statute is consistent with, and furthers the purposes of, this section.*

SEC. 4.  Section 7102 of the Revenue and Taxation Code is amended to read:

7102.  The money in the fund shall, upon order of the Controller, be drawn therefrom for refunds under this part, and pursuant to Section 1793.25 of the Civil Code, or be transferred in the following manner:

(a)  (1)  All revenues, less refunds, derived under this part at the 4¾-percent rate, including the imposition of sales and use taxes with respect to the sale, storage, use, or other consumption of motor vehicle fuel which would not have been received if the sales and use tax rate had been 5 percent and if motor vehicle fuel, as defined for purposes of the Motor Vehicle Fuel License Tax Law (Part 2 (commencing with Section 7301)), had been exempt from sales and use taxes, shall be estimated by the State Board of Equalization, with the concurrence ~~the Department of Finance, and shall be transferred during each h...~~ ~~your~~ *quarterly* to the Transportation Planning and Development Account, *a trust fund* in the State Transportation Fund ~~for appropriation pursuant to Section 99312 of the Public Utilities Code~~.

(2)  All revenues, less refunds, ~~due to~~ *derived under this part from the imposition of sales and use taxes on fuel, as defined for purposes of the Use Fuel Tax Law* (Part 3 (commencing with Section 8601)), ~~at the 4¾-percent rate shall be transferred during each fiscal year to the Transportation Planning and Development Account for appropriation pursuant to Section 99314 of the Public Utilities Code.~~

~~(b)  All revenues, less refunds, derived under this part at the 4¾-percent rate, resulting from increasing, after December 31, 1989, the rate of the tax imposed pursuant to the Motor Vehicle Fuel License Tax Law on motor vehicle fuel, as defined for purposes of that law, shall be transferred during each fiscal year to the Transportation Planning and Development Account for appropriation pursuant to Section 99312 of the Public Utilities Code.~~

~~(c)  All revenues, less refunds, derived under this part from a rate of more than 4¾ percent pursuant to Sections 6051.1 and 6201.1 shall be transferred to the Disaster Relief Fund created by Section 16419 of the Government Code, shall be estimated by the State Board of Equalization, with the concurrence of the Department of Finance, and shall be transferred quarterly to the Transportation Planning and Development Account, a trust fund in the State Transportation Fund.~~

~~(d)~~ *(b)*  The balance shall be transferred to the General Fund.

~~(e)~~ *(c)*  The ~~estimate~~ *estimates* required by ~~subdivisions~~ *subdivision* ~~(a) and (b)~~ shall be based on taxable transactions occurring during a calendar year, and the transfers required by subdivision (a) shall be made during the fiscal year that commences during that same calendar year. Transfers required by paragraphs (1) and (2) ~~of subdivisions (a) and (b)~~ shall be made quarterly.

*(d)  The Legislature may amend this section, by statute passed in each house of the Legislature by rollcall vote entered in the journal, two-thirds of the membership concurring, if the statute is consistent with, and furthers the purposes of, this section.*

SEC. 5.  If any provision of this act or the application thereof is held invalid, that invalidity shall not affect other provisions or applications of this act which can be given effect without the invalid provision or application, and to this extent the provisions of this act are severable.

---

## Proposition 117: Text of Proposed Law

Continued from page 41

2789.  In areas where habitats are or may become isolated or fragmented, preference shall be given by the agencies expending money from the fund to projects which will serve as corridors linking otherwise separated habitat so that the genetic integrity of wildlife populations will be maintained.

2790.  Each agency receiving money from the fund pursuant to Section 2787 shall report to the board on or before July 1 of each year the amount of money that was expended and the purposes for which the money was expended. The board shall prescribe the information in the agencies reports that it determines is necessary to carry out the requirements of Section 2791.

2791.  The board shall expend the money appropriated to it from the fund subject to the following conditions:

(a)  Not more than one and one-half (1-½) percent shall be expended for administration of this chapter.

(b)  The board shall, to the extent practicable, expend the money in a manner and for projects so that, within each 24-month period, approximately one-third of the total expenditures of the money in the fund, including, until July 1, 2020, the expenditures by the agencies receiving money from the fund pursuant to subdivisions (a) to (d), inclusive, of Section 2787, are expended for the purposes specified in subdivision (a) of Section 2786 and approximately two-thirds of the total expenditures of the money in the fund, including, until July 1, 2020, the expenditures by the agencies receiving money from the fund pursuant to subdivisions (a) to (d), inclusive, of Section 2787, are expended for the purposes specified in subdivisions (b) and (c) of Section 2786.

(c)  Notwithstanding the requirement for acquisition in subdivisions (a), (b), and (c) of Section 2786, the board shall, to the extent practicable, expend the money in the fund in a manner and for projects

so that, within each 24-month period, approximately six million dollars ($6,000,000) of the money, including, until July 1, 2020, the expenditures by the agencies receiving money from the fund pursuant to subdivisions (a) to (d), inclusive, of Section 2787, are expended for the purposes specified in subdivision (d) of Section 2786.

(d)  Notwithstanding the requirement for acquisition in subdivisions (a), (b), and (c) of Section 2786, the board shall, to the extent practicable, expend the money in the fund in a manner and for projects so that, within each 24-month period, approximately six million dollars ($6,000,000) of the money, including, until July 1, 2020, the expenditures by the agencies receiving money from the fund pursuant to subdivisions (a) to (d), inclusive, of Section 2787, are expended for the purposes specified in subdivision (e) and (f) of Section 2786.

(e)  To the extent practicable, the board shall expend the money appropriated to it from the fund in a manner and for projects so that, within each 24-month period, approximately one-half of the total expenditures of the money in the fund, including, until July 1, 2020, the expenditures by the agencies receiving money from the fund pursuant to subdivisions (a) to (d), inclusive, of Section 2787, are expended in northern California and approximately one-half in southern California.

(f)  Subject to the other requirements of this section, the board may allocate not more than two million dollars ($2,000,000) annually for the purposes of this chapter to one or more State agencies created by the Legislature or the people which are authorized by other provisions of law to expend funds for the purposes of this chapter.

2792.  If any agency designated in Section 2787 ceases to exist, is otherwise unable to expend the funds appropriated by Section 2, that agency for the period specified, the board or its successor agency shall expend the same funds for the same purpose.

2793.  The board and any other state or local agency that expends any funds appropriated from the fund on environmental enhancement, restoration, or improvement projects shall utilize the services of the

74

P90.

*California Conservation Corps and local community conservation corps to the extent practicable.*

*2794. In implementing this chapter, the state or local agency that manages lands acquired with funds appropriated from the fund shall prepare, with full public participation, a management plan for lands that have been acquired, which plan shall reasonably reduce possible conflicts with neighboring land use and landowners, including agriculturists. The plans shall comply with the California Environmental Quality Act (Division 21 (commencing with Section 21000) of the Public Resources Code).*

*2795. (a) The Controller shall annually transfer 10 percent of the funds in the Unallocated Account in the Cigarette and Tobacco Products Surtax Fund to the Habitat Conservation Fund.*

*(b) No additional allocation of funds from that account shall be made by the Legislature for purposes of this chapter or for any other natural resource or environmental protection program.*

*2796. (a) The Controller shall annually transfer the sum of thirty million dollars ($30,000,000) from the General Fund to the Habitat Conservation Fund, less any amount transferred to the Habitat Conservation Fund from, but not limited to, the following accounts and funds:*

*(1) The Public Resources Account in the Cigarette and Tobacco Products Surtax Fund to the extent authorized by the Tobacco Tax and Health Protection Act of 1988.*

*(2) The Unallocated Account in the Cigarette and Tobacco Products Surtax Fund pursuant to subdivision (a) of Section 2795.*

*(3) The California Environmental License Plate Fund.*

*(4) The Endangered and Rare Fish, Wildlife, and Plant Species Conservation and Enhancement Account in the Fish and Game Preservation Fund.*

*(5) Any other non-General Fund accounts and funds created by the Legislature or the people for purposes which are consistent with the purposes of this act.*

*(6) Any bond funds which are authorized by the people after July 1, 1990, which may be used for purposes which are identical to the purposes specified in Section 2795.*

*(7) The Wildlife Restoration Fund.*

*(b) Except for transfers from the Endangered and Rare Fish, Wildlife, and Plant Species Conservation and Enhancement Account, transfers from the Fish and Game Preservation Fund are not transfers purposes of subdivision (a) and shall not be made to the fund. Transfers of federal, local, or privately donated funds or transfers from the State Coastal Conservancy Fund pursuant to Section 31011 of the Public Resources Code to the fund are not transfers for purposes of subdivision (a).*

*(c) This section does not limit the amount of funds which may be transferred to the fund or which may be expended for fish and wildlife habitat protection either from the fund or from any other sources.*

*(d) This section shall become operative on July 1, 1990, shall become inoperative on June 30, 2020, and, as of January 1, 2021, is repealed, unless a later enacted statute, which becomes effective before January 1, 2021, deletes or extends the dates on which it becomes inoperative and is repealed.*

*2797. (a) The people find it necessary to acquire, restore, and improve the rapidly disappearing wildlife habitat of southern California in the quickest and most efficient manner possible using existing governmental resources. Therefore, notwithstanding Section 33216 of the Public Resources Code, Division 23 (commencing with Section 33000) of the Public Resources Code shall continue in effect for the period that funds may be expended pursuant to subdivision (c) of Section 2797.*

*This subdivision shall not become operative if, prior to June 6, 1990, Section 33216 of the Public Resources Code has been amended to extend the operative effect of that Division 23 to at least July 1, 1995.*

*(b) If subdivision (a) of this section does not become operative, the controller shall increase the annual transfer of funds pursuant to subdivision (c) of Section 2787 on a pro rata basis so that the total amount available to the Santa Monica Mountains Conservancy for purposes of this chapter pursuant to that subdivision (c) is fifty million dollars ($50,000,000). Nothing in this section precludes the Legislature from extending the time for expenditure of funds pursuant to subdivision (c) of Section 2797.*

*2798. Acquisitions of real property made pursuant to this chapter shall be done in compliance with the land acquisition law as existing or as hereafter amended and as it applies to the agencies designated in Section 2797, and in compliance with subdivision (a) of Section 5929 of the Public Resources Code.*

*2799. Every expenditure made pursuant to this chapter shall comply with the California Environmental Quality Act (Division 13 (commencing with Section 21000) of the Public Resources Code).*

*2799.5. Reasonable public access to lands acquired in fee with funds*

*made available pursuant to this chapter shall be provided except when that access may interfere with habitat protection.*

*2799.6. Only those amounts of money which are transferred to the fund from the General Fund pursuant to Section 2796 may be reappropriated for purposes of this chapter by a two-thirds vote of the Legislature.*

SEC. 3.  Section 3950.1 is added to the Fish and Game Code, to read:

*3950.1. (a) Notwithstanding Section 3950 or any other provision of this code, the mountain lion (genus Felis) shall not be listed as, or considered to be, a game mammal by the department or the commission.*

*(b) Section 219 does not apply to this section. Neither the commission nor the department shall adopt any regulation that conflicts with or supersedes this section.*

SEC. 4.  Section 4189 of the Fish and Game Code is repealed.

~~4189.  Any owner or tenant, or the agent of the owner or tenant, of land or property that is being damaged or destroyed or is in immediate danger of being damaged or destroyed by mountain lions may take those mountain lions at any time and in any manner except by means of poison or traps. The taking of the mountain lion shall be reported in writing within 30 days to the Department of Fish and Game headquarters office in Sacramento.~~

~~This section shall become operative on January 1, 1986.~~

SEC. 5.  Chapter 10 (commencing with Section 4800) of Part 3 of Division 4 of the Fish and Game Code is repealed.

### ~~CHAPTER 10.   MOUNTAIN LIONS~~

~~4800.  It is unlawful to take any mountain lion, except as provided in Section 4189, without first procuring a license tag authorizing the taking of such mountain lion.~~

~~4801.  Any person 12 years of age or over who possesses a valid hunting license may, upon payment of one dollar ($1), procure the number of mountain lion license tags corresponding to the number of mountain lion that may legally be taken by one person during the current license year.~~

~~4802.  Mountain lion license tags are valid only during that portion of the current hunting license year in which mountain lion may be taken or possessed in any district.~~

~~4803.  The holder of a mountain lion license tag shall carry the tag while hunting mountain lion, and upon the killing of any mountain lion shall immediately fill out both parts of the tag and punch out clearly the date of the kill. One part of the tag shall be immediately attached to the ear of the mountain lion and kept attached during the open season and for 15 days thereafter. The other part of the tag shall be immediately sent to the department. Possession of any untagged mountain lion shall be a violation of this section.~~

~~4804.  (a) Any person who is convicted of a violation of any provision of this code, or of any rule, regulation, or order made or adopted under this code, relating to mountain lions shall forfeit his or her mountain lion license tags, and new mountain lion license tags shall not be issued to that person during the then current license year for hunting licenses.~~

~~(b) A person described in subdivision (a) shall not apply for mountain lion license tags for the following license year.~~

~~4805.  Any person legally killing a mountain lion in this state shall have the license tag countersigned by a fish and game commissioner, a person employed in the department, a person designated for this purpose by the commission, or by a justice of the peace, notary public, postmaster, peace officer or by an officer authorized to administer oaths, before transporting such mountain lion except for the purpose of taking it to the nearest officer authorized to countersign the license tag, on the route being followed from the point where the mountain lion is taken.~~

~~4806.  The provisions of this chapter do not apply to the taking of mountain lion which is otherwise authorized to protect livestock, land, or property from damage or threatened damage from mountain lion.~~

~~4807.  The department shall make an annual report to the Legislature on the number of mountain lions taken per license year.~~

~~4808.  This chapter shall become operative on January 1, 1986.~~

SEC. 6.  Chapter 10 (commencing with Section 4800) is added to Part 3 of Division 4 of the Fish and Game Code, to read:

### CHAPTER 10.   MOUNTAIN LIONS

*4800.  (a) The mountain lion (genus Felis) is a specially protected mammal under the laws of this state.*

*(b) It is unlawful to take, injure, possess, transport, import, or sell any mountain lion or any part or product thereof, except as specifically provided in this chapter or in Chapter 2 (commencing with Section 2116) of Division 3. This chapter does not prohibit the sale or possession of any mountain lion or any part or product thereof, when the owner can demonstrate that the mountain lion, part or product thereof, was in*

P90

75

*the person's possession on June 6, 1990.*

*(c) Any violation of this section is a misdemeanor punishable by imprisonment in the county jail for not more than one year, or a fine of not more than ten thousand dollars ($10,000), or by both that fine and imprisonment. An individual is not guilty of a violation of this section if it is demonstrated that, in taking or injuring a mountain lion, the individual was acting in self-defense or in defense of others.*

*(d) Section 219 does not apply to this chapter. Neither the commission nor the department shall adopt any regulation that conflicts with or supersedes any of the provisions of this chapter.*

*4801.  The department may remove or take any mountain lion, or authorize an appropriate local agency with public safety responsibility to remove or take any mountain lion, that is perceived to be an imminent threat to public health or safety.*

*4802.  Any person, or the employee or agent of a person, whose livestock or other property is being or has been injured, damaged, or destroyed by a mountain lion may report that fact to the department and request a permit to take the mountain lion.*

*4803.  Upon receipt of a report pursuant to Section 4802, the department, or any animal damage control officer specifically authorized by the department to carry out this responsibility, shall immediately take the action necessary to confirm that there has been depredation by a mountain lion as reported. The confirmation process shall be completed as quickly as possible, but in no event more than 48 hours after receiving the report. If satisfied that there has been depredation by a mountain lion as reported, the department shall promptly issue a permit to take the depredating mountain lion.*

*4804.  In order to ensure that only the depredating mountain lion will be taken, the department shall issue the permit pursuant to Section 4803 with the following conditions attached:*

*(a) The permit shall expire 10 days after issuance.*

*(b) The permit shall authorize the holder to begin pursuit not more than one mile from the depredation site.*

*(c) The permit shall limit the pursuit of the depredating mountain lion to within a 10-mile radius from the location of the reported damage or destruction.*

*4805.  Whenever immediate authorization will materially assist in the pursuit of the particular mountain lion believed to be responsible for the depredation reported pursuant to Section 4802, the department or the animal damage control officer may orally authorize the pursuit and taking of the depredating mountain lion, and the department shall issue a written permit for the period previously authorized as soon as practicable after the oral authorization.*

*4806.  Any person issued a permit pursuant to Section 4803 or 4805 shall report, by telephone within 24 hours, the capturing, injuring, or killing of any mountain lion to an office of the department or, if telephoning is not practicable, in writing within five days after the capturing, injuring, or killing of the mountain lion. At the time of making the report of the capturing, injuring, or killing, the holder of the permit shall make arrangements to turn over the mountain lion or the entire carcass of the mountain lion which has been recovered to a*

*representative of the department and shall do so in a timely manner.*

*4807.  (a) Any mountain lion that is encountered while in the act of pursuing, inflicting injury to, or killing livestock, or domestic animals, may be taken immediately by the owner of the property or the owner's employee or agent. The taking shall be reported within 72 hours to t' department. The department shall investigate the depredation, and, the mountain lion was captured, injured, or killed, the mountain lion or the entire carcass of the mountain lion which has been recovered shall be turned over to the department. Upon satisfactorily completing the investigation and receiving the mountain lion or the carcass, if recovered, the department shall issue a permit confirming that the requirements of this section have been met with respect to the particular mountain lion taken under these circumstances.*

*(b) The department shall undertake a complete necropsy on any returned mountain lion carcass and report the findings to the commission. The commission shall compile the reported findings and prepare an annual written report that shall be submitted to the Legislature not later than the January 15 next following the year in which the mountain lion was taken.*

*4808.  As used in this chapter, "agent" means the agent or employee of the owner of the damaged or destroyed property, any county or city predator control officer, any employee of the Animal Damage Control Section of the United States Department of Agriculture, any departmental personnel, or any authorized or permitted houndsman registered with the department as possessing the requisite experience and having no prior conviction of any provision of this code or regulation adopted pursuant to this code. A plea of nolo contendere is a conviction for purposes of this section.*

*4809.  Mountain lions authorized to be taken pursuant to this chapter shall be taken by the most effective means available to take the mountain lion causing the damage or destruction, except that no mountain lion shall be taken by means of poison, leg-hold or metal-jawed traps, and snares.*

SEC. 7.   If any provision of this act or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

SEC. 8.   Except amendments of subdivisions (e) and (f) of Section 2787 and subdivision (d) of Section 2796 of the Fish and Game Code extend the operative effect of those sections, which may be enacted by statute enacted by the Legislature, this act shall be amended only by a statute approved by a vote of four-fifths of the members of both houses of the Legislature. Any amendment of this act shall be consistent with, and further the purposes of, this act, except the Legislature shall not reallocate the funds allocated by Sections 2787 and 2788 of the Fish and Game Code, change the expenditure requirements of Section 2791 of the Fish and Game Code, or change the transfers of funds required by Sections 2795 and 2796 of the Fish and Game Code.

SEC. 9.   This act shall be liberally construed to further its purposes.

## Proposition 118: Text of Proposed Law

*Continued from page 45*

redistricting process that enables legislators to design new seats for which they are the most advantaged candidates and to establish districts to benefit political allies in the expectation of future favors.

(7)  It allows legislators to engage in legislative activities as to which they have a conflict of interest.

(e)  Because the Legislature has not solved the foregoing problems within existing laws, the people must assert by initiative their own paramount power to reform legislative ethics.

SECTION 3.  The people enact this initiative to enforce legislative ethics and thereby to safeguard the people's right to fair and responsive representation by:

(a)  Strengthening the Joint Legislative Ethics Committee with respect to the detection, public disclosure, and punishment of legislative ethics violations and with respect to other aspects of legislative ethics enforcement.

(b)  Establishing a Code of Legislative Ethics that contains new and stricter rules of conduct, including:

(1)  Restricting legislators from voting on redistricting statutes in their own partisan and personal interest or in expectation of personal or political favors by changing state Senate terms to avoid redistricting abuses, establishing detailed Constitutional criteria for elective districts, restricting nonessential expenditures for redistricting, providing for an automatic referendum on any redistricting statute, imposing a requirement that a redistricting bill pass by a super-majority and

requiring that redistricting statutes be enacted promptly;

(2)  Prohibiting legislators from accepting gifts and honoraria from persons and their agents with matters before the Legislature;

(3)  Prohibiting legislators from influencing legislative and administrative action for pay for one year after leaving the Legislature;

(4)  Prohibiting legislators from voting on matters as to which they have a conflict of interest.

(c)  Imposing new public disclosure requirements with respect to the receipt of gifts and honoraria, redistricting activities, lobbying by former members, ethics complaints and other aspects of legislative ethics.

SECTION 4.  Article IV, section 2 of the California Constitution is amended to read as follows:

SEC. 2.  (a)  The Senate has a membership of 40 ~~Senators~~ senators elected for *terms as specified in Article XXI A* ~~4-year terms, 20 to begin~~ ~~every 2 years~~ . The Assembly has a membership of 80 members elected for 2-year terms. ~~Their~~ *The* terms *of Senators and members of the Assembly* shall commence on the first Monday in December next following their election.

(b)  Election of members of the Assembly shall be on the first Tuesday after the first Monday in November of even-numbered years unless otherwise prescribed by the Legislature. Senators shall be elected at the same time and places as members of the Assembly.

(c)  A person is ineligible to be a member of the Legislature unless the person is an elector and has been a resident of the legislative district for one year, and a citizen of the United States and a resident of California for 3 years, immediately preceding the election.

(d)  When a vacancy occurs in the Legislature the Governor

76