Safari Club International v. Harris, et al.
2:14-cv-01856-GEB-AC

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION
TO MOTION TO DISMISS, AND DECLARATION OF DOUGLAS S. BURDIN**

# EXHIBIT F

WALTER E. WUNDERLICH, SBN 34054
    Assistant Attorney General
JEREMIAH D. BLAIR, SBN 70183
    Deputy Attorney General
1515 K Street, Suite 534
Sacramento, California  95814
Telephone: (916) 324-5344

Attorneys for Defendants

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| BRENTON SCOTT; ANGELO V. PENNISI, individually and DBA ANDY PENN, CREATIVE WILDLIFE TAXIDERMY; PATRICIA MARKOFER; MIKE LARSON; and ELAINE GALLINO, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL E. LUNGREN, in his official capacity as Attorney General for the State of California; BOYD GIBBONS, in his official capacity as Director of the California Department of Fish and Game; and DOES 1 thru 100, inclusive, <br><br> Defendants. | No. 536117 <br><br> DEFENDANTS' TRIAL BRIEF <br><br><br><br> Trial Date: June 9, 1994 <br><br> Time: 8:30 <br><br> Department: 25 |

The Defendants respectfully submit this Trial Brief in the above entitled matter.

1.

| Topic | Page |
|---|---|
| STATEMENT OF THE CASE | 3 |
| STATEMENT OF FACTS | 4 |
| PRELIMINARY STATEMENT | 7 |
| SCOPE OF REVIEW | 8 |
| ISSUES PRESENTED FOR REVIEW | 9 |
| BURDEN OF PROOF | 9 |
| EVIDENTIARY ISSUES | 9 |
| ARGUMENT | |
| I—THE CALIFORNIA WILDLIFE PROTECTION ACT OF 1990 IS PRESUMED TO BE CONSTITUTIONAL | 10 |
| II—SECTION 4800(b) DOES NOT VIOLATE EQUAL PROTECTION | 11 |
| A. EQUAL PROTECTION STANDARD | 11 |
| B. EQUAL PROTECTION ANALYSIS | 13 |
| C. THE BAN ON IMPORTATION SERVES A LEGITIMATE STATE PURPOSE | 14 |
| D. SECTION 4800 IS MORE RECENT, SPECIFIC AND CONTROLLING | 15 |
| E. SECTION 4800 MEETS THE RATIONAL RELATIONSHIP TEST | 17 |
| III—THE BAN ON IMPORTATION DOES NOT VIOLATE THE INTERSTATE COMMERCE CLAUSE | 19 |
| A. THE BAN ON IMPORTATION DOES NOT DIRECTLY REGULATE OR DISCRIMINATE AGAINST INTERSTATE COMMERCE | 19 |
| B. THE BAN ON IMPORTATION REGULATES EVENHANDEDLY AND PLACES INCIDENTAL BURDENS ON INTERSTATE COMMERCE THAT ARE FAR OUTWEIGHED BY THE BENEFITS TO THE STATE OF CALIFORNIA | 22 |
| CONCLUSION | 24 |

On September 15, 1993, Plaintiffs filed a Complaint For Declaratory Relief, Injunctive Relief pursuant to Code of Civil Procedure section 1060.  The Complaint alleges that Fish and Game Code, section 4800(b), which, in relevant part, is a prohibition on the importation of mountain lion trophies, is unconstitutional in that it violates the Plaintiffs' rights to interstate travel and equal protection.  The Complaint is seeking a judicial declaration that section 4800(b) of the Fish and Game Code, as it relates to a ban on importation, is unconstitutional and invalid and injunctive relief enjoining the enforcement of said section.

On October 15, 1993, the Defendants answered the Complaint denying that the relief sought should be granted.  On or about November 3, 1993, the at issue memorandum was filed.

At the Trial Setting Conference held on April 4, 1994, the court set the matter for trial on June 9, 1994.

3.

STATEMENT OF FACTS

Over the last few decades, the classification and status of the mountain lion under California law has changed.   Under former law, the mountain lion was classified primarily as a game animal.   Mountain lions could be legally taken and possessed upon issuance of a hunting license by the Department of Fish and Game (Department).   From 1972 to 1986, a fifteen year moratorium was imposed on the sport-hunting of the California mountain lion. After the moratorium expired in 1986, the status of the mountain lion reverted back to game animal status.   (See Fish and Game Code sections 4850 and 4856; former sections 4800-4808, as repealed by Proposition 117).[1]

In 1987, and again in 1988, the Department proposed, and the Fish and Game Commission adopted, regulations for limited sport-hunting of mountain lions.   The regulations were challenged by a coalition of environmental groups for California Environmental Quality Act violations.   As a result of these legal actions, implementation of the regulations was enjoined.   (See Mountain Lion Coalition v. California Fish and Game Commission, (1988) Super. Ct. San Fran. County, No. 875524); Mountain Lion Coalition v. California Fish and Game Commission, (1988) Super. Ct. San Fran. County, No. 892293).

In 1990, the California Wildlife Protection Act (ACT) was added to the statewide ballot by initiative measure as

---

1.   Citations are to the Fish and Game Code unless otherwise indicated.

4.

... and was endorsed by a number of environmental groups,[2]

2   the ACT was proposed, in part, to prevent the resumption of

3   sport-hunting of mountain lions.  On June 5, 1990, the ACT was

4   adopted by California voters.  According to the ACT, the former

5   provisions of the Fish and Game Code were repealed and superseded

6   by Fish and Game Code, sections 4800-4809.

7        In general, the ACT accomplished two things.  It made the

8   California Mountain Lion a specially protected mammal and

9   prohibited sport hunting.  In addition, it required that the

10  State of California spend no less than $30 million per year on

11  wildlife habitat protection and related purposes. (See sections

12  4800 thru 4809; sections 2780 thru 2799.6).

13       More specifically, under the ACT, it is unlawful "to take,

14  injure, possess, transport, import, or sell any mountain lion or

15  any part or product thereof" except in self-defense [section

16  4800(c)], defense of others [section 4800(c)], where a mountain

17  lion presents an "imminent threat to public health or safety"

18  (section 4801), or where a mountain lion has caused property

19  damage (section 4802) or injured livestock (sections 4802 and

20  4807).

21       Particularly relevant to the issues of the instant case,

22  mountain lions, parts or trophies, which are legally taken and

23  ───────────────────────────────

24       2.    The following is a partial list of organizations that
     endorsed Proposition 117:

25       American Society for the Prevention of Cruelty to Animals
         Defenders of Wildlife
26       Environmental Defense Fund
         Fund for Animals
27       Humane Society of the United States
         Mountain Lion Coalition
28       Planning and Conservation League
         Sierra Club

                              5.

possessed outside the State of California, cannot be imported,
nor can lions be possessed by game breeders.   Under section
4800(b), mountain lions, parts or trophies, can not be legally
possessed unless the owner can demonstrate such possesion existed
prior to June 6, 1990.   Violation of the ACT is a crime
punishable with one year in jail and/or a $10,000 fine.

   Furthermore, pursuant to the ACT, there are no special
provisions, exceptions, or exemptions which would allow
importation of mountain lions, parts or trophies into California
via a special permit issued by the Department.   As a result, the
total importation ban enables the Department to more efficiently
enforce the ACT's prohibitions without having to investigate
either the origin of a mountain lion carcass or the circumstances
of the mountain lion's death.

In this declaratory relief action, the plaintiffs are requesting a judicial interpretation and declaration concerning the constitutionality and validity of Fish and Game Code, section 4800(b).  This section, in relevant part, states that "it is unlawful to take, injure, possess, transport, import, or sell any mountain lion or any part or product thereof".  Simply stated, the Plaintiffs, some of which purport to be taxidermists, tannery owners, and hunters are specifically challenging the constitutionality of the ban against importation, which completetly prohibits the importation of mountain lions or parts, even if the mountain lion were legally taken and possessed outside the State of California.  The challenge is based upon an alleged denial of equal protection and the right to interstate travel.

Prior to June 6, 1990, under former law, it was unlawful to take any mountain lion ... without first procuring a license tag authorizing the taking of such mountain lion.  In 1990, as part of a voter initiative, Proposition 117, cited as the California Wildlife Protection Act of 1990 (ACT), was approved by the voters of the State of California.  As a result of this initiative, the former law was repealed and replaced with Fish and Game Code, Chapter 10, entitled <u>Mountain Lions</u>, sections 4800-4809.  Thus, pursuant to Proposition 117, the new law became effective June 6, 1990.

7.

2

3      The Plaintiffs are seeking declaratory relief pursuant to

4   Code of Civil Procedure, section 1060.  It is clear that the

5   nature and scope of review presented by the Complaint involves a

6   constitutional challenge to a statute enacted via the voter

7   initiative process.  Accordingly, there is no factual dispute and

8   there are no factual issues.

9      It should be noted that the wisdom of the California

10   Wildlife Protection Act of 1990 (ACT) is not relevant to this

11   Court's review.  In analyzing the constitutionality of a statute,

12   courts "do not consider or weigh the economic or social wisdom or

13   general propriety of the iniative.  Rather, a court's sole

14   function is to evaluate it legally in the light of established

15   constitutional standards....  [T]his court does not sit as a

16   super legislature to determine if the state statute promotes good

17   policy, this court only needs to determine if the state statute

18   is constitutional."  (Calfarm Insurance Co. v. Deukmejian (1989)

19   48 Cal.3d 805, 814).

20      In sum, the Complaint seeks a judicial determination of

21   whether or not Fish and Game Code section 4800(b), as it relates

22   to importation of mountain lions, parts or products thereof, is

23   constitutional.  This is a question of law.

24      Section 8 of the ACT states, in pertinent part, that "this

25   act shall be amended only by a statute approved by a vote of

26   four-fifths of the members of both houses of the Legislature."

27   In addition, Section 9 of the ACT clearly provides that "[t]his

28   act shall be liberally construed to further its purposes."

8.

1) Whether Fish and Game Code, section 4800(b) is unconstitutional because it violates equal protection of the law?

2) Whether Fish and Game Code, section 4800(b) is unconstitutional because it violates the right to interstate travel?

## BURDEN OF PROOF

The party challenging the validity of a statute has the burden to prove and establish its invalidity. (<u>Lees v. Bay Area Air Pollution Control District</u> (1965) 238 C.A.2d 850; <u>Stoneham v. Rushen</u> (1984) 156 C.A.3d 302).

## EVIDENTIARY ISSUES

It is the position of the Defendants that the Court's review authority in the instant situation is limited to questions of law, i.e., the challenged constitutionality of Fish and Game Code section 4800(b). Accordingly, any testimonial or documentary evidence, expert or otherwise, proeffered by any party to show the economic or social wisdom, or general propriety of the statute in question is not relevant.

(<u>Calfarm Insurance Co. v. Deukmejian</u> (1989) 48 Cal.3d 805, 814).

For example, any evidence, including but not limited to expert opinion, concerning the wisdom or general propriety, as opposed to the legality, of the ban on importation is not relevant, is not admissible, and not within this court's scope of review.

I

# THE CALIFORNIA WILDLIFE PROTECTION ACT OF 1990
## IS PRESUMED TO BE CONSTITUTIONAL

The California Wildlife Protection Act of 1990 (ACT) is a result of the California voters exercising their constitutionally reserved initiative powers, as set forth in Article IV, section 1 of the California Constitution.  Like legislatively enacted statutes, the ACT is presumed to be valid and constitutional.

The California Supreme Court set forth the following principles in evaluating the constitutionality of an initiative measure:

> "Although the legislative power under our state Constitution is vested in the Legislature, the people reserve to themselves the powers of initiative and referendum. ... Accordingly, the initiative power must be liberally construed to promote the democratic process.... Indeed, it is our solemn duty to jealously guard the precious initiative power, and to resolve any reasonable doubts in favor of its exercise.... As with statutes adopted by the Legislature, all presumptions favor the validity of initiative measures and mere doubts as to validity are insufficient; such measures must be upheld unless their unconstitutionality clearly, positively, and unmistakenly appears."

(Legislature v. Eu (1991) 54 Cal.3d 492, 500-01, cert. denied, (1992) 112 S.Ct. 1292).

10.

SECTION 4800(b) DOES NOT VIOLATE EQUAL PROTECTION

Fish and Game Code section 4800(b) provides:

"It is unlawful to take, injure, possess, transport, import, or sell any mountain lion or any part or product thereof, except as specifically provided in this chapter or in Chapter 2 (commencing with Section 2116) of Division 3. This chapter does not prohibit the sale or possession of any mountain lion, part or product thereof, when the owner can demonstrate that the mountain lion, part of product thereof, was in the person's possession on June 6, 1990."

The Plaintiffs claim that section 4800(b) is unlawfully discriminatory, inconsistent and invalid in that, (1) it creates and/or discriminates against a class of persons, "taxidermists", "tannery owners", and "hunters", (2) it only allows importation when a person can demonstrate that a mountain lion trophy was obtained prior to June 6, 1990, (3) it is inconsistent with other provisions of the law, e.g., Fish and Game Code, sections 2353(a) and 4700 which allow fully protected mammals, including the Bighorn Sheep and the wolverine, to be imported after obtaining a permit, and (4) the ban on importation is not a legitimate exercise of the state's police power. As a consequence, Plaintiffs contend that the ban on importation of legally obtained mountain lion trophies into the State of California violates the Plaintiffs' rights to equal protection of the law under both the California (Article 1, section 7) and the United States (Fourteenth Amendment) Constitutions.

A.   EQUAL PROTECTION STANDARD

The standard of review for an equal protection challenge was

11.

Defendant... ...reference v. Department of Motor Vehicles
(1991) 235 Cal.App.3d 449, at 455:

> "In analyzing the constitutionality of laws
> challenged under the equal protection clauses of the
> United States and California Constitutions, the
> standard of judicial review depends upon the interest
> affected and the classification involved.  Where the
> legislation does not impinge upon either a fundamental
> right or involve a suspect classification requiring
> strict scrutiny, that legislation is invested with a
> presumption of constitutionality and any distinctions
> it draws must merely bear some rational relationship to
> a <u>conceivable</u> legitimate state purpose." (<u>D'Amico</u> v.
> <u>Board of Medical Examiners</u> (1974) 11 Cal.3d 1, 16-17;
> <u>In re Arthur W.</u> (1983) 171 Cal.App.3d 179, 184-185).
> (emphasis added).

Further, "when a legislative enactment is attacked upon this
ground all presumptions and intendments are in favor of the
reasonableness and fairness of the legislative action...and the
decision of the Legislature as to what is a sufficient
distinction to warrant the classification will not be overthrown
by the courts unless it is palpably arbitrary."  (<u>People v.
Monterey Fish Products Co.</u> (1925) 195 Cal. 548, 556).

Thus, plaintiffs must demonstrate that the ACT is "clearly,
positively, and unmistakenly unconstitutional" or that it is not
"rationally related to <u>any conceivable</u> legislative objective".
(<u>Burnett v. Municipality of Anchorage</u>, (9th Cir. 1986) 806 F.2d
1447, 1450).

12.

1  **B.  EQUAL PROTECTION ANALYSIS**

2

3      Tradition equal protection analysis generally requires the
4  Court to first examine and determine whether the classification
5  imposed by the statute in question interferes with a fundamental
6  right or is traditionally a suspect classification. (See <u>City of</u>
7  <u>Dallas v. Stanglin</u> (1989) 490 U.S. 19, 23).  An examination of
8  section 4800(b) reveals that it is facially neutral; no
9  classifications are made.  Rather, the language of section
10 4800(b) is clear, the ban on importation applies equally to <u>all</u>
11 <u>persons</u>.  In fact, contrary to the Plaintiffs' contention, the
12 prohibition against importation applies to all persons regardless
13 of when possessed.

14      Furthermore, even assuming the effect of the application of
15 Section 4800(b) does create some sort classification, it is not
16 one of the enumerated group of suspect classifications that would
17 trigger strict scrutiny under the equal protection clause.  For
18 example, even though not directly stated, it is implicit in the
19 Plaintiffs' argument that the ACT's ban on importation of
20 mountain lion trophies impairs their ability to earn a living.
21 Nevertheless, it is well settled that the right to pursue a
22 particular livelihood is not a fundamental right for equal
23 protection purposes.  (<u>Williamson v. Lee Optical of Oklahoma,</u>
24 <u>Inc.</u> (1955) 348 U.S. 483).  This legal proposition is
25 particularly persuasive in this instance because the ban only
26 applies to mountain lion trophies.  The resulting impact on
27 taxidermists, tannery owners and hunters is minimal.

28      Since the prohibition on the importation of mountain lion

13.

_____ City and County of San Francisco (1987) 199
Cal.App.3d 1496, 1507.), and since the ban does not involve a

suspect classification, all the court needs to find is a

"conceivable legitimate state purpose" to uphold the validity of

the law.


C. THE BAN ON IMPORTATION SERVES A LEGITIMATE STATE PURPOSE


    Indeed, a conceivable legitimate state purpose is easily

discerned.  It is beyond dispute that conservation and

preservation of California's natural wildlife resources is an

important and valid state purpose. (See, e.g. Baldwin v. Fish &

Game Comm'n of Montana (1978) 436 U.S. 371, 389-90, [conservation

is a legitimate state objective justifying legislation under the

rational basis standard]; People v. Weeren (1980) 26 Cal.3d 654,

666-67, [California regulation of fishing methods serves the

important state interest of preserving valuable fishing

resources].

    In addition, a complete ban on the importation of mountain

lion trophies acquired after June 6, 1990, serves a legitimate

law enforcement objective.  The law enforcement objective that is

achieved is that a complete ban on the possession, regardless of

where taken, helps eliminate law enforcement problems that may

arise from expecting a law enforcement officer to determine the

source of the the mountain lion parts or products.  A total ban

is more efficient for enforcement purposes because the simple

fact of possessing the lion, part or product thereof, assuming it

14.

is possessed after a certain date, is evidence of a violation".

In Ex Parte Maier (1894) 103 Cal. 476, the California Supreme Court considered a statute which prohibited the sale of deer meat and imposed criminal sanctions for violation.  The defendant, who was arrested while selling deer meat lawfully taken in Texas, challenged the statute and argued that the statute was intended to protect California game and not to prohibit the importation and sale of game from other states.  The Court rejected this argument and observed that the statute "denouces the sale of the meat of any deer ... ." (Id. at p. 480).  The Court also recognized the rationale for a total ban of deer meat sales for enforcement purposes "owing to the practical impossibility in the great majority of cases of proving with certainty the source from which (the deer) was procured." (Ibid.).  Similarly, section 4800(b)'s total ban on possession of mountain lion parts or products eliminates the warden's enforcement problem of determining the source of these parts or products.

D.  SECTION 4800 IS MORE RECENT, SPECIFIC, AND CONTROLLING

The plaintiffs further contend that a complete ban on mountain lion trophy importation is inconsistent with other laws, namely Fish and Game Code, sections 2353(a) and 4700.  Section 2353(a) provides:

> "Notwithstanding any other provision of law, birds, mammals, fish, reptiles, or amphida may be brought into this State and possessed if legally taken and legally possessed outside of this State and a declaration is submitted to the department or a designated state or federal agency at or immediately prior to the time of entry, in the form and

15.

Further, section 4700 provides that:

> "<u>fully protected mammals</u> or parts thereof may not be taken
> or possessed at any time... Legally imported fully
> protected mammals or parts thereof may be possessed under a
> permit issued by the Department".

A preliminary analysis of section 2353(a) would suggest that it applies to virtually all species of animals, including the mountain lion.  Section 4700, on the other hand, does not specifically enumerate the mountain lion, and therefore, does not seem to apply.  Prior to the passage of the ACT, this was a reasonable preliminary interpretation of the applicability of sections 2353(a) and 4700 to the mountain lion in the State of California.

However, in June 1990, Proposition 117, known as the "Mountain Lion Iniative", was enacted by the voters.  As a result, the ACT became law and the mountain lion became classified as a "<u>specially protected mammal</u>" under the laws of the State of California.  [See <u>Fish and Game Code</u>, section 4800(a)].  Hence, by statutory definition, the mountain lion is not a <u>fully protected mammal</u>.  Accordingly, section 4700 does not apply.

Further review of sections 2353(a) and 4800(a), as modified by Proposition 117, reveals an apparent conflict.  To resolve this apparent conflict in statutory interpretation, the courts generally rely upon the traditional principles that (1) the later enacted statute controls over the previously enacted statute, and (2) specific statutory provisions normally control as against more general provisions concerning the same subject. (<u>In Re</u>

Michael C. (1988) 44 Cal.3d 282, 293). These two rules should be

applied here. Thus, since section 4800 is both more recent and

more specific, it is controlling.

The specific and clear language of section 4800 prohibits

the importation of mountain lions under most circumstances.

Without further legislation, it would be inappropriate to apply

sections 2353(a) and 4700 as Plaintiffs suggest. In fact, Fish

and Game Code section 4800(d) specifically prohibits the Fish and

Game Commission and the Department from adopting any regulation

that conflicts with or supersedes any of these provisions.


E.  SECTION 4800 MEETS THE RATIONAL RELATIONSHIP TEST


The State, through its voters, has made the judgment that in

legislation designed for the protection of the mountain lion in

the State of California, it is quite rational to impose a total

ban on the importation of _all_ mountain lions or any part or

product thereof.  In effect, the Plaintiffs are now attempting to

contest the _wisdom_ of the law enacted by Proposition 117, and

seem to assert that a _better statute_ could be enacted that is

_more rationally related_ to the intended purpose to be served.

Whether this may be true or not is irrelevant.  As the court in

_Paretto_ v. _Department of Motor Vehicles, supra_ at 456 stated:

> "We emphasize that while this or any court may perceive
>
> that the purpose of legislation . . . might be
>
> accomplished more fairly or efficiently by an
>
> objector's suggested modification, the Legislature's
>
> drafting of such legislation is generally a matter

17.

2   A related precept of equal protection review is that the

3   "Legislature need not address all facets of a problem at once, or

4   at all, but may deal with particular parties and issues in

5   accordance with priorities satisfying to itself." (Hale v. Morgan

6   [1978] 22 Cal.3d 388, 395; Peters v. Superior Court (1989) 212

7   Cal.App.3d 218, 226).

8         In sum, "[t]he equal protection provisions of the federal

9   and state Constitutions protect only those persons similarly

10  situated from invidiously disparate treatment." (Brown v. Merlo

11  (1973) 8 Cal.3d 855, 861; Duffy v. State Personnel Bd. (1991) 232

12  Cal.App.3d 1, 20; emphasis added).  Where there is a conceivable

13  legitimate purpose for making a distinction, the persons are not

14  similarly situated. (See Duffy v. State Personnel Bd., supra at

15  20-21).  In this instance, the statute in question does not

16  create different classifications, no one is treated differently.

17  The classification advanced by Plaintiffs "hunters" versus "anti-

18  hunters" makes for good argument, but it is irrelevant.

19        The equal protection and due process clauses "do not prevent

20  classification by the Legislature, nor do they require that

21  statutes operate uniformly with respect to persons or things

22  which are in fact different".  (County of Los Angeles v. Southern

23  California Telephone Company, (1948) 32 Cal. 2d 378, 388-89).  It

24  is not for this Court to determine whether the mountain lion

25  importation ban is "wise or sensible".  Since the Plaintiffs have

26  failed to establish either discriminatory class treatment or the

27  lack of a rational basis, the constitutional challenge based on

28  equal protection must fail.

18.

THE BAN ON IMPORTATION DOES NOT VIOLATE
THE INTERSTATE COMMERCE CLAUSE

The Plaintiffs allege in the Complaint that they are
deprived of their right to interstate travel. Beyond this mere
assertion, nothing is offered to support this allegation.
Presumably, the focus of the plaintiffs' allegation is whether or
not the importation ban on mountain lion trophies violates the
Interstate Commerce Clause; i.e., the effect this ban has on
interstate commerce from persons wishing to import mountain lions
or parts into the State of California.

A.   THE BAN ON IMPORTATION DOES NOT DIRECTLY REGULATE OR
     DISCRIMINATE AGAINST INTERSTATE COMMERCE

It is clear that federal courts do not routinely strike down
any and all state legislation that has an incidental effect on
interstate commerce. As the Court observed in Edgar v. Mite
Corp. (1982) 457 U.S. 624, "Not every exercise of state power
with some impact on interstate commerce is invalid. A state
statute must be upheld if it regulates evenhandedly to effectuate
a legitimate local public interest, and its effects on interstate
commerce are only incidental . . . unless the burden imposed on
such commerce is clearly excessive in relation to the putative
local benefits. (See also Pike v. Bruce Church, Inc. (1970) 397
U.S. 137, 142).

The only types of statutes that are virtually per se invalid

19.

2   persons and out-of-state persons, or statutes that directly

3   regulate the out-of-state conduct of in-state persons.   Section

4   4800(b) of the Fish and Game Code does not fall into either

5   category. (See <u>Brown-Forman Distillers Corp. v. New York State</u>

6   <u>Liquor Authority</u> (1986) 476 U.S. 573, 579).

7        In <u>Brown-Forman</u>, the Court struck down a statute that

8   required that New York producers of liquor to sell it at a price

9   that was no higher than the lowest price the distiller charged

10  anywhere else in the United States.   This New York statute was

11  held unconstitutional because it effectively regulated the price

12  of liquor in other states.

13             "By requiring distillers to affirm that they will make
               no sales anywhere in the United States at a price lower
14             than the posted price in New York . . ., New York makes
               it illegal for a distiller to reduce its price in other
15             states . . . . while New York may regulate the sale of
               liquor within its borders . . . it may not project its
16             legislation into [other states] by regulating the price
               to be paid for liquor in those states."

17

18  (<u>Brown-Forman</u>, <u>supra</u> at 579).   Similarly in <u>Edgar v. MITE Corp.</u>,

19  an Illinois takeover statute was struck down because it gave

20  Illinois the power to block corporate takeovers even where all of

21  the Company's shareholders were located outside the state of

22  Illinois.   The statute was, therefore, "a direct restraint on

23  interstate commerce [which had] a sweeping extraterritorial

24  effect." (<u>Edgar v. MITE Corp.</u>, <u>supra</u> at 2640).

25       Likewise, in <u>National Meat Ass'n v. Deukmejian</u>, (9th Cir.

26  1984) 743 F.2d 656, the Ninth Circuit dealt with a tax which was

27  discriminatory on its face.   As the Ninth Circuit explained,

28  "Out-of-state beef processors are taxed; their California

                              20.

counterparts are not.   There was clear discrimination between
in-state and out-of-state actors.   No such discrimination exists
in the instant situation.

In contrast to the statutes reviewed by the federal courts
in Brown-Forman, Edgar, and National Meat, section 4800(b) in no
way restricts a person or entity from California from doing
whatever they want in other states.   They can take, injure,
possess, transport, import, or sell mountain lions or any part or
product thereof without violating the California statute.   In
Brown-Forman, it was a violation of the New York law to reduce
liquor prices in other states.   In Edgar, it was a violation of
the Illinois law to purchase stock in other states.   By contrast,
no conduct proscribed by section 4800(b), if performed outside
the State of California, violates California law.

Thus, any argument offered by the plaintiffs regarding an
incidental discriminatory purpose or discriminatory effects
analysis is not relevant to the question of constitutionality.

It is important to note that Proposition 117 was a voter
initiative designed to protect and preserve the mountain lion in
the State of California.   This is not a case of a statute
designed either as a commercial protectionist statute or to
protect/benefit local industry at the expense of out-of-state
competitors.

The Wildlife Protection Act of 1990 is nondiscriminatory, it
treats all persons identically, whatever state they may be from.
All are prohibited from taking, injuring, possessing,
transporting, importing or selling mountain lions within the
State of California.   Without question, wildlife conservation and

21.

B.   <u>THE BAN ON IMPORTATION REGULATES EVENHANDEDLY AND PLACES</u>

    <u>INCIDENTAL BURDENS ON INTERSTATE COMMERCE THAT ARE FAR</u>

    <u>OUTWEIGHED BY THE BENEFITS TO THE STATE OF CALIFORNIA</u>

      Under the balancing test of <u>Brown-Forman</u>, this Court is compelled to balance the burdens on interstate commerce against the benefits to citizens of the State of California. But the purpose of this inquiry is not to replace the judgment of the California voters with that of this Court. The purpose is to test whether the statute is "irrational" and the benefits "illusory." As recently stated by the Ninth Circuit:

> "For a facially neutral statute to violate the commerce clause, the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational. Such is the case where the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry."

(<u>Alaska Airlines v. Pacific Southwest Airlines</u> (9th Cir. 1992) 951 F.2d 977, 993).

      In order for this court to grant the Plaintiffs relief, this Court would need to conclude that the importation ban of section 4800(b) imposes a substantial burden on interstate commerce and that this burden so outweighs the benefits that the statute is rendered unreasonable or irrational. The Plaintiffs simply have not met this burden. Contrary to the Plaintiffs claims, the direct impact on interstate commerce is only incidental and minimal. Taxidermists, tannery owners and hunters are not being deprived of their livelihood. Certainly, from a commercial

22.

1  standpoint, there are animals and items, other than mountain

2  lions, more deserving of stuffing, e.g., the thanksgiving-day-

3  turkey.   These burdens on commerce are negligible given the

4  benefits that will inure to California citizens.

5      The California voters' determination that the mountain lion

6  is deserving of protection and that importation is prohibited in

7  the State of California should not be disturbed by this Court.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONCLUSION

For the foregoing reasons, the relief sought by the Plaintiffs must be denied. The Plaintiffs have failed to sustain their burden of proof. They have not been denied their constitutional rights to equal protection and interstate travel (interstate commerce).

In effect, the Plaintiffs are asking this Court to legislate. If they honestly feel that the voters made a mistake on June 5, 1990, then they should more appropriately put the issue back on the ballot for reconsideration.

Therefore, the defendants respectfully request this court to find that Section 4800(b) of the Fish and Game Code, specifically as it relates to importation, is constitutional and valid, and that the rights to equal protection and interstate travel have not been denied.

Sincerely,

DANIEL E. LUNGREN
Attorney General


JEREMIAH D. BLAIR
Deputy Attorney General

24.