Linda J. Linton, Esq. (Counsel for Service)
(California Bar No. 177821)
Linton & Associates, P.C.
6900 S. McCarran Blvd., #2040
Reno, NV  89509
Telephone: (775) 333-0881
Facsimile: (775) 333-0877
llinton@lintonlegal.com

Douglas S. Burdin, Esq. (PHV)
(D.C. Bar No. 434107)
Anna M. Seidman, Esq. (PHV)
(D.C. Bar No. 417091)
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org
aseidman@safariclub.org

Counsel for Plaintiff
Safari Club International

## IN THE DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL ) <br> 501 Second St., NE ) <br> Washington, D.C. 20002, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> KAMALA D. HARRIS, in her official ) <br> capacity as the Attorney General of ) <br> California ) <br> 1300 "I" Street ) <br> Sacramento, CA 95814-2919, ) | Case No. 2:14-cv-01856-GEB-AC <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATIVE AND INJUNCTIVE RELIEF** |

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

1

1    CHARLTON H. BONHAM, in his        )

2    official capacity as the Director of the    )

3    California Department of Fish and     )

      Wildlife                                    )

4    1416 9th Street, 12th Floor        )

      Sacramento, CA 95814,         )

5                                            )

              Defendants.           )

6    _____ )

## I.   INTRODUCTION[1]

1.      In this lawsuit, Plaintiff Safari Club International ("Safari Club") challenges the State of California's ban on the importation, transportation, and possession in California of mountain lions hunted outside of California (collectively referred to as "Import Ban").  The Import Ban is unconstitutional under the U.S. Constitution's Commerce Clause (art. I, § 8, cl. 3) and Equal Protection Clause (amend. XIV).  Section 4800 of the California Fish and Game Code makes it "unlawful to take, injure, possess, transport, import, or sell any mountain lion or any part or product thereof," subject to limited exceptions (none of which apply to the importation, transportation, and possession of imported mountain lions).  CAL. FISH & GAME CODE § 4800(b)(1).  The Import Ban adversely and significantly burdens interstate commerce associated with the hunting of mountain lions and interstate movement of people and articles of commerce. The Import Ban serves no legitimate state or local interest.  It discriminates against those persons

_____

[1] In an Order filed on April 29, 2015 (Dkt. 37), the Court granted Safari Club 14 days from the date the Order was filed to file a First Amended Complaint.

who want to hunt mountain lions outside of California and import, transfer, and possess any such mountain lions in California.  In contrast, those who hunt other non-imperiled species outside California are permitted to import, transfer, and possess them in California.  The enforcement of the Import Ban under color of state law by defendants Kamala D. Harris and Charlton H. Bonham ("State Defendants") violates 42 U.S.C. § 1983.  In this lawsuit, Safari Club does not challenge Section 4800's ban on the taking, injuring, possessing, transporting, or selling of mountain lions hunted within the State of California, or the import ban as it might apply to live mountain lions.

2.      During the limited period of time that Safari Club has been preparing for and pursuing this litigation, approximately 140 members of Safari Club have affirmatively expressed a desire to do one or more of the following: (1) import into, transport within, and possess within California mountain lions that they have already legally hunted outside of California; (2) participate in already planned mountain lion hunts outside of California in the near future and be able to import into, transport within, and possess within California any mountain lions harvested in those hunts; or (3) participate in mountain lion hunts outside of California with the intent of importing any harvested mountain lions into California (and make definite plans to do so as soon as possible after the lifting of the Import Ban).  Individuals, businesses and organizations have expressed the desire and capability to provide services such as outfitting, guiding, taxidermy, and other services related to mountain lion hunting outside of California.

3.      On information and belief, a large number of individuals, businesses and organizations, other than the ones that have already contacted Safari Club (likely numbering in the thousands), including both members of Safari Club and persons who are not members of

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

3

Safari Club, would, if the Import Ban were lifted, make similar plans to transport into California already harvested animals, hunt mountain lions outside of California, and/or provide services related to mountain lion hunting outside of California.

4.     The Import Ban substantially burdens interstate commerce.  The Import Ban directly discourages California residents from travelling to other states or countries to hunt mountain lions.  As detailed below, the total cost for most mountain lion hunting trips outside of California generally would range from $4,000-20,000, depending on various factors.  Hunts to foreign countries, such as Canada and Argentina, generally are more expensive.

5.     For those persons who have already hunted a mountain lion outside of California, the Import Ban prevents them from shipping to California the hide, trophy, or other parts of a harvested mountain lion.  Depending on the type and size of the hide, trophy or other part, and the origin and destination of the shipped product, the cost of crating and shipping for each person generally would range between $200-1,000.

6.     Mountain lions (genus Puma) are not an endangered or threatened species under the Federal Endangered Species Act.  Although California designates the mountain lion as a "specially protected mammal," on information and belief, the mountain lion is not considered or protected as an endangered or threatened species (or comparable status) under California or any other state law.  In fact, in many states and foreign nations, the mountain lion is a game animal and is managed through regulated hunting.  But for the Import Ban, residents of California (and others) could hunt mountain lions in other states and countries and import into, transport and possess within California those legally hunted mountain lions, as they can for numerous other game animals, birds, and fish.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

7.      In 1990, California voters enacted by initiative Proposition 117, the California Wildlife Protection Act of 1990, which includes the Import Ban and other provisions related to mountain lions.  *See* CAL. FISH & GAME CODE § 4800 *et seq.*  Section 4800 does not prohibit the possession or sale of mountain lions or mountain lion parts if the owner can demonstrate that the mountain lion or part was in his or her possession on June 6, 1990.  *Id.*  In 2011, the legislature amended Section 4800 to allow the possession of mountain lion parts if all the following conditions are met: (1) the parts are being displayed for scientific or educational purposes at a public museum or a public or private postsecondary institution; (2) the mountain lion was taken within California under the exceptions to the take prohibition; and (3) the Department of Game and Fish authorizes the possession.  *Id.* § 4800(b)(3).

8.      Proposition 117 included findings and declarations related to the purpose behind the initiative.  The findings and declarations almost exclusively related to concerns over adverse impacts to wildlife habitats and the need to protect, enhance, and restore the wildlife habitats (including specifically for mountain lions) and fisheries.  CAL. FISH & GAME CODE § 2780.  Proposition 117 also found and declared that "wildlife and fisheries conservation is in the public interest," *id.* § 2781, but the findings and declarations did not mention the need to ban the hunting of mountains lions within California, much less any purpose behind banning the importation, transportation, and possession of mountain lions hunted outside of California.

9.      Nothing in the findings and declarations in Proposition 117 suggested or indicated that well-regulated mountain lion hunting, as previously allowed in California and as allowed in numerous other states and countries, is cruel or unnecessary.  Nothing in any other California law indicates or establishes that well-regulated mountain lion hunting, as previously allowed in

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

California and as allowed in numerous other states and countries, is cruel or unnecessary.  Well-regulated mountain lion hunting is not cruel or unnecessary.  Under California law, the hunting of game animals is specifically excluded from the prohibitions against cruelty to animals.  CAL. PENAL CODE § 599c (West) ("No part of this title shall be construed as interfering with any of the laws of this state known as the 'game laws,'….").  The hunting of mountain lions, as previously allowed in California and as allowed in numerous other states and countries, can be and is conducted using the same hunting methods as used for other species in California.  Upon information and belief, the California Department of Fish and Wildlife ("Department"), during the period of time that California voters adopted the Import Ban, did not consider or view regulated mountain lion hunting as animal cruelty.  In fact, the Department was considering the reinstatement of mountain lion hunting in 1990, at the time that Proposition 117 was on the ballot (and had tried to reinstate mountain lion hunting in 1987 and 1988).  Upon information and belief, the current Department and its director do not consider or view regulated mountain lion hunting, including as conducted in other states and countries, as animal cruelty.

10.     Properly processed, taxidermied or handled mountain lions pose no threat to the safety, health, or welfare of the people or resources of California.  Numerous other harvested animals enter California, including from other countries, and are transported and possessed throughout the state without harm or risk to the safety, health, or welfare of the people or resources of California.  Upon information and belief, the State of California has never identified a properly processed, taxidermied, or handled animal, including a mountain lion, as a threat to the safety, health, or welfare of the people or resources of California.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

6

11.     The Import Ban singles out and discriminates against the group of hunters who wish to hunt mountain lions out of state and import into, transfer and possess within California their harvested mountain lions.  Hunters of other species, including those species that are not protected under state or federal law (*e.g.,* are not endangered), are not subject to a complete ban on the importation, transportation, and possession of their harvested animal in California. Hunters of some other species that are protected under state or federal law (*e.g.,* are listed as threatened or endangered) are not subject to a complete ban on the importation, transportation, and possession of their harvested animal in California.

## II.     JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action because Safari Club and members of Safari Club are currently adversely affected and aggrieved by the Import Ban, which is enforced by the State Defendants, and will continue to be harmed by it unless this Court declares it illegal and enjoins its enforcement.  Safari Club has standing to assert these claims in its own right and on behalf of its members who desire to import into, transport and possess within the State of California mountain lions legally hunted outside of California.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction).

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, which provides that:

(b) Venue in general.--A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or ….

The State Defendants' official places of business are located in this district.  A substantial part of the events giving rise to these claims occurred in this district.

14.     This Court can grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, …  any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") and 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.").

## III.    PARTIES

15.     Safari Club is a nonprofit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with its principal office and place of business in Tucson, Arizona.  Safari Club maintains an office in Washington, D.C.  Its membership includes approximately 47,000 individuals from the United States and many of the countries around the world.  Safari Club has approximately 4,400 members in California.  Safari Club has 13 chapters in California.  Safari Club's missions include the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool.  Advocating for enhanced opportunities to hunt and the ability to enjoy the fruits of hunts, including by being able to import, transport, and possess mountain lions legally hunted outside of California, advances and is germane to Safari Club's missions.

16.     Safari Club carries out its conservation mission in part through its sister organization, Safari Club International Foundation ("SCI Foundation").  SCI Foundation is a

nonprofit IRC § 501(c)(3) corporation.  Its missions are to fund and direct worldwide programs dedicated to wildlife conservation and outdoor education.  More specifically, the conservation mission of SCI Foundation is to conduct and support scientific and technical studies in the field of wildlife conservation, to assist in the design and development of scientifically sound wildlife programs for the management of wildlife and sustainable-use hunting, and to demonstrate the constructive role that hunting and hunters play in the conservation of wildlife and in preserving biodiversity worldwide.

17.     Safari Club and SCI Foundation are organizations that promote the principle and practice of sustainable-use conservation.  Safari Club and its members' interests include the sound management and conservation of wildlife, including mountain lions, in the United States and around the world.  The ability of hunters to harvest animals and freely transport those animals between and within states advances sustainable-use conservation by encouraging more hunters to hunt animals that state and other governmental entities manage and conserve.

18.     Safari Club has members who have successfully hunted mountain lions outside of California and who wish to import their sport-hunted mountain lions into California.  Safari Club also has members who have definite plans to hunt mountain lions outside of California in the near future and who wish to import their sport-hunted mountain lions into California if successful in their hunt.  Other Safari Club members desire to hunt mountain lions outside of California and import their sport-hunted mountain lions into California but have not made plans to do so because of the Import Ban.  These members also desire to transport and possess within California any mountain lion hunted outside of California.  Still other Safari Club members are outfitters and guides who would benefit from providing more mountain lion hunts outside of

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

California to California residents (many of whom have decided and will continue to decide not to purchase such hunts because of the Import Ban).

19.     Safari Club possesses sufficient interests in the subject matter of this litigation to establish standing.  Safari Club and its members have suffered concrete and ongoing injury in fact caused by the Import Ban.  A court ruling declaring the Import Ban unconstitutional and illegal, setting aside the Import Ban, and enjoining enforcement of the Import Ban would redress those injuries by allowing Safari Club members to import mountain lions hunted outside of California and to transport and possess them within California.  Members of Safari Club would have standing to bring this lawsuit in their own right.  Overturning the Import Ban so that Safari Club members and others can import any legally hunted mountain lions into the state and transport and possess those mountain lions within the state is germane to Safari Club's purposes.  The claims Safari Club has asserted in this First Amended Complaint and the relief it has requested do not require the participation of individual Safari Club members in this lawsuit.

20.     Defendant Kamala D. Harris is the Attorney General of California.  She is sued in her official capacity.  She is responsible for enforcing and directing others to enforce the laws of California, including through arresting and prosecuting any person found to be in violation of the Import Ban.  Cal. CONST. art. V., § 13; *see, e.g.,* CAL. GOV'T CODE §§ 12511, 12550.

21.     Defendant Charlton H. Bonham is the Director of the California Department of Fish and Wildlife.  He is sued in his official capacity.  He is responsible for enforcing the game laws of California, including the Import Ban, and preventing any person, including Safari Club members, from importing, transporting, or possessing a mountain lion hunted outside of California.  *See* CAL. FISH & GAME CODE §§ 700, 702, 704.  Within his department and under his

10

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

authority are "Wildlife Officers," also known as "Game Wardens."  The Game Wardens have statewide jurisdiction and their primary function is to enforce the Fish and Game Code, including the Import Ban.

## IV.   LEGAL BACKGROUND

### A.   The Import Ban

22.   The voters in California enacted the Import Ban in 1990 as part of a larger initiative measure – Proposition 117.  Proposition 117 primarily concerned the establishment, funding, and use of the "Habitat Conservation Fund" ("Fund").  The purpose of the Fund was to acquire various types of habitat.  CAL. FISH & GAME CODE § 2786.  Proposition 117 requires that the State spend no less than $30,000,000 per year on habitat conservation and related actions. *See id.* § 2796.  The only part of Proposition 117 that did not concern habitat conservation was Chapter 10, which dealt with the mountain lion and contained the Import Ban.  *Id.* §§ 4800-4809.

23.   The Import Ban makes it unlawful to, among other things, import mountain lions into California, and transport or possess within California a mountain lion hunted outside of California.  *Id.* § 4800.  There are no exceptions to these prohibitions for mountain lions hunted outside of California.

24.   The two findings and declaration sections of Proposition 117 focused almost exclusively on the need to protect the habitats and ranges of California's fish and wildlife.  *Id.* §§ 2780-2781.  Neither of these two sections mentioned the ban on mountain lion hunting, importation, transportation, or possession.  Neither of these two sections provided any justification for banning the importation, transportation, or possession of mountain lions hunted outside of California.  *Id.*  Banning importation and discouraging the hunting of mountain lions

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

11

outside of California by California residents does not in any way enhance or support habitat conservation in California.

25.     The State, through the voter initiative process, would have the ability to conclude that taking (killing), injuring, possessing, transporting, or selling of mountain lions hunted *within* California serves the purpose of managing the individual animals and the species within California.  (Safari Club does not and would not agree with this conclusion.)  Nevertheless, under no circumstances would a ban on the importation of mountain lion parts from *outside* of California, including all U.S. states and foreign countries, serve the purpose of managing the individual animals and the species within California.

26.     State action, such as enforcing the Import Ban, is subject to the U.S. Constitution's Commerce Clause and Equal Protection Clause through the Supremacy Clause and any state law found to violate the Commerce Clause or Equal Protection Clause must be set aside and made unenforceable.  U.S. CONST. art. VI, cl. 2.

**B.     U.S. Constitution - Commerce Clause**

27.     The Commerce Clause of the U.S. Constitution provides in part the authority "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; …."  U.S. CONST. art. I, § 8, cl. 3.  "Although the Clause thus speaks in terms of powers bestowed upon Congress, the Court long has recognized that it also limits the power of the States to erect barriers against interstate trade."  *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35 (1980).  This principle is sometimes referred to as the "dormant Commerce Clause."

28.     The courts have established various tests to analyze Commerce Clause violations.  "If the regulations discriminate in favor of in-state interests, the state has the burden of

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

establishing that a legitimate state interest unrelated to economic protectionism is served by the regulations that could not be served as well by less discriminatory alternatives." *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994), *citing Maine v. Taylor,* 477 U.S. 131, 138 (1986). On the other hand,

> Where the statute regulates even-handedly to effectuate a ***legitimate*** local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. … If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (emphasis added; citations omitted).  In applying *Pike*, the Supreme Court has analyzed whether the defendant "could have achieved its aims without burdening interstate commerce."  *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 526 (1989), *citing Pike*, 397 U.S. at 142; *see also Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 731 F.3d 843, 846 (9th Cir. 2013) (quoting *Pike* test as including "whether [the state's interest] could be promoted as well with a lesser impact on interstate activities")

29.     In *Pike*, the one-time impact was qualified as requiring a meat packing company to construct a $200,000 processing plant (in 1970 dollars).  *Pike,* 397 U.S. at 140.  In 2015, adjusting for inflation, that impact would be about $1,200,000.  U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Indicator, Inflation Calculator, http://www.bls.gov/data/inflation_calculator.htm (visited May 13, 2015) (using this calculator, $200,000 in 1970 is comparable to $1,209,907.22 in 2015).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

30.     "All objects of interstate trade merit Commerce Clause protection; none is excluded by definition at the outset."  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622 (1978).  Hunters travelling between states and spending money in associated activities affect and are a part of interstate commerce such to invoke dormant Commerce Clause scrutiny.  *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 573 (1997) ("Even though petitioner's camp does not make a profit, it is unquestionably engaged in commerce, not only as a purchaser, … but also as a provider of goods and services.  It markets those services … to campers who are attracted to its facility from all parts of the Nation. … The attendance of these campers necessarily generates the transportation of persons across state lines that has long been recognized as a form of 'commerce.'"); *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 & n.7 (9th Cir. 2002).  Wildlife, once reduced to possession by the hunter (or trapper or angler), becomes an article of interstate commerce.  *Conservation Force*, 301 F.3d at 993-95; *Hughes v. Oklahoma*, 441 U.S. 322, 339 (1979).

## C.      U.S. Constitution - Equal Protection Clause, Fourteenth Amendment

31.     The U.S. Constitution prohibits the states from denying any person the equal protection of the laws.  U.S. CONST. amend. XIV ("Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.").  This amendment directly applies to the States, including the State Defendants.

14

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

32.     The Supreme Court has explained in general that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (striking Colorado law discriminating against homosexuals).  The Import Ban does not involve a fundamental right or suspect class, so the "rational relation" test applies.

### D.     42 U.S.C. § 1983 – Constitutional Violations Under Color of State Law

33.     A federal statute provides a civil remedy for violations of federal constitutional law under the color of state law.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….").

34.     Defendants Harris and Bonham are "persons" under § 1983 because Safari Club is suing them for prospective declaratory and injunctive relief.  "A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985); *Ex parte Young,* 209 U.S. 123, 159-60 (1908)).  Safari Club is not bringing a Section 1983 claim for monetary damages and is not bringing any claim directly against the State of California.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

## V.    FACTUAL BACKGROUND

35.    As explained on the California Department of Fish and Wildlife's website:

Mountain lions are not threatened nor endangered in California. In fact, the lion population is relatively high in California and their numbers appear to be stable. Mountain lions are legally classified as a "specially protected species". This has nothing to do with their relative abundance and does not imply that they are rare. … More than half of California is prime mountain lion habitat. Generally speaking, mountain lions can be found wherever deer are present, since deer are a mountain lion's main food source. Foothills and mountains and [sic] most suitable mountain lion habitat, while valleys and deserts are considered unsuitable.

http://www.dfg.ca.gov/wildlife/lion/lion_faq.html (Updated 12/07) (visited May 12, 2015).

Mountain lions prey on desert bighorn sheep, domestic sheep, cattle, horses, antelope, other ungulates, and domestic pets, depending on the lions' habitat.  Although mountain lions are normally found in foothills and mountains, they occupy areas near where humans live, including in urban areas.  States need to manage mountain lions, including through regulated hunting to control population numbers and address human-lion conflicts.

36.    Since the effective date of the California Wildlife Protection Act of 1990, Safari Club members and others have been barred from importing legally harvested mountain lions into California.  Since that same date, Safari Club members and others have been barred from transporting and possessing within California any mountain lion harvested outside of California. Since that date, the Import Ban has discouraged Safari Club members and others from hunting mountain lions outside of California.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

16

### A.      Opportunities for California Residents to Harvest Mountain Lions in Other States and Countries

37.      Residents of California can legally hunt mountain lions in the following Western states:  Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, South Dakota, Utah, Washington, and Wyoming.

38.      The states that allow mountain lion hunting, including by non-residents, regularly do not fill their quotas for mountain lions, meaning that California residents would have an opportunity to hunt mountain lions in these other states, in addition to the hunting by residents and non-residents of that state.  The following are examples.

- In the 2013-14 mountain lion season for Colorado, 2,178 hunters harvested 425 mountain lions, for a 20% success rate.  Colorado Department of Parks and Wildlife website, http://cpw.state.co.us/Documents/Hunting/MountainLion/Statistics/2013StatewideLionHarvest.pdf (visited May 6, 2015).  The quota for that season was 635, meaning 210 additional mountain lions were available for harvest by California residents during that season.  Colorado Department of Parks and Wildlife website, Memorandum on 2014-2015 Mountain Lion Harvest Quota Recommendations, page 1, http://cpw.state.co.us/Documents/Commission/2014/Sept/ITEM10-ChW-2-LionQuotas.pdf#search=mountain%20lion%20annual%20quota%20total (visited May 6, 2015).

- Nevada has an open season on mountain lions until the annual quota is met.  During the ten hunting seasons from March 2004 to February 2014, the state

17

averaged a quota of 362 mountain lions each season.  On average only 134 were taken by hunters each season, leaving an average of 228 mountain lions available for California residents each year.

http://www.ndow.org/uploadedFiles/ndoworg/Content/Wildlife_Education/Publications/2014-Big-Game-Status-Book.pdf, pp. 107-112 (visited May 12, 2015).

- In one hunting area in South Dakota, the 2015 quota for the season, which ended on March 30, 2015, was 75 total or 50 female (whichever came first); the actual number of mountain lions harvested were 43 total and 22 female.  South Dakota Department of Department of Game, Fish and Parks website,

  http://gfp.sd.gov/hunting/big-game/mountain-lion-season-harvest-status.aspx (visited May 6, 2015).  Consequently 32 total mountain lions or 28 female mountain lions remained available to California residents to hunt in that parat of South Dakota during the 2015 season.

- The State of Idaho sets quotas for mountain lion harvest in parts of southern Idaho by limiting the number of female mountain lions that may be harvested.  In the 2014-15 season, which ended on March 31, 2015, the quota was 126 females.  Only 50 females were harvested, leaving 76 female mountain lions available to California residents to hunt in the 2014-2015 season (and a significant number of male mountain lions available).  Idaho Department of Fish and Game website, http://fishandgame.idaho.gov/public/hunt/?getPage=159 (visited May 6, 2015).

On information and belief, other states have similar unfilled quotas.

18

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

39.     The number of harvested mountain lions does not represent the total number of hunters in the field hunting mountain lions.  Mountain lions are difficult to hunt, especially without the use of dogs, and many hunters are not successful.  This means that many people buy mountain lion hunts from guides and outfitters, and make other expenditures associated with the hunt, but do not harvest an animal due to the terrain, secretive nature of most lions, and the animal's range.  Consequently, the number of California residents who would hunt mountain lions if the Import Ban was declared unconstitutional and illegal would not be limited to the quota-based number of mountain lions available to hunt in other states and countries.

40.     On information and belief, residents of California can hunt mountain lions in several other states in the United States not identified above.  Residents of California can hunt mountain lions in at least three other countries.  Based on hunts offered to Safari Club members at its annual convention, mountain lion hunting is allowed in Canada, Mexico, and Argentina.  Federal law does not prohibit the importation into the United States of mountain lions legally hunted in foreign countries if all permitting or other requirements are satisfied.  On information and belief, mountain lions legally hunted in any state in the United States or a foreign country can be imported into, and transported and possessed within, every state and territory in the United States except California.

**B.      Impact on Interstate Commerce Caused by the Import Ban**

41.     In response to two requests for information about mountain lion hunting outside of California sent to Safari Club members and a small number of other persons, Safari Club received over 150 responses.  Approximately 21 members of Safari Club affirmatively expressed a desire to import into, transport within, and possess within California one or more mountain

19

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

lions that they have already legally hunted outside of California.  Approximately three members of Safari Club affirmatively expressed a desire to participate in already planned mountain lion hunts outside of California in the near future and a desire to be able to import into, transport within, and possess within California any mountain lions harvested in those hunts. Approximately 120 members of Safari Club affirmatively expressed a desire to participate in mountain lion hunts outside of California with the intent of importing any harvested mountain lions into California and would make definite plans to do so if the Import Ban were lifted. Approximately eight outfitters and taxidermists, and one outfitters' organization, affirmatively expressed to Safari Club a desire to provide services such as outfitting, guiding, taxidermy, and other services related to mountain lion hunting outside of California.

42.     Safari Club members have strong and genuine interests in hunting mountain lions outside of California.  Some Safari Club members have already hunted mountain lions outside of California but were not able to harvest a mountain lion and wish to try again.  Others have been offered the opportunity to hunt a mountain lion outside of California but turned down the invitation because of the inability to import, transport, and possess any harvested mountain lion in California.  Some other members have already contacted outfitters and guides for information about mountain lion hunts outside of California.  Others Safari Club members have researched the types of tags, equipment, and travel plans they would have to make.

43.     On information and belief, a large number of other residents of California, including both members of Safari Club and persons who are not members of Safari Club, would make similar plans to transport into California already harvested animals and hunt mountain lions outside of California if the Import Ban were not in place.  On information and belief,

20

numerous outfitters, taxidermists, and others would provide services related to mountain lion hunting outside of California to residents of California interested in hunting mountain lions if the Import Ban were not in place.  Many sporting goods stores, such as Cabela's, Sportsmen's Warehouse, Scheels, and independently-owned sporting goods stores in California and other states have been supplying and would be able to supply hunting and other equipment and gear needed for mountain lion hunting.  But for the Import Ban, they would sell more products to more California hunters of mountain lions outside of California.

44.     On information and belief, the Department apparently does not track the total number of animals hunted each year or the exact number of hunters, and does not make that information publicly available on its website.  In 2014, the State issued close to 2,000,000 hunting licenses in the state (some hunters hold more than one type of license).  Hunting Items Reported By License Year 2010s, as of 2/28/15, https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=59821&inline (visited May 11, 2015).  A report by the U.S. Fish and Wildlife Service calculates that in 2011 there were 377,000 resident California hunters.  U.S. Department of the Interior, U.S. Fish and Wildlife Service, and U.S. Department of Commerce, U.S. Census Bureau. 2011 National Survey of Fishing, Hunting, and Wildlife-Associated Recreation, at 17, https://www.census.gov/prod/2013pubs/fhw11-ca.pdf (visited May 13, 2015).  On information and belief, in the 2014-15 timeframe, there are approximately 250,000 resident hunters in California.  Approximately 3.2% of Safari Club members in California (141 out of 4,400) expressed an interest in either importing an already harvested mountain lion or undertaking a mountain lion hunt outside of California if the Import Ban were lifted.  Assuming the percentage of Safari Club members who want to hunt mountain

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

lions as compared to the total number of Safari Club members in California is representative of the percentage of all California hunters who would want to hunt mountain lions outside of California, then approximately 8,000 California hunters would be interested in such a hunt.  If even 1% of California hunters had similar desires and intentions, then, if the Import Ban were lifted, approximately 2,500 hunters would be interested in importing an already harvested animal or hunting mountain lion with the intention to import any harvested animal.  On information and belief, a large number of California residents would incur expenses (comparable to those incurred and projected to be incurred by Safari Club members described below) hunting mountain lions outside of California if the Import Ban were lifted.

45.     While not all the hunters who have hunted or have expressed an interest in hunting mountain lions outside of California but for the Import Ban could or would hunt at the same time, over the next several years, a large number of them would undertake the hunt and incur the expenses.

46.     The amount all these hunters would expend on activities they cannot do or are not willing to do with the Import Ban in place represents a substantial, adverse impact on interstate commerce.

47.     The following types of expenses would be incurred on such hunting trips by each person. The hunters who are foregoing trips to hunt mountain lions outside of California because of the Import Ban are not spending these funds.  These costs are lost to commerce, which has an adverse impact on interstate and foreign commerce.  The following is an estimated range of costs:

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

- Guiding and Outfitting Fees (including in Canada and Mexico):  $2,500-10,000 (plus 5-15% gratuity).

- Out of State Travel (*e.g.,* by car or airplane):  $200-1,000.

- Hunting Licenses and Mountain Lion Tags:  $200-600.

- Taxidermy (depending on type):  $500-8,500.

- Crating and shipping of finished product:  $200-1,000.

- Lodging, food, incidentals (depending on length of trip and other factors):  $200-2,000.

- Ammunition, cold weather gear, special firearms and equipment, etc.:  $200-2,000.

- State taxes paid on all these activities (percentage varies from state to state).

48.     The total cost for most mountain lion hunting trips outside of California generally ranges from $4,000-20,000, depending on various factors.

49.     Mountain lion hunting, like other forms of hunting, can involve individuals other than the individual pursuing the animal.  Many hunters choose to be accompanied by a non-hunting "observer" or companion.  Some guided hunts include such a person in the price of the hunt.  These non-hunting observers or companions also would incur expenses, such as travel, food, and gear, for the mountain lion hunt.  Because of the Import Ban, these persons do not incur these expenses.

50.     Some Safari Club members have already successfully hunted mountain lions outside of California, wish to import their sport-hunted mountain lions into California and wish

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

23

to transport and possess them within California.  The Import Ban prevents these persons from shipping to California the hide, trophy, or other parts of a harvested mountain lion.  Depending on the type and size of the hide, trophy or other part, and the origin and destination of the shipped product, the cost of crating and shipping for each person would range between $200-1,000.

51.     Safari Club holds an annual convention in January or February.  At these conventions, Safari Club conducts auctions for hunting opportunities (and other things associated with hunting), including for mountain lion hunts outside of California (other western states and Argentina, Canada, and Mexico).  Since 1999, Safari Club has offered a total of 92 convention auction items for mountain lion only hunts or combined hunts in which one of the species was mountain lion.  The locations for these hunts were Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, Utah, Wyoming, Argentina, Canada, and Mexico.  The donor valuation for these hunts was a total of $873,375.00.  Most of the hunts were 5-7 day trips for one or two persons for one to three species and were valued in the $4,000-$15,000 range.  A few longer, multi-species trips in foreign countries were in the $20,000-60,000 range.  The following summarizes the hunts for each of the years (2006 had no such auction items).

| Year | Number | Valuation | Location |
|------|--------|-----------|----------|
| 2015 | Six hunts | $106,680.00 | Idaho, New Mexico, Wyoming, Argentina, Mexico |
| 2014 | Seven hunts | $116,205.00 | Idaho, Nevada, Wyoming, Canada, Argentina, Mexico |
| 2013 | Five hunts | $41,750.00 | Idaho, Nevada, Wyoming, Mexico |
| 2012 | Nine hunts | $86,070.00 | Idaho, New Mexico, Nevada, Wyoming, Argentina, Canada, Mexico |

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

| Year | Number | Valuation | Location |
|------|--------|-----------|----------|
| 2011 | Seven hunts | $66,350.00 | Colorado, Idaho, Nevada, Wyoming, Canada, Mexico |
| 2010 | Nine hunts | $75,300.00 | Idaho, New Mexico, Nevada, Wyoming, Canada, Mexico |
| 2009 | Five hunts | $39,350.00 | Nevada, Wyoming, Argentina, Mexico |
| 2008 | Six hunts | $52,550.00 | New Mexico, Nevada, Wyoming, Argentina, Canada, Mexico |
| 2007 | Two hunts | $9,000.00 | Nevada, Wyoming |
| 2005 | Two hunts | $9,350.00 | Arizona, Idaho, |
| 2004 | Two hunts | $12,800.00 | Nevada, Argentina |
| 2003 | Six hunts | $34,020.00 | Idaho, Nevada, Argentina |
| 2002 | Three hunts | $15,800.00 | Nevada, Argentina |
| 2001 | Seven hunts | $42,800.00 | Colorado, Idaho, New Mexico, Nevada, Utah, Argentina |
| 2000 | Six hunts | $49,700.00 | Montana, Nevada, Argentina |
| 1999 | Ten hunts | $106,650.00 | Idaho, Montana, New Mexico, Nevada, Argentina |
|  | 92 hunts | $873,375.00 |  |

Safari Club members who are California residents often have decided not to bid on these auction items because of their inability to import any harvested mountain lion into California.  The decision by California residents not to bid on these auction items due to the Import Ban reduces the value of these auction items and the revenue which Safari Club, and in some cases the outfitter, receives.

52.     Safari Club's annual convention is not the only opportunity at which Safari Club members can purchase mountain lion hunts.  Such hunts can also be sold at individual Safari Club chapter events held throughout the year.  The Import Ban discourages outfitters and other providers of services related to mountain lion hunting from traveling to Safari Club chapter meetings (including fundraising banquets) in California to offer or donate for auction hunting

trips for mountain lions, including in Canada.  The Import Ban eliminates the commerce associated with the travel to the banquets and the California resident undertaking the hunt.

53.    For Safari Club members interested in mountain lion hunting, being able to import, transport, and possess any legally harvested mountain lion in California is very important.  California is where they want to display their mountain lions in their homes or offices.  Possessing the mountain lion from a successful hunt means many things to hunters, including a reminder of the experience, the difficulty of the hunt, and the persons who shared the experience.  Particularly for older hunters, the taxidermied mountain lion can be a momento of hunts which the person may not be able to undertake again.  For the hunter, it also represents respect for the animal hunted and a way to appreciate the animal's beauty.  Placing restrictions on the hunter's ability to enjoy his or her sport-hunted mountain lion, including a ban on importation, transportation, and possession, discourages hunters from hunting that species.

C.    **Putative Local Interests in the Import Ban – Mountain Lion Hunting Does Not Qualify as Animal Cruelty**

54.    Nothing in the findings and declarations in Proposition 117 suggests or indicate that well-regulated mountain lion hunting, as previously allowed in California and as allowed in numerous other states and countries, is cruel or constitutes cruelty to animals.  Nothing in any other California law indicates or establishes that well-regulated mountain lion hunting and methods of hunting, as previously allowed in California and as authorized in numerous other states and countries for mountain lions and currently as allowed in California and other states for other species, is cruel or unnecessary.  Well-regulated mountain lion hunting is not cruel or unnecessary.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

26

55.     Under California law, the hunting of game animals is specifically excluded from the prohibitions against cruelty to animals.  CAL. PENAL CODE § 599c (West) ("No part of this title shall be construed as interfering with any of the laws of this state known as the 'game laws,'….").  The hunting of mountain lions, as previously allowed in California and as allowed in numerous other states and countries, can be and is conducted using the same hunting methods as used for numerous other species, such as black bear, feral hogs, wolves, rabbit and raccoon. For example, hunters can use dogs to hunt feral pigs in California.  Guide to Hunting Wild Pigs in California, at 21 ("Good pig dogs will get on a fresh scent and usually chase a wild pig until it is brought to bay or cornered."), https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=23231&inline (visited May 11, 2015).

56.     Upon information and belief, every state that prohibits animal cruelty also provides in some manner that legal hunting cannot be a violation of the cruelty laws.  Mountain lion hunting legally occurs in many states.  Hunters hunt mountain lions through a variety of methods.  Some hunters use dogs to track the animal before harvesting it.  Other hunters do not use dogs.  Many states specifically allow the use of dogs to pursue mountain lions during mountain lion hunts.  The following list provides examples of such laws.

- Arizona specifically exempts from prohibition against cruelty to animals "the taking of wildlife or other activities permitted by [game and fish laws]" and "activities regulated by the Arizona game and fish department...."  ARIZ. REV. STAT. ANN. § 13-2910(c).  Arizona regulation specifically permits "pursuit with dogs" to take mountain lions.  ARIZ. ADMIN. CODE § R12-4-304(A)(8)(k).

27

- Colorado's animal cruelty provisions do not apply to "statutes regulating activities concerning wildlife and predator control in the state, including trapping." COLO. REV. STAT. ANN. § 18-9-202(2)(a.5)(VII).  Colorado regulation permits dogs to be used to hunt mountain lions.  2 COLO. CODE REGS. § 406-2:242.

- No part of Idaho's animal cruelty law "shall be construed as interfering with, negating or preempting any of the laws or rules of the department of fish and game...." IDAHO CODE ANN. § 25-3515.  Idaho allows the use of dogs to pursue and take mountain lions. IDAHO ADMIN. CODE r. 13.01.15.100.

- Montana's animal cruelty law specifically exempts "lawful fishing, hunting, and trapping activities." MONT. CODE ANN. § 45-8-211(4)(d).  Montana permits the use of dogs to hunt mountain lions. *Id.* § 87-6-101(12), (14).

- Nevada's cruelty to animals laws do not "interfere with any of the fish and game laws" of the state.  NEV. REV. STAT. § 574.200(1).  It is legal to hunt mountain lions with dogs in Nevada. *Id.* § 503.150(1)(g).

- In New Mexico, the cruelty to animals provisions do not apply to "fishing, hunting, falcony, taking and trapping...." N.M. STAT. ANN. § 30-18-1.  The use of dogs to hunt mountain lions is permitted in New Mexico.  N.M. CODE R. § 19.31.11.10(G).

- Oregon's anti-cruelty statute does not apply to "[l]awful fishing, hunting and trapping activities." OR. REV. STAT. § 167.335(7).

- Under Utah law, the animal cruelty law does not apply if the act "is in accordance with lawful hunting, fishing, or trapping practices...." UTAH CODE ANN. § 76-9-

28

301(1)(b)(ii)(D).  "Dogs may be used to take or pursue cougar" in Utah.  UTAH ADMIN. CODE. R. 657-10-12(1).

- Washington's cruelty to animals statute does not apply to "game laws."  WASH. REV. CODE § 1.52.180.  In Washington, hunters can hunt mountain lions (cougars), but cannot use dogs to hunt mountain lions without a special permit from the state.  WASH. ADMIN. CODE § 232-28-297(1).

- In Wyoming, "the use of dogs or raptors in hunting" is not prohibited by its animal cruelty statute.  WYO. STAT. ANN. § 6-3-203(f)(ii).  Mountain lions are considered "trophy game animals" in Wyoming and may be hunted.  *Id.* § 23-1-101(a)(xii)(A); 42 WYO. CODE R. § 4.

57.   Upon information and belief, the Department, at the time that California voters adopted the Import Ban, did not consider or view regulated mountain lion hunting as animal cruelty.  In fact, the Department was considering the reinstatement of mountain lion hunting in 1990, at the time that Proposition 117 was on the ballot (and had tried to reinstate mountain lion hunting in 1987 and 1988).  Upon information and belief, the current Department and its director do not consider or view regulated mountain lion hunting, including as conducted in other states and countries, as animal cruelty.

58.   California law allows the killing of a "depredating mountain lion."  Neither the taking nor the process of the taking of mountain lions by Department personnel or their agents qualifies as "animal cruelty."  "Upon receipt of a report pursuant to Section 4802, the Department, or any animal damage control officer specifically authorized by the Department to carry out this responsibility, shall immediately take the action necessary to confirm that there has

29

been depredation by a mountain lion as reported.  The confirmation process shall be completed as quickly as possible, but in no event more than 48 hours after receiving the report.  If satisfied that there has been depredation by a mountain lion as reported, the Department shall promptly issue a permit to take the depredating mountain lion."  CAL. FISH & GAME CODE § 4803.

59.     California law allows the use of dogs to pursue mountain lions "under the provisions of a depredation permit issued pursuant to Section 4803 of the Fish and Game Code." CAL. CODE REGS. tit. 14, § 265 (also allowing use of dogs to pursue bear or bobcat under a permit).

60.     The Department uses dogs or allows designated agents to use dogs to track mountain lions, including for the purpose of trapping or killing them. *See, e.g.,* http://www.huffingtonpost.com/2014/09/07/mountain-lion-attack-cupertino-california_n_5781858.html (visited May 11, 2015) (detailing mountain lion attack on 6-year old boy; "Wildlife officials told local media that they are using dogs to search for the animal.  While mountain lions engaged in threatening behavior can be trapped and relocated, wildlife officials told the Los Angeles Times that if DNA from a captured animal matches that of saliva on the child's clothing, it would be killed 'in the interest of public safety'."). http://news.yahoo.com/california-mountain-lion-shot-dead-confirmed-cat-attacked-210401531.html (visited May 11, 2015) (same mountain lion shot from tree by Department officers).  http://www.latimes.com/local/lanow/la-me-ln-mountain-lion-boy-attack-no-rabies-20140912-story.html (visited May 11, 2015) (same incident; "game wardens, trackers with the U.S. Department of Agriculture and search dogs had been deployed in the search effort.").  The Department has long used this practice to capture or kill mountain lions.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

61.     Numerous recent statements undermine the idea that legal, well-regulated hunting can constitute animal cruelty.  State and federal officials acknowledge the invaluable role that hunters play in wildlife management and conservation in our country, the educational benefits encouraged by hunting and the emotional connection with this country's origins.  In a signing statement to Assembly Bill 711 (Oct. 11, 2013), Governor Edmund Brown of California endorsed hunting and hunters by stating:

> I am concerned, however, the impression left from this bill is that hunters and sportsmen and women in California are not conservationists.  I know that is not the case.  Hunters and anglers are the original conservationists.  Since the 1930s, hunters have done more than any other community to conserve species and their habitats, and this is a lasting conservation legacy.

62.     Regarding hunting in general as an accepted and important activity, and rejecting the idea that hunting, as depicted in videos, involves animal cruelty, Justice Alito of the U.S. Supreme Court has explained:

> [T]he predominant view in this country has long been that hunting serves many important values, and it is clear that Congress shares that view. Since 1972, when Congress called upon the President to designate a National Hunting and Fishing Day, see S.J. Res. 117, 92d Cong., 2d Sess. (1972), 86 Stat. 133, Presidents have regularly issued proclamations extolling the values served by hunting. See Presidential Proclamation No. 8421, 74 Fed.Reg. 49305 (Pres. Obama 2009) (hunting and fishing are "ageless pursuits" that promote "the conservation and restoration of numerous species and their natural habitats"); Presidential Proclamation No. 8295, 73 Fed.Reg. 57233 (Pres. Bush 2008) (hunters and anglers "add to our heritage and keep our wildlife populations healthy and strong," and "are among our foremost conservationists"); Presidential Proclamation No. 7822, 69 Fed.Reg. 59539 (Pres. Bush 2004) (hunting and fishing are "an important part of our Nation's heritage," and "America's hunters and anglers represent the great spirit of our country"); Presidential Proclamation No. 4682, 44 Fed.Reg. 53149 (Pres. Carter 1979) (hunting promotes conservation and an appreciation of "healthy recreation, peaceful solitude and closeness to nature"); Presidential Proclamation No. 4318, 39 Fed. Reg. 35315 (Pres. Ford 1974) (hunting furthers "appreciation and respect for nature" and preservation of the

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

environment). Thus, it is widely thought that hunting has "scientific" value in that it promotes conservation, "historical" value in that it provides a link to past times when hunting played a critical role in daily life, and "educational" value in that it furthers the understanding and appreciation of nature and our country's past and instills valuable character traits.

*United States v. Stevens*, 559 U.S. 460, 487-88 (2010) (Alito, J., dissenting).

63.     The subjective belief asserted in the biased argument of the proponents of Proposition 117 that mountain lion hunting is "cruel and unnecessary" cannot be attributed to the voters of the State or advanced as the justification for the Import Ban.  This alleged anti-hunting justification carries no weight as it is not contained in the extensive findings and declarations of Proposition 117, which only discussed the protection of California habitat and wildlife and did not assert that mountain lion hunting is cruel.  CAL. FISH & GAME CODE §§ 2780, 2781.  A moral judgment does not provide an ascertainable or certain benefit to the State as a whole (as, for example, protection of habitat does) because other citizens hold the moral view that legal mountain lion hunting outside of California is not only ethical, but essential to wildlife management and a traditional cultural activity.  In addition, the unsupported assertion that such hunting is unnecessary relates only to hunting in California.  Whether hunting is "necessary" in other states and countries is determined by the relevant state or national wildlife authorities, not the State of California.

64.     Banning importation and discouraging the hunting of mountain lions outside of California by California residents does not in any way enhance or support habitat conservation in California.  Banning the importation of mountain lions from outside of California, including from all U.S. states and foreign countries, does not serve the purpose of managing the individual animals and the species within California.  Mountain lion numbers are so high in parts of

32

California that the Department must manage mountain lions using methods other than hunting, including euthanasia of problem animals.

65.     A properly processed, taxidermied or handled mountain lion poses no threat to the safety, health, or welfare of the people or resources of California.  Numerous other harvested animals enter California, including from other countries, and are transported and possessed throughout the state without harm or risk to the safety, health, or welfare of the people or resources of California.  Upon information and belief, the State of California has never identified a properly processed, taxidermied, or handled animal, including a mountain lion, as a threat to the safety, health, or welfare of the people or resources of California.

66.     State law enforcement officers can identify any mountain lion hunted outside of California and the hunter can prove the origin of the harvested mountain lion.  Hunters must obtain hunting licenses and tags from other states and countries.  When an outfitter or guide is involved, receipts can support the harvest of the animal outside of the State.  California law provides that any "mammal … shall not be imported or possessed in this state unless … A declaration is submitted to the department or a designated state or federal agency at or immediately before the time of entry, in the form and manner prescribed by the department"; a declaration is not required "if the shipment is handled by a common carrier under a bill of lading …."  CAL. FISH & GAME CODE § 2353.  Most or all states also require that a harvested mountain lion be tagged and reported to that state's wildlife department, providing another source of identifying a mountain lion harvested out of state.

67.     Section 4800 allows a person to continue to possess a mountain lion that was in that person's possession on June 6, 1990.  To enforce the possession and transportation bans, the

33

law assumes that law enforcement officers, including those under the jurisdiction of the State

Defendants, possess the ability to ascertain when a mountain lion in someone's possession was

first in that person's possession – before/on or after June 6, 1990.  The kinds of proof required to

make this showing are similar to the proof a law enforcement officer would need to generate to

assert a mountain lion was hunted outside of California.

## VI.    CLAIMS FOR RELIEF

**First Claim for Relief**
**Violation of the U.S. Constitution Commerce Clause**
**(Art. I, § 8, cl. 3)**

68.    Safari Club realleges and incorporates by reference all the allegations preceding

the Claims for Relief section of this First Amended Complaint, as though fully set forth below.

69.    The Import Ban violates the Commerce Clause of the U.S. Constitution.

70.    Once harvested, a mountain lion hunted outside of California becomes the

personal property of the hunter and an article of interstate commerce.

71.    The Import Ban discourages numerous California residents from applying for a

non-resident license, booking an out-of-state mountain lion hunt, and travelling outside of

California to hunt mountain lions.  The Import Ban bars California residents from bringing any

already harvested mountain lions into the State, either as fully taxidermied products or as raw

products for taxidermy or related work within California.

72.    Of the approximately 3% of Safari Club members in California who responded to

two requests for information, approximately 120 indicated an intent to hunt mountain lion

outside of California if the Import Ban were lifted.  Some Safari Club members expressed a

desire to hunt mountain lions outside of California more than once, especially if not successful in

34

harvesting a mountain lion during earlier hunts.  Outfitters and others who provide services related to mountain lion hunting outside of California indicated a desire to market and provide such services to residents of California.  On information and belief, numerous other Safari Club members and an even larger number of non-Safari Club residents of California have a similar intent to hunt mountain lions outside of California if the Import Ban were lifted.  On information and belief, thousands of California residents desire to hunt mountain lions outside of California and, over time, all those who desire to hunt mountain lions outside of California could have hunted or would have an opportunity to do so, and would incur the expenses and generate the income associated with such hunts, but for the Import Ban.

73.   Undertaking a mountain lion hunt outside of California would require the hunter to incur expenses related to transportation, special equipment and ammunition, taxidermy work, out of state licenses (which are generally higher than in-state licenses), accommodations, food and other incidentals, and numerous other items.  In most cases, a California resident would retain the services of a professional outfitter or guide for a mountain lion hunt outside of California.  Often the amount of these expenses would be increased because an observer or companion would accompany the hunter on at least part of the trip.  The total cost for most mountain lion hunting trips outside of California generally ranges from $4,000-20,000, depending on various factors.

74.   Of the approximately 3% of Safari Club members in California who responded, 21 members indicated a desire to ship to California an already harvested mountain lion.  But for the Import Ban, these California residents would ship to California already harvested mountain lions, incurring costs in the range of $200-1,000.  On information and belief, numerous other

Safari Club members and an even larger number of non-Safari Club members have a similar desire and would incur this expense but for the Import Ban.

75.     The adverse impacts on interstate commerce, especially over the life of the Import Ban, are clearly excessive in light of the asserted local interests the State Defendants might claim or have claimed is advanced by the Import Ban.  The impact on interstate commerce is significant on an annual basis and even more excessive when considered in light of the commerce that would occur immediately after the Import Ban was lifted, combined with the commerce lost over the history of the Import Ban and expected continued duration of the ban. On information and belief, the impact of the Import Ban exceeds $15,000,000.00.

76.     Mountain lion hunting is not animal cruelty.  The State has not adopted prevention of alleged animal cruelty as the purpose for the Import Ban.  The State has no legitimate interest in discouraging an activity outside of California, including for the purpose of discouraging California residents from partaking in a legal and necessary activity that is not animal cruelty.  The Import Ban does not help conserve habitat and wildlife in California, or protect the health, safety, or welfare of residents of California.  The substantial impacts on interstate commerce are clearly excessive in relation to the State's putative interest in habitat and wildlife conservation, health and safety of its residents, and alleged concern that legal mountain lion hunting in other states is "animal cruelty," in part because these purposes are illusory or nonexistent.

77.     Assuming there is any legitimate and non-illusory state interest in the Import Ban, the State can promote that interest as well with a lesser impact on interstate activities.  For example, the State can ban the importation of mountain lions harvested in violation of the state

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

or country's game laws.  If the State can identify *any* specific threat to the conservation of California's habitat or wildlife or the health and safety of its citizens from the importation of any particular mountain lion (which is hard to imagine) the State can take steps to address the particular identified and proven threat, including by using its authority under CAL. FISH & GAME CODE § 2353.  The State can rely on law enforcement methods and other ways to readily identify a mountain lion as hunted outside of California, including requirements in the state where hunted to tag and seal the harvested animal, that do not involve a complete ban on the importation of legally harvested mountain lions outside of California.

78.	The Import Ban harms Safari Club and its members who desire to legally hunt mountain lions outside of California and import into and transport and possess within California their harvested mountain lions, but are prohibited from doing so.  The Import Ban also harms Safari Club and its members' interests in sustainable-use conservation and proper management of wildlife by discouraging Safari Club members in California from hunting mountain lions outside of California and preventing any Safari Club members who do harvest a mountain lion outside of California from bringing their mountain lion into California.  Defendants Harris and Bonham cause these injuries by enforcing the Import Ban.  Declaring unconstitutional and setting aside the Import Ban and enjoining its enforcement would redress these injuries.

**Second Claim for Relief**
**Violation of the U.S. Constitution Equal Protection Clause**
**(Amend. XIV)**

79.	Safari Club realleges and incorporates by reference all the allegations preceding the Claims for Relief section of this First Amended Complaint, as though fully set forth below.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

80.     The Import Ban violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

81.     The Import Ban singles out and discriminates against the group of hunters who wish to legally hunt mountain lions out of state and import into, and transfer and possess within California their harvested mountain lions.  Hunters of other species that are not protected under state or federal law (and hunters of some protected animals) are not subject to a complete ban on the importation, transportation, and possession of their harvested animals in California.

82.     The Import Ban arbitrarily and without justification denies the group of hunters who wish to hunt mountain lions outside of California the ability to import into, and transport and possess any harvested mountain lion within California, while allowing others to engage in the hunting of numerous other protected and unprotected species without restrictions as to importation, transportation, and possession within California.  The only difference between these two groups of hunters is the State's arbitrary and apparent desire to punish those residents who desire to hunt mountain lions outside of California and return to the State with their harvested animal.

83.     The Import Ban does not bear a rational relation to any legitimate end.  Mountain lion hunting is not animal cruelty.  The State has not asserted prevention of alleged animal cruelty as the purpose for the Import Ban.  The State has no legitimate interest in discouraging an activity outside of California, including for the purpose of discouraging California residents from partaking in a legal and necessary activity that is not animal cruelty.  The Import Ban does not help conserve habitat and wildlife in California.  The Import Ban does not protect the health, safety, or welfare of residents of California.  The Import Ban does not help enforcement of the

ban on hunting mountain lions within California.  These alleged purposes are illusory or nonexistent.

84.     The Import Ban harms Safari Club and its members by prohibiting those who desire to legally hunt mountain lions outside of California from importing, transporting, and possessing their harvested mountain lions in California.  The Import Ban also harms Safari Club and its members' interests in sustainable-use conservation and proper management of wildlife by discouraging Safari Club members in California from hunting mountain lions outside of California and preventing any Safari Club members who do harvest a mountain lion outside of California from bringing their mountain lion into California.  Defendants Harris and Bonham cause these injuries by enforcing the Import Ban.  Declaring unconstitutional, setting aside the Import Ban and enjoining its enforcement would redress these injuries.

### Third Claim for Relief
### Liability Under 42 U.S.C. § 1983

85.     Safari Club realleges and incorporates by reference all the allegations preceding this Third Claim for Relief, as though fully set forth below.

86.     Defendants Harris and Bonham are liable under 42 U.S.C § 1983 because enforcement of the Import Ban violates the United States Constitution's Commerce Clause and Equal Protection Clause.  The Import Ban deprives members of Safari Club of guaranteed constitutional rights.  Defendants Harris and Bonham, in enforcing the Import Ban, are acting under color of state law and in their official capacities.  They are enforcing laws of the State of California and any applicable regulations.  Their actions are the proximate cause of the deprivation of the federal constitutional rights of Safari Club members.

87.     The Import Ban harms Safari Club and its members who desire to legally hunt mountain lions outside of California and import into and transport and possess within California their harvested mountain lions, but are prohibited from doing so.  The Import Ban also harms Safari Club and its members' interests in sustainable-use conservation and proper management of wildlife by discouraging Safari Club members in California from hunting mountain lions outside of California and preventing any Safari Club members who do harvest a mountain lion outside of California from bringing their mountain lion into California.  Defendants Harris and Bonham cause these injuries by enforcing the Import Ban.  Declaring unconstitutional and setting aside the Import Ban and enjoining its enforcement would redress these injuries.

## VII.    PRAYER FOR RELIEF

For the reasons stated above, Safari Club respectfully requests that the Court grant the following relief:

A.     Declare that the Import Ban and enforcement of it violate the Commerce Clause of the United States Constitution.

B.     Declare that the Import Ban and enforcement of it violate the Equal Protection Clause of the United States Constitution.

C.     Declare that Defendants Harris and Bonham, through enforcing the Import Ban under color of state law, are liable under 42 U.S.C. § 1983.

D.     Set aside the Import Ban and any other applicable laws and regulations that implement the Import Ban.

E.     Enjoin the State Defendants from enforcing the Import Ban and any other applicable laws and regulations that implement the Import Ban.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(SAFARI CLUB INTERNATIONAL)

F.     Award Safari Club the costs of litigation, including reasonable attorney fees and costs, including under 42 U.S.C. § 1988 and any other applicable federal law.

G.     Award Safari Club such other relief that is just and proper.

Dated this 13th day of May, 2015.

Respectfully submitted,

Linda J. Linton, Esq.
(California Bar No. 177821)
Linton & Associates, P.C.
6900 S. McCarran Blvd., #2040
Reno, NV  89509
Telephone: (775) 333-0881
Facsimile: (775) 333-0877
llinton@lintonlegal.com

/s Douglas S. Burdin
Douglas S. Burdin, Esq.*
(D.C. Bar No. 434107)
Anna M. Seidman, Esq.*
(D.C. Bar No. 417091)
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org
aseidman@safariclub.org

Counsel for Plaintiff
Safari Club International

* Pro Hac Vice Granted