1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   ALEXANDRA ROBERT GORDON, State Bar No. 207650
    Deputy Attorney General
4     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
5     Telephone:  (415) 703-5509
      Fax:  (415) 703-5480
6     E-mail:  Alexandra.RobertGordon@doj.ca.gov
    *Defendants Attorney General Harris*
7   *and Director Bonham*

8                   IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10                          SACRAMENTO DIVISION

11

12

13  | **SAFARI CLUB INTERNATIONAL,** | 2:14-cv-01856-GEB-AC |
    | --- | --- |
    | Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
    | v. | |
    | **KAMALA D. HARRIS, in her official capacity as the Attorney General of California; CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife,** | Date:          September 28, 2015 <br> Time:          9:00 a.m. <br> Courtroom:   10 <br> Judge:         Hon. Garland E. Burrell, Jr. |
    | Defendants. | Action Filed:  August 7, 2014 |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

INTRODUCTION ...................................................................................................... 2

BACKGROUND ......................................................................................................... 2

    I.     Relevant Law and Procedural History ................................................... 2

          A.    The Mountain Lion Prohibition .................................................. 2

          B.    Procedural History ..................................................................... 3

    II.    The Allegations of the First Amended Complaint ................................. 4

ARGUMENT ............................................................................................................... 7

    I.     Legal Standard ........................................................................................ 7

    II.    Plaintiff Has Not Stated and Cannot State a Claim for Relief Under the dormant Commerce Clause ...................................................................... 8

          A.    Because Plaintiff Has Failed to Allege a Substantial Burden on Interstate Commerce, *Pike* Balancing Is Not Required. ........... 10

          B.    The Mountain Lion Prohibition Serves Important State Interests and Its Putative Benefits Outweigh Any Burden on Interstate Commerce. ................................................................................. 12

    III.   Plaintiff Has Not Stated and Cannot State a Claim for Relief Under the Equal Protection Clause ......................................................................... 15

    IV.   Plaintiff's Remaining Claim Must Be Dismissed ................................. 18

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Holder*
  673 F.3d 1089 (9th Cir.2012)....................................................................................13

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)........................................................................................1, 7, 13

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013)..............................................................9, 10, 13, 14

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)........................................................................................1, 7, 17

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
  476 U.S. 573 (1986)...................................................................................................8

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*
  511 U.S. 383 (1994).............................................................................................8, 11

*Cavel Int'l, Inc. v. Madigan*
  500 F.3d 551 (7th Cir. 2007)...................................................................................14

*Chinatown Neighborhood Ass'n v. Harris*
  33 F. Supp. 3d 1085 (N.D. Cal. 2014) ...............................................12, 15, 17, 18

*City of Cleburne v. Cleburne Living Center*
  473 U.S. 432 (1985)...........................................................................................15, 17

*Cresenzi Bird Importers, Inc. v. State of N.Y.*
  658 F. Supp. 1441 (S.D.N.Y. 1987)........................................................................14

*CTS Corp. v. Dynamics Corp. of America*
  481 U.S. 69 (1987).....................................................................................................15

*Dairy v. Bonham*
  No. C-13-1518 EMC, 2013 WL 3829268 (N.D. Cal. July 23, 2013).....................17

*Daniels-Hall v. National Educ. Ass'n*
  629 F.3d 992 (9th Cir. 2010)......................................................................................7

*Exxon Corp. v. Governor of Md.*
  437 U.S. 117 (1978)...................................................................................................11

*F.C.C. v. Beach Communications, Inc.*
  508 U.S. 307 (1993)...................................................................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Fields v. Legacy Health Sys.*
 413 F.3d 943 (9th Cir. 2005)............................................................................16, 17

*General Motors Corp. v. Tracy*
 519 U.S. 278 (1997) ......................................................................................10, 12

*Grutter v. Bollinger*
 539 U.S. 306 (2003) ..............................................................................................16

*Healy v. Beer Inst.*
 491 U.S. 324 (1989).............................................................................................8, 9

*Heller v. Doe*
 509 U.S. 312 (1993) ........................................................................................16, 17

*In re Google Inc.*
 No. 13–MD–02430–LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)............................13

*Kassel v. Consol. Freightways Corp.*
 450 U.S. 662 (1981) ..............................................................................................14

*King v. Christie*
 981 F. Supp. 2d 296 (D.N.J. 2013) ........................................................................13

*Legislature v. Eu*
 54 Cal.3d 492 (Cal. 1991)...............................................................................14, 17

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
 416 F.3d 940 (9th Cir. 2005)...................................................................................7

*Maine v. Taylor*
 477 U.S. 131 (1986)................................................................................................8

*Minnesota v. Clover Leaf Creamery Co.*
 449 U.S. 456 (1981)................................................................................................9

*Missouri Pac. R. Co. v. Norwood*
 283 U.S. 249 (1931)..............................................................................................13

*Mourning v. Family Publ'n Serv., Inc.*
 411 U.S. 356 (1973)..............................................................................................18

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
 682 F.3d 1144 (9th Cir. 2012)........................................................................*passim*

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
  272 F.3d 104 (2d Cir. 2001).................................................................................12

*Nat'l Paint Coatings Ass'n v. City of Chicago*
  45 F.3d 1124 (7th Cir. 1995)................................................................................12

*Navarro v. Block*
  250 F.3d 729 (9th Cir. 2001)..................................................................................7

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*
  511 U.S. 93 (1994)..................................................................................................9

*Pacific Nw. Venison Producers v. Smitch*
  20 F.3d 1008 (9th Cir. 1994)..................................................................... *passim*

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) .................................................................................9, 10, 12, 14

*PTI, Inc. v. Philip Morris, Inc.*
  100 F. Supp. 2d 1179 (C.D. Cal. 2000)...............................................................15

*Robertson v. Dean Witter Reynolds, Inc.*
  749 F.2d 530 (9th Cir. 1984)...................................................................................7

*Romer v. Evans*
  517 U.S. 620 (1996)..........................................................................................15, 16

*Safari Club Int'l v. Harris*
  No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869 (E.D. Cal. Apr. 29, 2015) ........16

*Teixeira v. Cty. of Alameda*
  No. 12-cv-03288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ..................16

*UFO Chuting of Hawaii, Inc. v. Smith*
  508 F.3d 1189 (9th Cir. 2007)...............................................................................13

*United States v. Carolene Products Co.*
  304 U.S. 144 (1938)...............................................................................................16

*Van Buskirk v. Cable News Network, Inc.*
  284 F.3d 977 (9th Cir. 2002)...................................................................................7

*Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*
  753 F.3d 843 (9th Cir. 2013)..................................................................................14

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Zucco Partners, LLC v. Digimarc Corp.*
552 F.3d 981 (9th Cir. 2009)........................................................................................7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion to Dismiss FAC (2:14-cv-01856-GEB-AC)

## TABLE OF AUTHORITIES
### (continued)

**Page**

STATUTES

California Fish and Game Code
§ 2780.................................................................................................2, 13, 17
§ 4800................................................................................................. *passim*
§ 4802.................................................................................................6

1963 California Stat. Chapter 2022
§ 1.......................................................................................................3

1967 California Stat. Chapter 196
§ 1.......................................................................................................3
§ 2.......................................................................................................3

United States Code, Title 42
§ 1983................................................................................................1, 4, 5, 18

CONSTITUTIONAL PROVISIONS

United States Constitution
Fourteenth Amendment.......................................................................2, 4, 15
Article I, § 8, clause 3 ........................................................................2, 4, 8

COURT RULES

Federal Rule of Civil Procedure
rule 12................................................................................................1, 7

OTHER AUTHORITIES

California Wildlife Protection Act of 1990.........................................................2, 5, 6

Notice of Motion and Motion to Dismiss FAC (2:14-cv-01856-GEB-AC)

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE THAT on September 28, 2015 at 9 a.m., or as soon thereafter

3   as the matter may be heard before the Honorable Garland E. Burrell, Jr. in Courtroom 10 of the

4   United States District Court for the Eastern District of California, located at 501 I Street,

5   Sacramento, California 95814, Defendants Attorney General Kamala D. Harris and Director of

6   the California Department of Fish and Wildlife Charlton H. Bonham will move this Court to

7   dismiss Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief pursuant to

8   Federal Rule of Civil Procedure 12(b)(6).

9      This motion to dismiss is made on the following grounds: (1) the First Amended Complaint

10   fails to satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80

11   (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and (2) the First Amended

12   Complaint fails to state a claim upon which relief can be granted under the Commerce and Equal

13   Protection Clauses and/or 42 U.S.C. section 1983.  This motion is based on this Notice, the

14   Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the

15   papers and pleadings on file in this action, including this Court's April 29, 2015 Order Granting

16   Motion to Dismiss Plaintiffs' Complaint, and upon such matters as may be presented to the Court

17   at the time of the hearing.

18

19   Dated:  June 17, 2015                    Respectfully Submitted,

20                                           KAMALA D. HARRIS
                                            Attorney General of California
21                                           TAMAR PACHTER
                                            Supervising Deputy Attorney General
22
                                            */s/ Alexandra Robert Gordon*
23
                                            ALEXANDRA ROBERT GORDON
24                                           Deputy Attorney General
                                            *Attorneys for Defendants Attorney General*
25                                           *Harris and Director Bonham*

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

To protect mountain lions, promote the conservation and sustainability of its wildlife, and prevent animal cruelty, California Fish and Game Code section 4800 makes it illegal to kill, injure, possess, import, or sell a mountain lion or mountain lion parts in California.  Plaintiff alleges that the prohibition on importation, transportation, and possession of mountain lion and mountain lion parts legally hunted in other states and jurisdictions violates the Commerce and Equal Protection Clauses of the U.S. Constitution.  The First Amended Complaint should be dismissed in its entirety because, even after amendment, plaintiff does not allege sufficient facts in support of its constitutional claims.  Moreover, and of greater significance, the challenged statute does not implicate the Commerce or Equal Protection Clauses, let alone violate them.  California Fish and Game Code section 4800 is facially neutral, does not discriminate in favor of in state interests or against out of state interests, does not burden interstate commerce, and is rationally related to a legitimate governmental interest in protecting and conserving mountain lion populations and preventing animal cruelty.  Because plaintiff cannot demonstrate that the law is unconstitutional, it cannot state a claim upon which relief can be granted.  Accordingly, defendants Attorney General Kamala D. Harris and Director Charlton H. Bonham respectfully request that this Court dismiss the First Amended Complaint with prejudice.

### BACKGROUND

**I.    RELEVANT LAW AND PROCEDURAL HISTORY**

**A.  The Mountain Lion Prohibition**

The Wildlife Protection Act of 1990, California Fish & Game Code sections 2780 et seq., was approved by the voters as Proposition 117 on June 5, 1990.  The measure made a number of findings, including that: (1) the "[p]rotection, enhancement, and restoration of wildlife habitat and fisheries are vital to maintaining the quality of life in California"; (2) "there is an urgent need to protect the rapidly disappearing wildlife habitats that support California's unique and varied wildlife resources"; and (3) wildlife habitat, specifically including mountain lion habitat, "is disappearing rapidly"; and (4) "natural habitat must be preserved to maintain the genetic integrity

2

of California's wildlife." Prop. 117 § 2(a) & (d). In keeping with these findings and with the State's policy of preserving and conserving all species of wildlife, and to protect mountain lions as the last native large predator species in California, and stop the "cruel and unnecessary" slaughter of mountain lions,[1] Proposition 117 added California Fish & Game Code sections 4800 et seq. (the Mountain Lion Prohibition), which designate the mountain lion as a "specially protected mammal" and make it illegal to "take, injure, possess, transport, import, or sell any mountain lion or any part thereof" Cal. Fish & Game Code § 4800. Violation of the Mountain Lion Prohibition is a misdemeanor punishable by imprisonment of up to one year, or a fine of up to $10,000, or a combination of imprisonment and a fine. *Id.* § 4800(c). The Mountain Lion Prohibition does not apply to any mountain lion or part or product thereof that an owner can demonstrate was in his or her possession on June 6, 1990. *Id.* § 4800(b)(2). The Mountain Lion Prohibition also contains two exceptions: one for an agency taking of a mountain lion deemed an "imminent threat to public health or safety" and another for citizens to acquire a permit to take a mountain lion that has "injured, damaged, or destroyed" livestock or other property. *Id.* § 4801. The legislature amended the Mountain Lion Prohibition in 2011 to allow for the possession of mountain lion parts where all of the following requirements are met: (1) the mountain lion carcass or carcass part or product is prepared or being prepared for display, exhibition, or storage, for a bona fide scientific or educational purpose; (2) the mountain lion was otherwise taken in accordance with the Mountain Lion Prohibition and/or other applicable law; and (3) the Department of Fish & Wildlife authorizes the possession. *Id.* § 4800(b)(3).

## B. Procedural History

On August 6, 2014, plaintiff filed its Complaint for Declarative and Injunctive Relief ("Complaint"). Plaintiff has sued Kamala D. Harris, in her official capacity as the Attorney

---

[1] California operated under a bounty system until the 1960s. Between 1907 and 1963, bounty hunters in California killed more mountain lions than in any other state, approximately 12,500. In 1969, the species was designated a game mammal, a designation it held until recreational hunting of lions was outlawed in 1972. In response to proposed hunting seasons in the late 1980s, Proposition 117 was placed on the ballot in 1990. *See generally*, Cal. Sec'y of State, California Ballot Pamphlet 40-43 (1990), attached as Exhibit A to the accompanying Defendants' Request for Judicial Notice (RJN); 1963 Cal. Stat. ch. 2022, § 1, at 4146; 1967 Cal. Stat. ch. 196, §§ 1 & 2.

General of California and Charlton H. Bonham, in his capacity as the Director of the California Department of Fish and Wildlife, alleging that the Mountain Lion Prohibition violates the Commerce and Equal Protection Clauses of the United States Constitution as well as 42 U.S.C section 1983.  By order dated April 29, 2015, this Court granted defendants' motion to dismiss and granted plaintiff leave to file a First Amended Complaint.  ECF No. 37.  In so doing, this Court determined that plaintiff had failed to allege the lack a rational basis for the Mountain Lion Prohibition or to allege that any burdens on interstate commerce caused by the Mountain Lion Prohibition are "clearly excessive" to its putative benefits, and thus that plaintiff had failed to state a claim under the dormant Commerce or Equal Protection Clause.  *Id.*

Plaintiff filed its First Amended Complaint (FAC) on May 13, 2015.  ECF No. 38.

## II.   THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Plaintiff Safari Club International is a non-profit corporation incorporated in the State of Arizona, with approximately 13 chapters and 4,400 members in California.  FAC ¶ 15.  Plaintiff's "missions include the protection of the hunter, and education of the public concerning hunting and its use as a conservation tool."  *Id.*  To advance these missions, plaintiff advocates for "enhanced opportunities to hunt and the ability to enjoy the fruits of hunts, including by being able to import, transport, and possess mountain lions legally hunted outside of California."  *Id.*  Plaintiff alleges that it, along with its sister organization, Safari Club International Foundation, promote the principle and practice of sustainable-use conservation.  *Id.* ¶¶ 16-17.  Plaintiff claims that the ability of hunters to freely transport harvested animals between states "advances sustainable use conservation by encouraging more hunters to hunt animals that state and other governmental entities manage and conserve."  *Id.* ¶ 17.  Plaintiff's members have hunted mountain lions outside of California and wish to import their sport-hunted mountain lions into California.  *Id.* ¶ 18.  Some of plaintiff's members have "definite plans" to hunt mountain lions outside of California and wish to import and possess these mountain lions into and in California.  *Id.*  Some of its members want to hunt mountain lions outside of California and import their sport-hunted mountain lions into California, but have not made plans because of the Mountain Lion Prohibition.  *Id.*  Other of plaintiff's members are outfitters and guides "who would benefit

4

from providing more mountain lion hunts outside of California to California residents." *Id.* The FAC alleges that since the effective date of the Wildlife Protection Act of 1990, the Mountain Lion Prohibition has discouraged its members and others from hunting mountain lions. *Id.* ¶ 36. Plaintiff claims that mountain lions legally hunted in any state in the United States or a foreign country can be imported into, and transported and possessed within, every state and territory in the United States except California. *Id.* ¶ 40.

The FAC further alleges that residents of California can legally hunt mountain lions in Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, South Dakota, Utah, Washington, and Wyoming, as well as several other states and foreign countries. *Id.* ¶¶ 37, 40.  It alleges that because most states that allow mountain lion hunting regularly do not fill their quotas for mountain lions, California residents would have the opportunity to hunt for mountain lions in these states. *Id.* ¶ 38.  The FAC further alleges that because mountain lions are difficult to hunt and many hunters are not successful, the number of California residents who would hunt mountain lions but for the Mountain Lion Prohibition would be greater than the quotas set by other states. *Id.* ¶ 39.

The FAC alleges that in the absence of the Mountain Lion Prohibition, a "large number" of hunters would undertake the hunt for mountain lions in other states and would incur the expenses involved in hunting mountain lions, which collectively total anywhere from $4,000-20,000, "depending on various factors." *Id.* ¶¶ 43, 45.  These expenses include guiding and outfitting fees, out of state travel, hunting licenses and mountain lion tags, taxidermy, crating and shipping, lodging, food, ammunition, cold weather gear, special firearms and equipment and state taxes. *Id.* ¶ 47.  The FAC alleges that in response to a request for information, approximately 21 of plaintiff's members wish to import into and possess within California one or more mountain lions they have legally hunted outside of the state and three members want to participate in planned hunts outside of California and would like to be able to import into, transport within, and possess any mountain lions harvested in those hunts. *Id.* ¶ 41.  Approximately 120 of plaintiff's members would participate in mountain lion hunts outside of California if the Mountain Lion Prohibition were lifted and approximately eight outfitters and taxidermists and one outfitters' organization

5

1   have expressed to plaintiff a desire to provide services to its members.  *Id.*  The FAC alleges that

2   "assuming that the percentage of Safari Club members who want to hunt mountain lions … is

3   representative of the percentage of all California hunters who would want to hunt mountain lions

4   outside of California, then approximately 8,000 California hunters would be interested in such a

5   hunt."  *Id.* ¶ 44.

6        The FAC alleges that "well-regulated mountain lion hunting is not cruel or unnecessary"

7   and that the hunting of mountain lions can be and is conducted using the same hunting methods,

8   such as hunting dogs, as used for numerous other species.  *Id.* ¶¶ 54-55.  It alleges that under

9   California law, the hunting of game animals is specifically excluded from the prohibitions against

10  animal cruelty.  *Id.* ¶ 55 (citing Cal. Penal Code § 599c).  The FAC states that the taking and

11  process of killing a "depredating mountain lion" by Department of Fish and Wildlife personnel

12  pursuant to Fish and Game Code section 4802 do not qualify as "animal cruelty."  *Id.* ¶ 58.  It

13  further alleges that at the time that California voters adopted the Mountain Lion Prohibition, the

14  Department of Fish and Wildlife did not consider "regulated mountain lion hunting" as animal

15  cruelty and that the current Department and its Director do not consider "regulated mountain lion

16  hunting" as animal cruelty.  *Id.* ¶ 57.  Plaintiff alleges that numerous recent statements, including

17  those by federal and state officials, acknowledge "the invaluable role" that hunters play in

18  wildlife management and conservation as well as "the educational benefits encouraged by hunting

19  and the emotional connection with this country's origins."  *Id.* ¶ 61.

20       The FAC states that mountain lions are not threatened or endangered in California.  *Id.*

21  ¶ 35.  Plaintiff alleges that banning importation and discouraging the hunting of mountain lions

22  outside of California by California residents does not support or enhance habitat conservation nor

23  does it serve the purpose of managing the species within California.  *Id.* ¶ 64.  It alleges that the

24  Mountain Lion Prohibition could have allowed hunters to prove that a mountain lion was killed

25  outside the state in the same way that legal possession of mountain lion is established pursuant to

26  Fish and Game Code section 4800(b)(2)).  *Id.* ¶ 67.  It further states that being able to import and

27  possess any legally hunted mountain lion in California is "very important" as hunters want to be

28  able to "display their mountain lions in their homes or offices" in their home state and that

1   "[p]lacing restrictions on the hunter's ability to enjoy his or her sport-hunted mountain lion,

2   including a ban on importation, transportation, and possession, discourages hunters from hunting

3   that species." *Id.* ¶ 53.

**ARGUMENT**

## I.   LEGAL STANDARD

6       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

7   failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule

8   12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

9   2001).  Dismissal is proper where there is no cognizable legal theory or there are insufficient facts

10  alleged to support a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d

11  530, 534 (9th Cir. 1984).  To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough

12  facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S.

13  544, 570 (2007); that is, the plaintiff must allege facts that consist of "more than a sheer

14  possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

15  plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements

16  of a cause of action will not do," instead, the plaintiff must allege facts sufficient to "raise a right

17  to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

18      In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of fact

19  are true and must draw all reasonable inferences in his or her favor.  *See Daniels-Hall v. National*

20  *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "the tenet that a court must accept as

21  true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*,

22  556 U.S. at 678.  While the court generally looks only to the face of the complaint and its

23  exhibits, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), the court

24  may also consider documents that are proper subjects of judicial notice, *Zucco Partners, LLC v.*

25  *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  A court need not permit an attempt to amend

26  if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v.*

27  *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

28

7

## II.   PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM FOR RELIEF UNDER THE DORMANT COMMERCE CLAUSE

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It includes an implied limitation on the states' authority to adopt legislation that affects commerce, often referred to as the negative or dormant Commerce Clause.  *Healy v. Beer Inst*., 491 U.S. 324, 326 n.1 (1989).  The purpose of the dormant Commerce Clause is to "prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent."  *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994).  However, its restrictions are "by no means absolute" and "[s]tates retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected."  *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citations and quotations omitted).  "As long as a State does not needlessly obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources."  *Id*. at 151 (citations and quotations omitted).

Whether state legislation violates the dormant Commerce Clause is generally analyzed under a two-tiered approach.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986).  A statute is essentially per se invalid if it directly regulates or discriminates against interstate commerce or if its effect is to favor in-state economic interests over out-of-state interests.  *Id*. at 579.  On the other hand, when a statute is nondiscriminatory and "has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."  *Id*. (citing *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970)).

The FAC does not allege, nor could it legitimately do so, that the Mountain Lion Prohibition either discriminates against interstate commerce or regulates extraterritorially.  For purposes of the dormant Commerce Clause, discrimination "simply means differential treatment

of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99 (1994). Plaintiff does not, and cannot, allege that the Mountain Lion Prohibition discriminates in favor of in-state interests.  The Mountain Lion Prohibition bans, subject to limited exceptions, the killing, injuring, possession, transport, importation, or sale of mountain lions and/or mountain lion product or parts in California.  *See generally*, Cal. Fish & Game Code § 4800.  The Mountain Lion Prohibition regulates even-handedly and treats all mountain lions and/or mountain lion parts, regardless of their point of origin, exactly the same.  Accordingly, it does not discriminate against interstate commerce.  *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994) (holding that an "import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items."); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 398 (2014).  The Mountain Lion Prohibition, also does not, either directly or indirectly, control commerce occurring wholly outside of California.  To the contrary, by its terms, the Mountain Lion Prohibition regulates conduct — specifically, the killing, injuring, possession, transport, importation, or sale of mountain lions — only in and into California.  *See* Cal. Fish & Game Code § 4800.  It thus is not an impermissible extraterritorial regulation.  *See Healy v. Beer Inst*., 491 U.S. 324, 336 (1989); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 548 (1981).

Instead, plaintiff alleges that the Mountain Lion Prohibition violates the dormant Commerce Clause because its "adverse impacts on interstate commerce … are clearly excessive in light of the asserted local interests that the State Defendants might claim or have claimed is advanced by the Import Ban," FAC ¶ 75, and is thus invalid under the balancing test set forth in *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142.  This argument fails as a matter of law.  Even after amendment, plaintiff has failed to allege a substantial burden on interstate commerce and thus, *Pike* balancing is not required.  Moreover, and regardless, because any burdens on interstate commerce caused by the Mountain Lion Prohibition are not "clearly excessive" to its putative benefits, the statute is valid under *Pike*.

9

**A.  Because Plaintiff Has Failed to Allege a Substantial Burden on Interstate Commerce, *Pike* Balancing is not Required.**

Application of the *Pike* test requires that a plaintiff first establish a substantial burden on interstate commerce.  *See, e.g.*, *Ass'n des Eleveurs de Canards*, 729 F.3d at 952.  As the Ninth Circuit has held, a "state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce."  *Nat'l Ass'n of Optometrists*, 682 F.3d 1144, 1148 (9th Cir. 2012).  Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*."  *Id.* (emphasis in original).  Such "significant burden[s]" generally involve "inconsistent regulation of activities that are inherently national or require a uniform system of regulation."  *Id.*  Burdens on commerce that result from regulations pursuant to the State's police power to protect the public health and safety are generally not regarded as significant even if they involve some loss of trade.  *See id.* (citing *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)).[2]

Here, plaintiff has not alleged any facts to show that the Mountain Lion Prohibition places a burden on commerce, let alone one that is substantial.  The FAC contains no allegations that the regulation of mountain lions and mountain lion products is "inherently national" or that the mountain lion trade requires a "uniform system of regulation."  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also Pac. Nw. Venison Producers*, 20 F.3d at 1014 (finding importation of wildlife was "not a matter in which national uniformity is important" because most states and Canadian provinces ban some species of wildlife and the species vary).  Instead, plaintiff devotes much of its FAC to detailing the loss of profits and income caused by the Mountain Lion Prohibition.  *See* FAC ¶¶ 41-52, 73-75.  For example, plaintiff alleges that anywhere from

---

[2] The Supreme Court has noted that many cases that have "purported to apply the undue burden test (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the challenged state regulations."  *General Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997).  "Because the purpose of the Commerce Clause is to protect the nation against economic Balkanization, legitimate regulations that have none of these effects [of discriminating against or regulating interstate commerce] arguably are not subject to invalidation under the Commerce Clause."  *Pac. Nw. Venison Producers*, 20 F.3d at 1015 (internal citations omitted); *see also Ass'n des Eleveurs de Canards*, 729 F.3d at 952.

10

1  approximately 2,500-8,000 of its members and other California residents would be interested in

2  mountain lion hunts, and that the Mountain Lion Prohibition discourages these people from

3  travelling outside of California to hunt mountain lions and thereby incurring expenses associated

4  with mountain lion hunting, such as travel, transportation, special equipment and ammunition,

5  taxidermy work, shipping, license fees, accommodations and food.  *Id.* ¶¶ 41, 43 45, 47-50, 73.  It

6  states that the total cost for most mountain lion hunting trips outside of California generally

7  ranges from $4,000-20,000, "depending on various factors."  *Id.* ¶¶ 48, 73.  The FAC states that

8  the "amount all these hunters would expend on activities they cannot do or are not willing to do

9  with the [Mountain Lion Prohibition] in place represents a substantial, adverse impact on

10  interstate commerce."  *Id.* ¶ 46.  Plaintiff further alleges that it holds an annual auction for

11  mountain lion hunts outside of California and that due to the Mountain Lion Prohibition, its

12  members who are California residents have decided not to bid on these hunts, which reduces the

13  value of these auction items and the revenue it, and sometimes other outfitters, receives.  *Id.* ¶ 51.

14  It claims that the Mountain Lion Prohibition also "discourages outfitters and other providers of

15  services related to mountain lion hunting from traveling to Safari Club chapter meetings

16  (including fundraising banquets) in California to offer or donate for auction hunting" and thus,

17  "eliminates the commerce associated with the travel to the banquets and the California resident

18  undertaking the hunt."  *Id.* ¶ 52.  Plaintiff asserts that "over the life of [the Mountain Lion

19  Prohibition]," its impact exceeds $15 million.  *Id.* ¶ 75.

20  However, the financial impact, whatever the dollar amount may be, to plaintiff, its

21  members, the mountain lion hunting industry, and secondary industries that benefit from people

22  traveling out of state to hunt and attend banquets, does not amount to a *substantial burden* on

23  *interstate commerce* within the meaning of the dormant Commerce Clause.  The point of the

24  dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-

25  state interests, not to protect the economic interests of businesses engaged in interstate commerce.

26  *See Carbone*, 511 U.S. at 390.  Indeed, the Commerce Clause "protects the interstate market, not

27  particular interstate firms, from prohibitive or burdensome regulations."  *Exxon Corp. v.*

28  *Governor of Md.*, 437 U.S. 117, 127-28 (1978); *see also Nat'l Optometrists*, 682 F. 3d at 1152 &

11

n.11 ("the dormant Commerce Clause does not protect a particular company's profits").

"Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet [plaintiffs'] burden." *Pac. Nw. Venison Producers*, 20 F.3d at 1015.  Rather, for "a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001); *see also Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148-49.  Plaintiff's allegations, all of which concern the financial effects of the Mountain Lion Prohibition on themselves and some others engaged in commerce, are thus insufficient as a matter of law.  *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1148.[3]  Moreover, because the Mountain Lion Prohibition does not, either directly or in practical effect, privilege intrastate commerce over interstate commerce and does not apply to activities that are inherently national or require a uniform system of regulation, plaintiff cannot demonstrate that the statute substantially burdens interstate commerce.  *Pac. Nw. Venison Producers*, 20 F.3d at 1015; *Sorrell*, 272 F.3d at 109.

### B. The Mountain Lion Prohibition Serves Important State Interests and Its Putative Benefits Outweigh Any Burden on Interstate Commerce.

Because plaintiff has not alleged and cannot allege any facts to establish a cognizable burden on interstate commerce, *Pike* balancing is not required and plaintiff's Commerce Clause claim fails.  *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155-56; *see also Nat'l Paint Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[T]he ordinance affects interstate shipments, but it does not discriminate against interstate commerce in either terms or effect.  No disparate treatment, no disparate impact, no problem under the dormant commerce clause."); *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1100-01 (N.D. Cal. 2014).

---

[3] The FAC notes that in *Pike*, the challenged statute would have caused plaintiff to spend $200,000 (in 1970 dollars) to build a processing and packing facility, which plaintiff calculates would be comparable to $1,209,907.22 in 2015.  FAC ¶ 29.  However, in *Pike*, it was not the monetary impact itself that lead the Supreme Court to determine that the challenged statute placed a clearly excessive burden on commerce in relation to its benefits.  Rather, it was because the law, which effectively required all cantaloupes sold in Arizona to be packed in that state, was, in practical effect, discriminatory.  *See Pike*, 397 U.S. at 140-42; *see also Tracy*, 519 U.S. at 299 n.12.

However, and perhaps of greater significance, even if *Pike* balancing were applied, plaintiff could not demonstrate that whatever incidental burdens the Mountain Lion Prohibition might cause would outweigh its benefits.  "A facially neutral statute may violate the Commerce Clause if 'the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational.'"  *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (citation omitted).  A statute is unreasonable or irrational when "the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry."  *Id.*  That is not the case here.

The Mountain Lion Prohibition, including the prohibition on the importation and possession of mountain lions and parts of mountain lions legally killed in other states, was enacted to conserve and protect mountain lion populations both within California and generally and to prevent the cruel practice of trophy hunting.[4]  *See* Cal. Fish & Game Code §§ 2780, 4800.  It is well settled that the protection of wildlife and the environment and the prevention of animal cruelty are legitimate state interests.  *Association des Eleveurs*, 729 F.3d at 952; *Pacific Nw. Venison Producers*, 20 F.3d at 1013.  Plaintiff does not suggest otherwise, but alleges that (1) "well-regulated mountain lion hunting is not cruel and unnecessary," FAC ¶ 54; (2) "the State has no legitimate interest in discouraging an activity outside of California, including … discouraging California residents from partaking in a legal and necessary activity that is not animal cruelty, *id.* ¶ 76; (3) the Mountain Lion Prohibition does not help conserve wildlife in California, *id.*; and (4) the State can promote its interests in ways that would have a "lesser impact on interstate activities," *id.* ¶ 77.  These allegations fail to satisfy plaintiff's pleading burden, *Iqbal*, 556 U.S. at 678, and do not rebut the strong presumption of validity afforded to state laws, *see Missouri Pac.*

---

[4] The FAC states that because it is not contained in the legislative findings, the "subjective belief asserted in the biased arguments of the proponents of Proposition 117 that mountain lion hunting is 'cruel and unnecessary' cannot be attributed to the voters or advanced as the justification" for the Mountain Lion Prohibition.  FAC ¶ 63.  However, a state need not provide a justification or rationale for its legislative decisions.  *See, e.g.*, *King v. Christie*, 981 F. Supp. 2d 296, 325 (D.N.J. 2013), *aff'd*, *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014).  Moreover, the people's interest in preventing trophy hunting is reflected in the legislative history.  *See* RJN, Exh. A; *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir.2012) (taking notice of excerpts of a Senate Report); *In re Google Inc.*, No. 13–MD–02430–LHK, 2013 WL 5423918, *6 (N.D. Cal. Sept. 26, 2013).

1   *R. Co. v. Norwood*, 283 U.S. 249, 254, *modified sub nom. Missouri Pac. R.R. Co. v. Norwood*,

2   283 U.S. 809 (1931); *Pacific Nw. Venison Producers*, 20 F.3d at 1014; *see also Legislature v. Eu*,

3   54 Cal.3d 492, 501 (Cal. 1991) ("[A]ll presumptions favor the validity of initiative measures.").

4         The people of California enacted the Mountain Lion Prohibition, in part, to conserve and

5   protect mountain lions based on the species' cultural value as California's "last magnificent

6   predator," and to discourage what they believed was the cruel practice of trophy hunting

7   mountain lions.  RJN, Exh. A.  The fact that plaintiff and/or other states and federal and state

8   officials may disagree with this assessment does not undermine the legitimacy of the State's

9   interest in enacting the Mountain Lion Prohibition.  *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d

10  551, 557 (7th Cir. 2007) ("States have a legitimate interest in prolonging the lives of animals that

11  their population happens to like.") (citing *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979)) ;

12  *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987); *Viva!*

13  *Intern. Voice for Animals v. Adidas Promotional Retail Operations*, Inc., 41 Cal.4th 929, 952

14  (Cal. 2007).[5]  Moreover, plaintiff has not alleged, and cannot allege, any facts tending to show

15  that the State's interests in the protection and conservation of wildlife and the prevention of

16  animal cruelty are "tenuous" and/or that Mountain Lion Prohibition furthers them "so marginally"

17  and that it "interfere[s] with commerce so substantially," *Kassel v. Consol. Freightways Corp.*,

18  450 U.S. 662, 670 (1981), as to be "a fig leaf masking discrimination," *Yakima Valley Mem'l*

19  *Hosp. v. Washington State Dep't of Health*, 753 F.3d 843, 849 (9th Cir. 2013); *see also*

20  *Association des Eleveurs,* 729 F.3d at 952; *Pacific Nw. Venison Producers*, 20 F.3d at 1013.

21  Finally, plaintiff's allegations that the State's interests could be achieved through means that

22  would have a "lesser impact" are legally irrelevant.  Where, as here, a law is not discriminatory

23  and places no significant burden on interstate commerce, it is "inappropriate for [a court] to set

24  them aside based on a conclusion that the State's purposes could be served as well with

---

25       [5] Although the FAC suggests that the Mountain Lion Prohibition does not achieve these interests, even if this were true, in the context of the *Pike* analysis, courts consider only the

26  *putative* benefits of a statute.  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (noting that *Pike* "does not mention actual benefits as part of the test for determining when a regulation violates the

27  dormant Commerce Clause.")

28

1   alternative laws." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157.  The Ninth Circuit has thus

2   instructed that in such cases, courts should "not consider any evidence regarding alternative

3   means for the State to achieve its goals." *Id.*; *see also id.* at 1156 (noting that where no

4   constitutionally significant burden on interstate commerce has been shown, courts give even

5   greater deference to the asserted benefits of a state law or regulation); *CTS Corp. v. Dynamics*

6   *Corp. of America*, 481 U.S. 69, 92 (1987) (noting that in context of dormant Commerce Clause

7   analysis, courts should not "second guess the empirical judgments of lawmakers concerning the

8   utility of legislation").

9          Accordingly, and because plaintiff has not stated, and cannot state, a claim under the

10   Commerce Clause, this Court should dismiss plaintiff's First Claim for Relief.  *See, e.g.*,

11   *Chinatown Neighborhood Ass'n*, 33 F. Supp. 3d at 1100-01; *PTI, Inc. v. Philip Morris, Inc.*, 100

12   F. Supp. 2d 1179, 1202-03 (C.D. Cal. 2000) (dismissing Commerce Clause claim where plaintiffs

13   could not allege a cognizable claim that statute's burden on interstate or foreign commerce was

14   "clearly excessive" in relation to the statute's putative benefits).

15   **III.   PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM FOR RELIEF UNDER**
       **THE EQUAL PROTECTION CLAUSE**

16

17          Plaintiff's Second Claim for Relief alleges that the Mountain Lion Prohibition discriminates

18   against those hunters who wish to legally hunt mountain lions in other states and then import into

19   and possess their harvested mountain lion in California, in violation the Equal Protection Clause.

20   Complaint ¶ 51.  The Equal Protection Clause of the Fourteenth Amendment "commands that no

21   State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

22   essentially a direction that all persons similarly situated should be treated alike." *City of*

23   *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Legislative provisions that

24   arbitrarily or irrationally create discrete classes cannot withstand constitutional scrutiny under the

25   Equal Protection Clause.  *Romer v. Evans*, 517 U.S. 620, 623 (1996).  However, courts must

26   balance this principle with the "practical necessity that most legislation classifies for one purpose

27   or another, with resulting disadvantage to various groups or persons."  *Id*. at 631 (citations

28   omitted).  In an attempt to reconcile the promise of equal protection with the reality of lawmaking,

1    courts apply the most searching constitutional scrutiny to those laws that burden a fundamental

2    right or target a suspect class, such as those based on race, national origin, or religion.  *Id.*  With

3    respect to protected classifications, the government is required to demonstrate that the

4    classification is narrowly tailored to further compelling government interests.  *See Grutter v.*

5    *Bollinger*, 539 U.S. 306, 326 (2003).  Laws that do not burden a protected class or infringe on a

6    constitutionally protected fundamental right are subject to rational basis review.  *Romer*, 517 U.S.

7    at 631.  Under the deferential rational basis test, statutes are generally "presumed valid" and

8    upheld if the classification drawn by the statute is rationally related to a legitimate state interest.

9    *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005).  Such statutes must be "wholly

10   irrational" to violate the Equal Protection Clause.  *Id.*

11        As plaintiff concedes, because the Mountain Lion Prohibition does not involve a

12   fundamental right or a suspect class, it is subject only to rational basis review.  *See* FAC ¶ 32.

13   Challenged legislation survives rational basis review as long as, in enacting legislation, the

14   legislature is acting in pursuit of a permissible government interest that bears a rational

15   relationship to the means chosen to achieve that interest.  *Heller v. Doe*, 509 U.S. 312, 319

16   (1993).  Under rational basis review, when legislative judgment is called into question on equal

17   protection grounds and the issue is debatable, the decision of the legislature must be upheld if

18   "any state of facts either known or which could reasonably be assumed affords support for it."

19   *United States v. Carolene Products Co.*, 304 U.S. 144, 154 (1938).  As this Court has noted,

20   "when 'applying rational basis review . . ., any hypothetical rationale for the law [will] do.'"

21   *Safari Club Int'l v. Harris*, No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869, at *2 (E.D. Cal.

22   Apr. 29, 2015) (quoting *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008)).  "[T]he

23   burden is on the one attacking the legislative arrangement to negative every conceivable basis

24   which might support it . . . ."  *Heller*, 509 U.S. at 319 (internal quotation marks omitted).  Further,

25   a legislature's rationale may pass rational basis review "even when there is an imperfect fit

26   between means and ends."  *Id.* at 321.  In sum, the measure need only have "arguable"

27   assumptions underlying its "plausible rationales" to survive constitutional challenge.  *Id.* at 333.

28

16

1    Here, plaintiff "ha[s] not alleged facts sufficient to overcome the presumption of

2    rationality" that applies to duly-enacted legislation.  *Teixeira v. Cty. of Alameda*, No. 12-cv-

3    03288-WHO, 2013 WL 4804756, *10 (N.D. Cal. Sept. 9, 2013) (quoting *Wroblewski v. City of

4    Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)); *see also City of Cleburne*, 473 U.S. at 440; *Fields*,

5    413 F.3d at 955; *Eu*, 54 Cal. 3d at 501.  The FAC alleges only the Mountain Lion Prohibition

6    violates the Equal Protection Clause because it "singles out and discriminates against" those

7    hunters who want to hunt mountain lions out of state and import and possess their harvested

8    mountain lion into and in California.  FAC ¶ 81.  It states that the Mountain Lion Prohibition

9    "arbitrarily and without justification" denies mountain lion hunters the ability to import, transfer,

10   and possess harvested mountain lions, while no such prohibition exists for hunters of other

11   species, *id.* ¶ 83, and that the "only difference between these two groups of hunters is the State's

12   arbitrary and apparent desire to punish those residents who desire to hunt mountain lions outside

13   of California and return to the State with their harvested animal," *id.*  The FAC concludes that the

14   Mountain Lion Prohibition "does not bear a rational relationship to any legitimate end."  *Id.* ¶ 83.

15   These conclusory allegations do not satisfy plaintiff's pleading burden and are insufficient to state

16   a cause of action for violation of the Equal Protection Clause.  *See Twombly*, 550 U.S. at 557,

17   570; *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 WL 3829268, *6 (N.D. Cal. July 23, 2013)

18   (citation omitted).

19          Even read in the light most favorable to plaintiff, the FAC falls far short of establishing a

20   plausible equal protection claim.  Plaintiff has not alleged facts that, if true, "negative every

21   conceivable basis which might support" the Mountain Lion Prohibition, *Heller*, 509 U.S. at 319,

22   nor facts demonstrating that the law is wholly irrational.  *See Fields*, 413 F.3d at 955; *Chinatown

23   Neighborhood Ass'n*, 33 F. Supp. 3d at 1096-97.  The people of California have found and

24   declared that the protection, enhancement, and restoration of wildlife habitats, including mountain

25   lion habitats, is "vital to maintaining the quality of life in California," and that there is "an urgent

26   need" to protect them and to "support California's unique and varied wildlife resources."  Cal.

27   Fish & Game Code § 2780.  The people also determined that the hunting of mountain lions is

28   cruel and unnecessary.  *See* RJN, Exh. A .  In keeping with these findings, California has

17

determined that the mountain lion is a specially protected mammal under the laws of this state and that it should be unlawful to take, injure, possess, transport, import, or sell any mountain lion or part of a mountain lion. *Id.* § 4800.  To the extent that plaintiff disagrees with the State's judgment and/or the Mountain Lion Prohibition, and specifically the ban on importation and possession of mountain lions legally hunted and killed in other states, is not the optimal way to achieve the State's interest in the protection of its wildlife and natural resources and the prevention of animal cruelty, *see, e.g.*, FAC ¶ 83, this is immaterial.  "[E]qual protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *F.C.C. v. Beach Communications*, *Inc.*, 508 U.S. 307, 313 (1993).  Further, rational basis review does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question.  *Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 378 (1973).

Given that the Mountain Lion Prohibition is rationally related to the State's interest in conserving and protecting mountain lions and in the prevention of animal cruelty, plaintiff cannot state an equal protection claim as a matter of law.  *See Pacific Nw. Venison Producers*, 20 F.3d at 1013; *Chinatown Neighborhood Ass'n*, 33 F. Supp. 3d at 1096-97.  The Court should thus dismiss plaintiff's Second Claim for Relief.

## IV.   PLAINTIFF'S REMAINING CLAIM MUST BE DISMISSED

Plaintiff's Third Claim for Relief alleges that defendants are liable under 42 U.S.C. section 1983 because enforcement of the Mountain Lion Prohibition deprives its members of guaranteed constitutional rights.  FAC ¶ 86.  However, because plaintiff has failed to adequately allege violations of either of these clauses for the reasons set forth above, plaintiff's Third Claim necessarily fails to state a claim and should be dismissed.

1

**CONCLUSION**

2

For the foregoing reasons, defendants respectfully request that the Court dismiss the

3

Complaint in its entirety and enter judgment in their favor.

4

5

Dated:  June 17, 2015                                    Respectfully Submitted,

6

KAMALA D. HARRIS

7

Attorney General of California
TAMAR PACHTER

8

Supervising Deputy Attorney General

9

*/s/ Alexandra Robert Gordon*

10

ALEXANDRA ROBERT GORDON

Deputy Attorney General

11

*Attorneys for Defendants*
*Attorney General Harris and Director*

12

*Bonham*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19