PETER A. BRANDT (CA Bar No. 241287)
pbrandt@humanesociety.org
HALLIE G. SEARS (DC Bar No. 1001756)
(admitted, *pro hac vice*)
hsears@humanesociety.org
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, NW
Washington, DC 20037
Telephone:  202-676-2335
Facsimile:   202-676-2357
*Attorneys for Proposed Amici*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL,<br><br>             Plaintiff;<br><br>    v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California, and CHARLTON H. BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife;<br><br>             Defendants. | Case No. 2:14-cv-01856-GEB-AC<br><br>**[PROPOSED] AMICUS CURIAE BRIEF OF THE HUMANE SOCIETY OF THE UNITED STATES AND THE FUND FOR ANIMALS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:      July 27, 2015<br>Time:     9:00 a.m.<br>Judge:    Hon. Garland E. Burrell, Jr. |

2:14-CV-01856-GEB-AC

**INTEREST OF *AMICI CURIAE***

*Amici* The Humane Society of the United States and The Fund for Animals were integral to the passage of Proposition 117—the mountain lion protection law at issue in this case. They also helped to defeat efforts to repeal the law in 1996. HSUS and The Fund have spent considerable time, financial resources, and institutional goodwill promoting wildlife protection policy in California, including ensuring the protection of mountain lions. Disposition of this case may significantly impact *Amici's* organizational interests, and the interests of their members, in preventing animal cruelty and promoting wildlife conservation, and *Amici* can provide critical and unique legal, practical, and historical perspectives on the issues presented in this case.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................................1

II. BACKGROUND ............................................................................................................................2

    A.  Enactment of Proposition 117 ..............................................................................................2

    B.  Procedural History ................................................................................................................3

III. STANDARD OF REVIEW ...........................................................................................................3

IV. ARGUMENT .................................................................................................................................5

    A.  The Mountain Lion Law Does Not Violate the Commerce Clause ....................................5

    B.  The Mountain Lion Law Does Not Violate the Equal Protection Clause .........................11

    C.  The Mountain Lion Law Does Not Violate 42 U.S.C § 1983 ...........................................14

V. CONCLUSION .............................................................................................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

## I. INTRODUCTION

In 1990, California voters enacted Proposition 117, which declares mountain lions a protected species and prohibits taking, injuring, possessing, transporting, importing, or selling any mountain lion or any part thereof. Nearly 25 years after the law was enacted, a national trophy hunting organization has come forward to challenge the law's prohibition on importing mountain lion trophies into the state. Plaintiff Safari Club International claims that this one aspect of Proposition 117 violates the Commerce Clause and Equal Protection Clause based on the theory that the State has no legitimate interest in prohibiting the import of the trophy of an animal killed outside the State. As discussed below, Safari Club misconstrues the State's interests at stake, ignoring the fact that courts have long-recognized States' legitimate interests in preventing harm to animals as a reflection of public mores and an exercise of the state police power.

Proposition 117 does not discriminate against interstate commerce and places no extraterritorial restrictions on other activities occurring wholly within other states. Safari Club's Amended Complaint continues to rely heavily on the assertion that the law has incidentally impacted commercial activity in other states, because some of Safari Club's California members will not hunt mountain lions in other states if they cannot import their trophies to California. But the Commerce Clause is not concerned with an individual's personal interests or incidental burdens to commerce. Rather, it protects against excessive harm to an interstate market as a whole. Safari Club fails to allege that interstate commerce as a whole will be substantially affected by the loss of the small group of California hunters who will no longer hunt for mountain lions in other states. And even if Safari Club had established a substantial burden, their claim would still fail because the import restriction of Proposition 117 serves a legitimate public interest.

Safari Club's Equal Protection claim is also unsupportable. Safari Club's Amended Complaint continues to focus on the argument that Proposition 117 unfairly restricts the activity of mountain lion hunters when California law does not place similar restrictions on hunters of

other species.  But mountain lions are not the only species which cannot be imported under California law, and the legislative findings for Proposition 117, and the official ballot pamphlet arguments, make clear that the State's decision to focus on protecting mountain lions was grounded in a rational basis, thus satisfying the Equal Protection Clause.

In light of the arguments set forth herein and in the Defendants' Motion, the Court should dismiss all of Safari Club's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

### A. <u>Enactment of Proposition 117</u>

California's Wildlife Protection Act of 1990 was approved by voters as Proposition 117 in the June 5, 1990 election.  The requirements and restrictions of Proposition 117 relating to mountain lions were added to the California Fish & Game Code in several sections beginning with Section 4800.  *See* Cal. Fish & Game Code §§ 4800-4810 ("Mountain Lion Law").  Under these provisions, the mountain lion was listed as a "specially protected mammal in the state," and it became a crime to "take, injure, possess, transport, import, or sell any mountain lion or any part thereof."  *Id.* § 4800.  The prohibitions in the law do not apply to instances in which the mountain lion, carcass, or parts or products thereof were taken prior to June, 6, 1990, are intended for specific scientific or educational purposes, taken in accordance with California law, or authorized by the Department of Fish and Wildlife under specific circumstances.  *Id.* § 4800(b)(2)-(3).

Some findings in support of Proposition 117 were codified in the Fish and Game Code. These findings declared, *inter alia*:  (1) the "[p]rotection, enhancement, and restoration of wildlife habitat and fisheries are vital to maintaining the quality of life in California. As the state's human population increases, there is an urgent need to protect the rapidly disappearing wildlife habitats that support California's unique and varied wildlife resources;" (2) "mountain lion[] and other wildlife habitat . . . is disappearing rapidly. Small and often isolated wildlife populations are forced to depend upon these shrinking habitat areas within the heavily urbanizing areas of this state.  Corridors of natural habitat must be preserved to maintain the genetic integrity of California's wildlife;" and (3) "[t]his chapter shall be implemented in the most expeditious manner.  All state officials shall implement this chapter to the fullest extent of their authority in

order to preserve, maintain, and enhance California's diverse wildlife heritage and the habitats upon which it depends." Cal. Fish & Game Code § 2780 (a), (d), (e).

A significant focus of Proposition 117 was prohibiting mountain lion hunting, and specifically trophy hunting, as is evident from the proponent and opponent arguments included in the official Ballot Pamphlet for Proposition 117, which was circulated to voters by the Secretary of State's office. *See* Defendants' Request for Judicial Notice, Dkt. No. 42-1 ("Def. RJN"), Exh. A. The proponent argument printed in the Ballot Pamphlet highlights that "Proposition 117 OUTLAWS THE TROPHY HUNTING OF MOUNTAIN LIONS," and it cites as reasons for such policy the mountain lion's cultural value as part of our "natural heritage," promoting the conservation of the mountain lion as California's last native large predator species, and the belief that hunting this elusive animal is "cruel and unnecessary." *Id*. at 5.[1]

When hunting groups sought to overturn significant portions of Proposition 117 by referendum in 1996, the official Ballot Pamphlet for that measure (Proposition 197) contained arguments over the impact of the measure with respect to sport hunting. *See* Amici's Request for Judicial Notice, ("*Amici* RJN"), Exh. A. Proponents of amendments to the Mountain Lion Law argued to voters that the 1996 measure had nothing to do with trophy hunting. *Id*. at 4-5. Opponents met this argument by noting that the amendments would in fact allow hunting to be authorized by the Department of Fish and Game, quoting a Safari Club newsletter telling the group's members that "sport hunting of mountain lions" "can resume" if voters approved the 1996 measure. *Id*.

### B. Procedural History

On August 6, 2014, Plaintiff Safari Club filed a Complaint for Declarative and Injunctive Relief against Kamala D. Harris, in her official capacity as the Attorney General of California, and Charlton H. Bonham, in his capacity as the Director of the California Department of Fish and

---

[1] Many newspaper articles describe the policy changes and public discourse leading up to the passage of Proposition 117. These articles show that debate over mountain lion hunting was prevalent in the public realm when Proposition 117 was being considered by voters. *Amici* RJN, Exh. B-C.

1  Wildlife, seeking to set aside and enjoin enforcement of the Mountain Lion Law for violating the
2  Commerce Clause and Equal Protection Clause of the United States Constitution.

3  On October 6, 2014, Defendants filed a Motion to Dismiss the case pursuant to Federal
4  Rule of Civil Procedure 12(b)(6) for failure to satisfy pleading requirements and to state a claim
5  upon which relief can be granted.  On January 14, 2015, the Court accepted *Amici's* proposed
6  *amicus curiae* brief in support of Defendants' Motion. Dkt. 25.  On April 29, 2015 the Court
7  granted Defendants' Motion, dismissing the case with leave for Plaintiff to amend its Complaint.
8  Dkt 37.  In its opinion, the Court held that Plaintiff did not sufficiently allege that the Mountain
9  Lion Law bears no rational relationship to the State's interests and that Plaintiff does not
10 plausibly plead how or why alleged burdens caused by the Mountain Lion Law are clearly
11 excessive in light of the law's benefits.  *Id.* at 4-6.

12 Plaintiff filed its First Amended Complaint on May 13, 2015, Dkt. 38 ("Amended
13 Complaint"), and Defendants have again moved to dismiss the case under FRCP 12(b)(6) for
14 failure to satisfy pleading requirements and to state a claim upon which relief can be granted, Dkt.
15 42.

### III. STANDARD OF REVIEW

17 Under FRCP 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon
18 which relief can be granted.  A complaint should be dismissed as a matter of law for failure to
19 state a claim for either of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient
20 facts under a cognizable legal theory.  *Chubb Custom Ins. Co. v. Space Sys. Loral,* Inc., 710 F.3d
21 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

22 When ruling on a motion to dismiss, a court must accept all factual allegations stated in a
23 complaint as true, but the court may not assume facts not stated in a complaint.  And to survive a
24 motion to dismiss a complaint must contain "enough facts to state a claim to relief that is
25 plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The court is not
26 required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact,
27 or unreasonable inferences." *St. Clare v. Gilead Scis.*, *Inc.* 536 F.3d 1049, 1055 (9th Cir. 2008).

28

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement," *id.* (quotation marks and brackets omitted), and the court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Further, a complaint should be dismissed without leave to amend where the plaintiffs' averments are insufficient as a matter of law and the deficiencies in the plaintiffs' claims cannot be cured by additional pleading. *See Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## IV. ARGUMENT

### A. The Mountain Lion Law Does Not Violate the Commerce Clause

The Commerce Clause has been interpreted to include an implied limitation on states' authority to adopt legislation that *discriminates against* interstate commerce. *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992); *NCAA v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993). A law is discriminatory if it causes "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter" and that is motivated by "economic protectionism." *Oregon Waste Sys., Inc. v. Dept. of Envtl. Quality of Oregon*, 511 U.S. 93, 99 (1994). The restrictions on state law created by the Commerce Clause are "by no means absolute," and the "states retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected." *Maine v. Taylor*, 477 U.S. 131, 137-38 (1986); *see also Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976) (". . . not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States"). Therefore, there has been no violation of the Commerce Clause where a state law does not regulate extraterritorially, does not intentionally discriminate against interstate commerce, or imposes mere incidental effects on commerce.

A state law that "simply effectuates a complete ban on commerce in certain items" is not unconstitutional, as long as it "does not make distinctions based on the origin of the items." *Pac. Northwest Venison Producers*, 20 F.3d at 1011, 1015. In *Pacific Northwest Venison Producers*,

the Ninth Circuit upheld state regulations prohibiting, *inter alia*, the importation and possession of certain "deleterious exotic wildlife" against a Commerce Clause challenge. *Id*. Similarly, the Seventh Circuit has upheld a complete ban on the import and sale of horsemeat for purposes of human consumption, *Cavel Int'l, Inc. v. Madigan*, 500 F. 3d 551, 557 (7th Cir. 2007), and the Second Circuit has upheld a complete ban on the import and sale of live wild birds out of concern that many thousands of wild birds were dying as a result of cruel and careless practices during live capture and transport into the state, *Cresenzi Bird Importers*, 658 F. Supp. at 1447, *aff'd* 831 F.2d 410 (2d Cir. 1987) (adopting the reasoning stated in the District Court opinion).

Just because the California's Mountain Lion Law prohibits a legally obtained article of commerce from entering the state, it does not mean that the ban violates the Commerce Clause as Plaintiff argues, because the law treats all mountain lion trophies exactly the same, regardless of their point of origin. The Mountain Lion Law, and specifically its prohibition on import of trophies from sport hunts, does not directly discriminate against interstate commerce, it merely has some incidental effect on interstate commerce.

Where a state law merely has incidental effects on interstate commerce, it must be upheld unless such effects create a "substantial burden" on the interstate market that "clearly exceeds" the putative benefits of the law to the state. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 143 (1970). As the Ninth Circuit has recently reiterated, "most statutes that impose a substantial burden on interstate commerce do so because they are discriminatory." *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) ("*AECOQ*"), *certiorari denied*, 574 U.S. -- at *2 (Oct. 14, 2014), *available at* http://www.supremecourt.gov/orders/courtorders/101414 zor.pdf. Thus, "[f]or a state statute to run afoul of the *Pike* standard, the statute, *at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce*." *National Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001) (emphasis added); *see also Empacadora de Carnes de Fresnillo, S.A. DE C.V. v. Curry*, 476 F.3d 326, 336 (5th Cir. 2007) (quoting *Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 502 (5th Cir. 2004) (quotation and citation omitted) (the "incidental burdens" referred to in *Pike* do not include *any*

impact a law may have on interstate commerce, but rather those "burdens on interstate commerce that exceed the burdens on intrastate commerce")).

California's Mountain Lion Law is focused on, and completely eliminates, the market for mountain lions and mountain lion parts *within the State*. It does not specify whether a market may exist in other states or even whether its own residents may hunt mountain lions or otherwise participate in any market for mountain lions or mountain lion parts in other states where it is legal to do so. Thus, the Mountain Lion Law places *a greater* burden on intrastate commerce when compared to its mere incidental effects on interstate commerce.

Further, with respect to any incidental effects on interstate commerce "a plaintiff *must first show* that the statute imposes a substantial burden *before* the court will determine whether the benefits of the challenged laws are illusory." *AECOQ*, 729 F.3d 937 at 951-52 (internal quotation omitted and emphasis added) (citing *National Association of Optometrists & Opticians v. Harris* ("*NAOO*"), 682 F.3d 1144, 1155 (9th Cir. 2012)); *see also S.D. Myers, Inc. v. City & County of San Francisco,* 253 F.3d 461, 467 (9th Cir. 2001) (requiring the plaintiff to provide "specific details as to how the costs of the Ordinance burdened interstate commerce"). But Safari Club's Amended Complaint fails to show that the import provisions of California's Mountain Lion Law create a substantial burden to the interstate market for mountain lion hunting. Safari Club asserts that some of its members are Californians that have either successfully hunted mountain lions outside of California in the past or intend to do so in the future and wish to import their sport-hunted mountain lions into California. Am. Complaint at ¶ 18. Safari Club also asserts that some of its other members are "outfitters and guides who would benefit from providing more mountain lion hunts outside of California to California residents (many of whom decide not to purchase such hunts because of the Import Ban)." *Id.* The credibility of these claims is suspect given that the Mountain Lion Law is twenty-five years old and Safari Club is now challenging the law for the first time in the quarter of a century since its passage. Further, the Commerce Clause does not protect individual actors engaged in interstate commerce, it "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978).

1    While the disadvantages imposed on California hunters who want to hunt mountain lions in other states may be objectionable to Safari Club, the Amended Complaint simply does not identify any impacts that are constitutionally objectionable under the Commerce Clause.  Safari Club's claim fails, in the first instance, because Safari Club focuses on the purported impact to individual actors engaged in interstate commerce rather than *harm to the relevant interstate market.* Nothing in the Amended Complaint identifies the degree to which interstate commerce relating to mountain lion hunting as a whole will be impacted by the loss of the small number of Californians who would hunt for mountain lions in other states but will not do so if they can't import the trophy from the hunt for use in California.  *See NAOO*, 682 F.3d at 1154 ("[T]here is not a significant burden on interstate commerce merely because a non-discriminatory regulation precludes a preferred, more profitable method of operating in a retail market."); *see also Cavel Int'l*, 500 F.3d at 558 (dismissing a Commerce Clause claim against a state ban on import and sale of horsemeat, where plaintiff—the sole operating horse slaughter facility in the country— failed to allege "what percentage of the horse meat consumed by Europeans it supplies and thus whether its being closed down is likely to have a big effect on the price of horse meat in Europe"). Because Safari Club fails to plausibly allege a substantial burden on the interstate market for mountain lion hunting, its Commerce Clause claim fails under the *Pike* test, and there is no need for a reviewing court to examine the putative benefits of the challenged law.  *NAOO*, 682 F.3d at 1155.

   Even if the Court does examine the rationale for Proposition 117, it is clear that the putative benefits of the Mountain Lion Law represent legitimate state interests. Safari Club claims that the findings set forth in support of the Mountain Lion Law fail to provide any legitimate justification for the prohibition on import of hunting trophies, Am. Complaint at ¶ 24, and that this prohibition "does not in any way enhance or support habitat conservation in California," *id.* at ¶ 64, and "does not serve the purpose of managing the individual animals and the species within California," *id.*. However, Safari Club too narrowly construes the State's interests reflected in the Mountain Lion Law.  The codified legislative findings for Proposition 117 indicate that the law was enacted out of concern for conservation of mountain lions in general, including the

- 8 -                                                                                2:14-CV-01856-GEB-AC

preservation of mountain lion habitats and the genetic integrity of mountain lion populations. *See* Cal. Fish & Game Code § 2780. Further, the official Ballot Pamphlet published by the Secretary of State contains the arguments for and against Proposition 117 that were presented to voters in 1990, and the proponent's arguments therein assert that the Mountain Lion Law is justified based on the species' cultural value as part of our "natural heritage," and the belief that hunting mountain lions is "cruel and unnecessary". Def. RJN, Exh. A.

Under *Pike* "balancing," the determinative question is whether "the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational." *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir.1991) (per curiam). A statute is only unreasonable or irrational when "the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." *Id.* The asserted benefits of the Mountain Lion Law are not illusory or based on impermissible favoritism. They concern issues of significant importance to California, which are traditionally regulated under state police powers. Indeed, California has a long history of prohibiting local trade in, and use of, animal parts and products that violate the state's ethical norms.[2] *See* CAL. HEALTH & SAFETY CODE § 25982 (prohibiting the sale of products made from force-feeding birds); CAL. PENAL CODE § 598a (prohibiting the sale of dog and cat pelts); *id.* § 598b (prohibiting the sale of the meat of any animal commonly kept as a household pet); *id.* § 598d (prohibiting the sale of horse meat); *id.* §653o (prohibiting the import and sale of any part or

---

[2] According to Plaintiff's Amended Complaint, import of a mountain lion trophy would generate some in-state commerce through taxidermy, transportation, and related activities. *See* Am. Complaint at ¶¶ 4-5, 47, 73. Restricting this commercial activity to reduce the incentive to kill mountain lions is a rational means of effectuating the State's policy position as to the protection of mountain lions. The Amended Complaint also indicates that an imported mountain trophy serves as a representation of the hunt itself, and hunters would choose to put their trophy on "display . . . in their homes or offices." *Id.* at ¶ 53. It is surely not irrational to expect that that such display might encourage other Californians to kill mountain lions for sport or sell their harvested mountain lion to others in the state, and thereby undermine the objectives of Proposition 117 and perpetuate an unwanted market in the state. And whether or not such display encourages additional killing and selling of mountain lions and parts thereof, it is clearly contrary to the ethical norms underlying Proposition 117.

product of nearly two dozen species of wild animals, including polar bears, leopards, whales, elephants and kangaroos).

Moreover, a state's goals of promoting the conservation of wildlife and preventing cruel or unnecessary harm to animals, including by regulating in-state activity in order to dissuade its citizens from contributing to the killing or otherwise harming of animals outside of the state, have been long-recognized by courts as legitimate state interests that are routinely regulated under state police powers. *See*, *e.g.*, *Pac. Northwest Venison Producers*, 20 F.3d at 1011, 1015 (upholding state regulations prohibiting importation and possession of certain foreign "deleterious exotic wildlife" as an exercise of state authority to conserve natural resources); *Cresenzi Bird Importers*, 658 F. Supp. at 1447 (upholding a New York ban on the import and sale of wild birds, based on the state's ethical objection to the manner in which those birds are treated during capture and transport outside the state prior to import); *Viva! Intern. Voice For Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal.4th 929, 952, 162 P.3d 569, 583 (Cal., 2007) (upholding California's ban on import of kangaroo pelts and products, based on the state's desire to protect the species from harm, even though kangaroos are not found in California and were recently taken off of the list of species protected by the federal Endangered Species Act).

Finally, Safari Club appears to assert that the Court should consider whether an alternative approach to the prohibition on import of mountain lions would have less impact on commercial activities that a subset of Safari Club's members wish to engage in.  Am. Complaint at ¶ 28 (arguing that the State Defendants have less restrictive means of accomplishing any local interest they might claim is advanced by the Mountain Lion Law.).  However, such an inquiry is neither required nor appropriate under the lower scrutiny of an incidental burdens analysis.  The Court should not substitute its judgment as to the wisdom or fairness of the State's policy choices in protecting mountain lions, especially not in the context of a facial challenge to a law enacted 25 years ago being brought by opponents of the law who actively participated in the public debate on the law at the time of its enactment.  *NAOO*, 682 F.3d at 1155. (under rational basis review, courts should "not consider any evidence regarding alternative means for the State to achieve its goals."); *Pac. Northwest Venison Producers*, 20 F.3d at 1011, 1016-17 (rejecting plaintiffs'

argument that alternatives to a state ban on import of captive-bred deer would better meet the state's goal of protecting native herds while having a lesser impact on interstate commerce, because the choice of how to regulate wildlife is quintessentially a legislative determination and, since the proposed alternatives were clearly disputed, it would be inappropriate for the court to substitute its opinion for that of state policymakers).

California's Mountain Lion Law does not discriminate against interstate commerce, and does not place burdens on interstate commerce that are any different than the burdens placed on intrastate commerce, or that are excessive in relation to putative state interests. Instead, the Mountain Lion Law simply effectuates a complete ban on commerce in mountain lions and mountain lion parts *within the state of California* without making distinctions based on their point-of-origin. Because the Mountain Lion Law applies to intrastate activity only, acts in a facially neutral manner, and does not discriminate against out-of-state actors or have a disparate impact on out-of-state as compared to in-state commerce, it should be upheld as a matter of law.

### B. The Mountain Lion Law Does Not Violate the Equal Protection Clause.

The Fourteenth Amendment of the U.S. Constitution guarantees equal protection under the law and prevents "official conduct discriminating on the basis of [a protected classification]." *Washington v. Davis*, 426 U.S. 229, 239 (1976). A reviewing court applies "strict scrutiny" to a plaintiff's Equal Protection claim if the law was *intentionally* designed to discriminate against a protected class of persons, including where there is demonstrated legislative intent to discriminate on the basis of impermissible considerations. *Id.*; *Valeria v. Davis,* 307 F.3d 1036, 1040 (9th Cir. 2002) (demonstrable evidence of purposeful racial discrimination required for application of strict scrutiny). Where there is no protected class at issue, or no evidence of intent to discriminate, strict scrutiny does not apply, the constitutionality of the statute is *presumed*, and the statute must be upheld as a matter of law if it is "rationally related to a legitimate state interest." *Hispanic Taco Vendors of Washington v. City of Pasco*, 994 F.2d 676, 680 (9th Cir. 1993); *see also Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1157 (9th Cir. 2007).

1    Safari Club concedes that the ordinance does not implicate any constitutionally suspect
2    classes.  Am. Complaint at ¶ 32.  Safari Club's challenge must therefore be evaluated under the
3    highly deferential "rational basis" standard. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137,
4    1154 (9th Cir. 2004).  A state or local law will survive rational basis review if "any reasonably
5    conceivable state of facts . . . could provide a rational basis for the classification." *Id.* (quoting
6    *FCC v. Beach Communications, Inc.*, 508 U.S. 303, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211
7    (1993)).  And "in making this determination, the Court need not determine the actual motive . . .
8    in passing the Ordinance or engage in fact-finding with regard to the rationality of conceivable
9    motives." *Fortuna Enterprises, L.P. v. City of Los Angeles*, 673 F.Supp.2d 1000, 1013 (C.D. Cal.
10   2008); see also *RUI One*, 371 F.3d at 1155.  As set forth below, there are multiple actual and
11   conceivable rational bases for the prohibition on importing into the state mountain lions and parts
12   thereof.  Accordingly, this claim should be dismissed.

13   Safari Club contends that there is no legitimate justification for denying hunters the ability
14   to import, transport, and possess mountain lions and mountain lion parts in California.  Am.
15   Complaint at ¶ 82.  But this contention ignores the codified legislative findings for Proposition
16   117, as well as the many arguments in support of the law that were presented to voters, including
17   the proponent arguments that were published by the Secretary of State in the official Ballot
18   Pamphlet for Proposition 117.  The codified legislative findings for Proposition 117 indicate that
19   protection, enhancement and restoration of wildlife habitats, specifically including mountain lion
20   habitats, is "vital to maintaining the quality of life in California," mountain lion habitats are
21   "disappearing rapidly," and "there is an urgent need to protect the rapidly disappearing wildlife
22   habitats that support California's unique and varied wildlife resources." Cal. Fish & Game Code §
23   2780.  Accordingly, Proposition 117 designated mountain lions as a "specially protected
24   mammal" that may not be hunted or imported, transported, or otherwise possessed in the state.
25   Cal. Fish & Game Code § 4800.

26   In addition, the official Ballot Pamphlet for Proposition 117 contained proponent
27   arguments claiming a need to abolish the "cruel and unnecessary" hunting of mountain lions, in
28   which the animal is chased to exhaustion by dogs and then shot at point-blank range. *See* Def.

1  RJN, Exh. A. The Ballot Pamphlet also presented voters with an argument that mountain lions
2  should be protected as California's "last magnificent predator" and "symbol of [California's]
3  wilderness heritage," so that the mountain lion will be "free to live." *Id.* Restricting the activities
4  of Californians who would kill mountain lions to combat cruelty and prolong the lives of
5  keystone predators, or simply because mountain lions are a species which Californians tend to
6  appreciate and believe it would be unethical to kill, is a legitimate putative state interest. *See*
7  *Cavel*, 500 F.3d at 556-57 ("States have a legitimate interest in prolonging the lives of animals
8  that their population happens to like." (citing *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979)));
9  *Cresenzi Bird Importers*, 658 F. Supp. at 1447 (upholding a New York ban on the import and sale
10 of wild birds, because the state "has a legitimate interest in regulating its local market conditions
11 which lead, in a short causal chain, to the unjustifiable and senseless suffering and death of
12 thousands of captured wild birds . . . [and] in cleansing its markets of commerce which the
13 Legislature finds to be unethical.").

14      Safari Club argues that the Mountain Lion Law "denies the group of hunters who wish to
15 hunt mountain lions outside of California the ability to import into, and transport and possess any
16 harvested mountain lion within California, while allowing others to engage in the hunting of
17 numerous other protected and unprotected species without restrictions as to importation,
18 transportation, and possession within California." Am. Complaint at ¶ 82.  This argument
19 appears to suggest that Californians should be just as concerned about conservation, animal
20 welfare, and ethical concerns with respect to trophy hunting of other wildlife species if they have
21 these concerns with respect to trophy hunting of mountain lions.
22 However, even if it were true that the arguments against trophy hunting mountain lions could be
23 applied equally to all other trophy hunted species—a position that *Amici* find hard to believe that
24 Safari Club would ever ascribe to—that assertion is totally irrelevant here.[3]

25      It is well established that "a legislature need not strike at all evils at the same time or in
26 the same way, and that a legislature may implement its program step by step . . . adopting

---

[3] If Safari Club is concerned that California needs additional restrictions on trophy hunting of
imperiled species, the proper course is to pursue additional legislation in the state legislature.

regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 466, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (*quoting New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)). Just as the "Equal Protection Clause [did] not deny the State of Minnesota the authority to ban one type of milk container conceded to cause environmental problems, merely because another type . . . is permitted to continue in use" in *Clover Leaf*, so too does the Equal Protection Clause not bar California from banning the importation, transportation, and possession of harvested mountain lions merely because it allows those actions for other harvested animals. *Id.*

Furthermore, Safari Club is plainly incorrect that California has no basis to treat mountain lion hunters differently than hunters of other animals. Am. Complaint at ¶ 83. As discussed above, there are legitimate reasons for the State to establish specific protections for mountain lions. Moreover, contrary to Safari Club's argument—which it emphasizes in the Amended Complaint—mountain lion hunters have not been treated unusually or irrationally. In fact, mountain lion hunters who cannot import their trophies pursuant to the Mountain Lion Law are not at all in a unique position among California hunters. California also prohibits the import for commercial purposes of "the dead body, or any part or product thereof" of other species subject to trophy hunting outside of California, including polar bears, leopards, cheetahs, sable antelope, wolves, zebras and elephants among others. CAL. PENAL CODE § 653o.

While Safari Club questions the prudence of the Mountain Lion Law, under rational basis review, the "Equal Protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Communications*, 508 U.S. at 313; *Hispanic Taco Vendors*, 994 F.2d at 680 (rejecting plaintiffs' Equal Protection claim where there existed a neutral rationale for the law, grounded in public policy). Moreover, because even a hypothesized rational basis would satisfy this low level of scrutiny, a law may be "based on rational speculation unsupported by evidence or empirical data." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quoting *Beach Communications*, 508 U.S. at 315); *see also Country Classic Dairies v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). Because Californian citizens who want to

- 14 -  2:14-CV-01856-GEB-AC

hunt mountain lions in other states, but who won't do so if they can't import their trophy, are not a protected classification, and because several actual and conceivable rational bases exist for promulgating the Mountain Lion Law, Safari Club has failed to present a legally cognizable Equal Protection Clause claim.

### C. The Mountain Lion Law Does Not Violate Section 1983.

Section 1983 does not provide independent grounds for relief, only a remedy for other federal constitutional violations. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 601, 99 S.Ct. 1905, 1908, 60 L.Ed.2d 508 (1979) ("One cannot go into court and claim 'a violation of § 1983,' for § 1983 by itself does not protect anyone against anything, but simply provides a remedy"). Because Safari Club asserts no colorable federal constitutional claim, it cannot invoke Section 1983.

## V. CONCLUSION

For the foregoing reasons, *Amici* respectfully submit that the Court should grant the Defendants' Motion to Dismiss the Amended Complaint without leave to amend.

Dated:  June 26, 2015

Respectfully submitted,

By: /s/ Hallie G. Sears

Hallie G. Sears (DC Bar No. 1001756)
(admitted, *pro hac vice*)
hsears@humanesociety.org
Peter A. Brandt (CA Bar No. 241287)
pbrandt@humanesociety.org
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, NW, Washington, DC 20037
Telephone: 202-676-2335
Facsimile: 202-676-2357
*Attorneys for Proposed Amici*