Linda J. Linton, Esq. (Counsel for Service)
(California Bar No. 177821)
Linton & Associates, P.C.
6900 S. McCarran Blvd., #2040
Reno, NV  89509
Telephone: (775) 333-0881
Facsimile: (775) 333-0877
llinton@lintonlegal.com

Douglas S. Burdin, Esq.
(D.C. Bar No. 434107)
Anna M. Seidman, Esq.
(D.C. Bar No. 417091)
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org
aseidman@safariclub.org
Counsel for Plaintiff
Safari Club International

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL<br><br>Plaintiff,<br><br>v.<br><br>KAMALA D. HARRIS, in her official capacity as the Attorney General of California; CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife<br><br>Defendants.<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

2:14-cv-01856-GEB-AC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Hearing Date:  September 28, 2015
Time:  9:00 a.m.
Courtroom: 10, 13th Floor
Judge: Hon. Garland E. Burrell, Jr.
Action Filed: August 6, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

I.      INTRODUCTION ............................................................................................... 1

II.     THE IMPORT BAN ............................................................................................ 4

III.    STATEMENT OF FACTS .................................................................................. 4

IV.     ARGUMENT ..................................................................................................... 10

   A.  Standards for Pleading and for Resolving a Motion to Dismiss................................... 10

   B.  With the Additional Facts in the FAC, Safari Club Has Alleged More
       Than a Plausible Commerce Clause Claim.................................................................. 11

      1. State Defendants Fail to Address Invalidation of a State Law Under the
         *Pike* Commerce Clause Analysis ................................................................................ 12

      2. Safari Club Has Alleged a Substantial Impact on Interstate Commerce ..................... 18

      3. The Import Ban Does Not Advance the State's Purported Interest in Habitat
         and Species Protection in California, and Alleged Prevention of Animal Cruelty
         is not a Legitimate Purpose........................................................................................... 22

   C.  With the Additional Facts in the FAC, Safari Club Has Alleged More Than
       a Plausible Equal Protection Claim............................................................................. 29

   D.  Safari Club Has Alleged More Than a Plausible Section 1983 Claim ......................... 33

   E.  If the Court Finds Safari Club Still Has Not Asserted Plausible Claims,
       It Should Grant Safari Club One More Opportunity to Amend to Cure
       Any Deficiencies............................................................................................................ 34

V.      CONCLUSION.................................................................................................. 34

# TABLE OF AUTHORITIES

**CASES**

Alaska Airlines, Inc. v. City of Long Beach, 951 F.2d 977 (9th Cir. 1991)..............................29

Al-Kidd v. Ashcroft, 580 F.3d 949 (9th Cir. 2009) ....................................................10

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..................................................................10

Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,
   729 F.3d 937 (9th Cir. 2013) ........................................................................20

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................10

Blankenship v. Allstate Ins. Co., 186 Cal. App. 4th 87 (2010) ........................................25

Bruesewitz v. Wyeth LLC, 562 U.S. 223, 131 S. Ct. 1068 (2011)..........................................27

Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088 (9th Cir. 2003)...................................27

Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.,
   520 U.S. 564 (1997)...................................................................11, 12, 15, 20

Chavez v. Blue Sky Natural Beverage Co., 340 F. App'x 359 (9th Cir. 2009)..............................10

Chinatown Neighborhood Ass'n v. Harris, 33 F.Supp.3d 1085 (N.D. Cal. 2014)...............11, 32

City of Philadelphia v. New Jersey, 437 U.S. 617 (1978) ...............................................12

Conley v. Gibson, 355 U.S. 41 (1957)...................................................................10

Conservation Force, Inc. v. Manning, 301 F.3d 985 (9th Cir. 2002) ...............................12, 19

Cresenzi Bird Importers, Inc. v. State of N.Y., 658 F. Supp. 1441 (S.D.N.Y.).........................29

Dorrance v. McCarthy, 957 F.2d 761 (10th Cir. 1992) ...................................................11

Erickson v. Pardus, 551 U.S. 89 (2007).................................................................10

Ex parte Young, 209 U.S. 123 (1908) ...................................................................33

Exxon Corp. v. Governor of Md., 437 U.S. 117 (1978) ..................................................17

Fields v. Legacy Health System, 413 F.3d 943 (9th Cir. 2005) .........................................32

Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241 (1964)....................................12

Hughes v. Oklahoma, 441 U.S. 322 (1979)...............................................................12

iii

Kentucky v. Graham, 473 U.S. 159 (1985) ...........................................................................33

Lewis v. BT Inv. Managers, Inc., 447 U.S. 27 (1980).........................................................12

Maine v. Taylor, 477 U.S. 131 (1986)............................................................................12, 13

Moss v. U.S. Secret Serv., 572 F.3d 962 (9th Cir. 2009) ....................................................11

Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144 (9th Cir. 2012) ...........16, 17

Nordlinger v. Hahn, 505 U.S. 1 (1992)................................................................................30

Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas, 489 U.S. 493 (1989)...................14

Pac. Nw. Venison Producers v. Smitch, 20 F.3d 1008
      (9th Cir. 1994).................................................................11, 13, 14, 18, 21, 22, 29

Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda, 768 F.3d 1037
      (9th Cir. 2014)..............................................................................................15

Pike v. Bruce Church, Inc., 397 U.S. 137 (1970) ....................................................11, 13, 15, 20

Pinnacle Armor, Inc. v. U.S., 648 F.3d 708 (9th Cir. 2011)................................................10

ProtectMarriage.com v. Bowen, 599 F. Supp. 2d 1197 (E.D. Cal. 2009) .............................27

Rojas v. Superior Court, 33 Cal. 4th 407 (2004) ...............................................................26

Romer v. Evans, 517 U.S. 620 (1996) ..................................................................................30

Ross v. RagingWire Telecommunications, Inc., 42 Cal. 4th 920 (2008) .............................25

Scheuer v. Rhodes, 416 U.S. 232 (1974) ..............................................................................10

Smith v. Doe, 538 U.S. 84 (2003)..........................................................................................25

Teixeira v. Cnty. Of Alameda, 2013 WL 4804756 (N.D. Cal. 2013).....................................33

United States v. Lopez, 514 U.S. 549 (1995) ........................................................................16

Viva! Int'l Voice For Animals v. Adidas Promotional Retail Operations, Inc.,
      41 Cal. 4th 929, 937, 162 P.3d 569 (2007)..............................................................29

Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989)........................................................33

Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health,
      731 F.3d 843 (9th Cir. 2013) ...................................................................................14, 17

iv

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**STATUTES**

16 U.S.C. § 1538(b) ............................................................................28

16 U.S.C. § 3372 ...............................................................................16

16 U.S.C. §§ 1531-44 .........................................................................16

42 U.S.C. § 1983 ...............................................................................33

Ariz. Rev. Stat. Ann. § 13-2910(c) ........................................................9

Ariz. Rev. Stat. Ann. § 17-101 .............................................................5

Ariz. Rev. Stat. Ann. § 17-231 .............................................................5

CAL FISH & GAME CODE § 4809 ...........................................................26

CAL. FISH & GAME CODE  § 1801 ..........................................................23

CAL. FISH & GAME CODE § 2353 ...........................................................30

CAL. FISH & GAME CODE § 2780 .....................................................4, 23, 24

CAL. FISH & GAME CODE § 2781 ........................................................4, 24

CAL. FISH & GAME CODE § 2786 ...........................................................4

CAL. FISH & GAME CODE § 4700 ...........................................................30

CAL. FISH & GAME CODE § 4800 ...........................................................23

CAL. FISH & GAME CODE § 4800 .....................................................23, 28

CAL. FISH & GAME CODE § 4800(b)(1) ....................................................4

CAL. FISH & GAME CODE § 4800(b)(2) ....................................................4

CAL. FISH & GAME CODE §§ 4800-4809 ...................................................4

CAL. HEALTH & SAFETY CODE § 11362.5 ................................................25

CAL. PENAL CODE § 653o ....................................................................31

Colo. Rev. Stat. Ann. § 33-1-102 ..........................................................5

Colo. Rev. Stat. Ann. § 33-1-106 ..........................................................5

Idaho Code Ann. § 36-409 ..................................................................5

Mont. Code Ann. § 87-2-702 ...............................................................6

N.M. Stat. Ann. § 17-3-2 ....................................................................6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Or. Rev. Stat. Ann. § 496.004 ...................................................................................6

Or. Rev. Stat. Ann. § 496.162 ...................................................................................6

Wash. Rev. Code Ann. § 77.08.030 ...........................................................................6

Wash. Rev. Code Ann. § 77.32.450 ...........................................................................6

WILDLIFE PROTECTION. INITIATIVE STATUTE, § 8, 1990 Cal. Legis.
    Serv. Prop. 117 (West) ......................................................................................19

Wyo. Stat. Ann. § 23-1-101 ......................................................................................6

Wyo. Stat. Ann. § 23-1-703 ......................................................................................6

## TREATISES

David S. Broder, Democracy Derailed: Initiative Campaigns and the Power of Money (2000)27

## REGULATIONS

50 C.F.R. § 17.11(h) .................................................................................................5

Ariz. Admin. Code § R12-4-304(A)(8)(k).................................................................9

Idaho Admin. Code r. 13.01.08.250...........................................................................5

N.M. Admin. Code 19.31.11......................................................................................6

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. XIV...........................................................................................30

U.S. CONST. art. I, § 8, cl. 3 .....................................................................................12

1

## I.    INTRODUCTION

The California law at issue in this case imposes a complete ban on the importation (and subsequent transportation and possession) of mountain lions legally sport-hunted outside of California ("Import Ban").  Mountain lions (*puma concolor*) are not listed or considered as endangered under federal or any state law, including under California law.  In its First Amended Complaint ("FAC"), Safari Club International ("Safari Club") establishes that (1) the Import Ban substantially and adversely impacts interstate commerce by eliminating travel, lodging and food, supplies, guiding services (and reduces associated training of dogs), taxidermy work, transportation of mountain lions, taxes, permits, and other expenditures related to mountain lion hunting; and (2) the burden on interstate commerce outweighs State Defendants' purported purposes for the Import Ban, including its newly adopted "animal cruelty" rationale, which are illusory and tenuous, and include emotionally-based opinions about certain types of mountain lion hunting.  In response, State Defendants continue to confound and inter-mix the different commerce clause analyses.  When they do attempt to confront Safari Club's substantial showing of a burden on interstate commerce, State Defendants basically argue that impacts to hunters, the businesses and people who serve them, and the commerce that does not occur do not qualify as burdens on interstate commerce or even invoke the Commerce Clause.  Because this premise is wrong and contrary to numerous commerce clause cases, State Defendants' argument fails.

State Defendants also continue to assert that the Import Ban advances mountain lion conservation and protection of habitat in California, but fail to describe how banning the importation of mountain lions harvested in other states promotes these interests.  Because the Import Ban does not and cannot promote these interests, State Defendants adopted a new rationale in their reply on their first motion to dismiss Safari Club's original complaint – so-called cruelty to animals (mainly due to the use of dogs to hunt mountain lions).  This rationale is

reflected nowhere in the statute that creates the Import Ban, although the statute contains extensive "legislative" findings and statements of purpose.  Instead, to find some justification for this argument, State Defendants point to a statement by the proponents of the ballot initiative that contained the Import Ban, claiming that statement qualifies as definitive "legislative history."  It is not.  Finally, as alleged in Safari Club's FAC, the state itself uses dogs to track mountain lions for the purpose of capturing or killing them; the state authorizes the use of dogs to hunt other species in California; and in California and other states, hunting methods cannot be animal cruelty by statute.  These and other facts further demonstrate that the rationale that mountain lion hunting in other states is animal cruelty is illusory and insufficient to justify a direct and substantial burden on interstate commerce.

Safari Club here and in its FAC focuses on four factual showings that establish plausible claims for relief:

- A large number of Safari Club members and other hunters in California have strong desires to hunt mountain lions in other states, would travel to those states to hunt mountain lions but for the Import Ban, and would import harvested mountain lions into California if they could.

- Opportunities to hunt mountain lions in other states and countries exist because those states routinely do not satisfy their quotas for mountain lions and California hunters could and would take advantage of those opportunities.

- California residents booking mountain lion hunts and travelling to other states to hunt mountain lion would generate a substantial amount of commerce – travel, lodging and food, substantial fees for guiding and other services, equipment and supplies purchases, taxidermy, shipping, secondary commerce by the businesses that service these hunters and would have to accommodate the additional hunters (such as

breeding and training of dogs, hiring additional employees, etc.), and because of the Import Ban, this substantial amount of commerce is lost and not replaced.

- State Defendants' purported purposes behind the Import Ban are not served by the Import Ban (*e.g.,* protection of animals and habitat, safety and welfare of California residents, alleged prevention of animal cruelty), are not among the numerous statutorily delineated purposes of Proposition 117 and the Import Ban (alleged prevention of animal cruelty), are generally illusory and tenuous (all alleged purposes), and are contrary to California and other states' laws that exclude hunting from cruelty statutes (alleged prevention of animal cruelty).

The Import Ban is an absolute barrier to the movement of an article of interstate commerce, is causing substantial (24-year long and counting) impacts on interstate commerce, and discriminates against mountain lion hunters (as compared to hunters of other non-imperiled wildlife). Nonetheless, State Defendants claim that Safari Club has not stated plausible claims for relief and should be denied the opportunity to discover, generate, and present evidence in support of their claims. In the vast majority of the relevant Commerce Clause cases cited by State Defendants and discussed in this Opposition, the plaintiffs had the opportunity to develop and present factual evidence. Because, as explained below and set out in Safari Club's FAC, Safari Club has alleged sufficient facts to state (more than) plausible claims for relief, the Court should deny the motion to dismiss. The Import Ban has deprived the interstate market related to mountain lion hunting of participants who would improve that market and benefit wildlife management. Without review by this Court, these impacts will continue indefinitely, multiplying the adverse impacts. For all the foregoing reasons, Safari Club should have the opportunity to further develop its case.

## II.     THE IMPORT BAN

In 1990, California voters enacted Proposition 117, the California Wildlife Protection Act of 1990.  Although it included provisions related to mountain lions, *see* CAL. FISH & GAME CODE §§ 4800-4809, Proposition 117 primarily related to the establishment, funding, and use of the "Habitat Conservation Fund" ("Fund").  The purpose of the Fund was to acquire various types of habitat for the benefit of California's wildlife.  *Id.* § 2786.  Proposition 117's findings and declarations almost exclusively related to concerns over adverse impacts to wildlife habitats and the need to protect, enhance, and restore the wildlife habitats (including specifically for mountain lions) and fisheries.  *Id.* § 2780.  Proposition 117 also declared that "wildlife and fisheries conservation is in the public interest," *id.* § 2781, but the findings did not mention the need to ban the hunting of mountains lions within California, much less any purpose behind banning the importation, transportation, and possession of mountain lions hunted ***outside*** of California.[1]

The only part of Proposition 117 that does not concern habitat conservation is Chapter 10, which deals with the mountain lion and contains the Import Ban.  Section 4800 makes it "unlawful to take, injure, possess, transport, import, or sell any mountain lion or any part or product thereof," subject to limited exceptions (none of which apply to the importation, transportation, and possession of mountain lions hunted outside of California).  *Id.* § 4800(b)(1).  Section 4800 contains no findings or declarations of purpose.[2]

## III.     STATEMENT OF FACTS

Regardless of the actions of California voters in 1990, mountain lion as a species in the

---

[1] In this lawsuit, Safari Club does not challenge Section 4800's ban on the taking, injuring, possessing, transporting, or selling of mountain lions hunted within the State of California, or the import ban as it might apply to live mountain lions.

[2] Section 4800 does not prohibit the possession or sale of mountain lions or mountain lion parts if the owner can demonstrate that the mountain lion or part was in his or her possession on June 6, 1990.  CAL. FISH & GAME CODE § 4800(b)(2).

wild does not need special protection.  As explained on the California Department of Fish and

Wildlife ("Department") website:

> Mountain lions are not threatened nor endangered in California. In fact, the lion population is relatively high in California and their numbers appear to be stable. Mountain lions are legally classified as "specially protected species". This has nothing to do with their relative abundance and does not imply that they are rare. … Any statewide estimate of the mountain lion population is just a "guesstimate." Mountain lion studies over the last 30 years have estimated population densities for different habitat types around the state. These density estimates varied from zero to 10 lions per 100 square miles, and were simply expanded to the total amount of each habitat type available. This method provides a crude estimate of between 4,000 and 6,000 mountain lions statewide.

FAC ¶ 35.[3]  Mountain lions found throughout the midwestern and western United States, *puma concolor*, are not an endangered or threatened species under the federal Endangered Species Act ("ESA"), and U.S. law allows the importation into the United States of mountain lions legally hunted in some foreign countries.[4]  Safari Club is not aware that any mountain lion found in the United States (other than the Florida panther subspecies) is classified as a protected species (or comparable status) under any other state law.  In many states, mountain lion is a game animal and is managed in balance with the prey populations through regulated and sustainable hunting.[5]

---

[3] http://www.dfg.ca.gov/wildlife/lion/lion_faq.html, Exhibit B to Second Request for Judicial Notice (Dkt. 48).  All websites cited in this brief were visited in August 2015, before Safari Club filed its Request for Judicial Notice.

[4] *See* 50 C.F.R. § 17.11(h) (listing domestically only the Florida panther and eastern cougar, the latter of which is extinct).  The only international population of "pumas" listed under the ESA is in Panama, Nicaragua, and Costa Rica.  *Id.*

[5] Arizona:  Ariz. Rev. Stat. Ann. § 17-101 (definition of "[b]ig game [includes]… mountain lion."); Ariz. Rev. Stat. Ann. § 17-231 (Fish and Game Commission shall "[e]stablish hunting, trapping and fishing rules, ….").  Colorado:  Colo. Rev. Stat. Ann. § 33-1-102 ("'Big game' means … mountain lion, ….."); Colo. Rev. Stat. Ann. § 33-1-106 (Wildlife Commission has the authority to "[d]etermine under what circumstances, when, in which localities, by what means, what sex of, and in what amounts and numbers the wildlife of this state may be taken, …."").  Idaho:  Idaho Code Ann. § 36-409 ("The appropriate tag must be had for the hunting or taking of each and every one of the aforementioned wildlife. … [T]he requirements for a wolf tag, a mountain lion tag or a bear tag, as to different periods of time and areas of the state, shall be determined and specified by the commission.")  Idaho Admin. Code r. 13.01.08.250 ("General season tags issued for black bear and mountain lion may be used statewide.").  Montana:  Mont.

Foreign countries also allow mountain lion hunting.  FAC, ¶ 40 (Canada, Mexico, and Argentina).  Mountain lions legally hunted outside of California can be imported into, and transported and possessed within, every state and territory in the United States except California.

Since the effective date of the California Wildlife Protection Act of 1990, Safari Club members and others have been barred from importing legally harvested mountain lions into California and transporting and possessing within California any such mountain lion.  Safari Club's FAC alleges that this ban harms Safari Club members and other hunters in California with similar interests, and adversely affects interstate commerce, in a number of ways.  The negative effects of the ban span many businesses, jobs, and industries, private, public and governmental. The elimination of commerce associated with Safari Club members and a far larger number of others in the general hunting community in California not undertaking mountain lion hunts outside of California creates a substantial burden on interstate commerce.

Some Safari Club members have already successfully hunted mountain lions outside of California, wish to import their sport-hunted mountain lions into California, and wish to transport and possess them within California.  FAC ¶¶ 2, 18, 41 (providing numbers of members).  Other Safari Club members have definite plans to hunt mountain lions outside of California in the near future, wish to import any mountain lion they successfully harvest into California, and to

---

Code Ann. § 87-2-702 ("Licenses for mountain lion hunts must be available for purchase at department offices after August 31 of any license year.").  New Mexico:  N.M. Stat. Ann. § 17-3-2 (holding license for "'cougar' entitles the licensee to hunt cougar during the open season; …." ); N.M. Admin. Code 19.31.11 (setting forth regulations for cougar and bear hunting).  Oregon: Or. Rev. Stat. Ann. § 496.162 ("the State Fish and Wildlife Commission, at appropriate times each year, shall by rule: (a) Prescribe the times, places and manner in which wildlife may be taken by … hunting, … and the amounts of each of those wildlife species that may be taken and possessed."); Or. Rev. Stat. Ann. § 496.004 ("'Game mammal' means … cougar …."). Washington:  Wash. Rev. Code Ann. § 77.08.030 ("big game" includes "cougar or mountain lion."); Wash. Rev. Code Ann. § 77.32.450 ("A big game hunting license is required to hunt for big game.").  Wyoming:  Wyo. Stat. Ann. § 23-1-101 ("'Trophy game animal' means … mountain lion;"); Wyo. Stat. Ann. § 23-1-703 ("The commission may limit the number of resident or nonresident big or trophy game animal licenses to be sold in any calendar year ….").

transport and possess any harvested animal within California. *Id.* ¶¶ 2, 18, 41 (providing numbers of members). Numerous other Safari Club members desire to hunt mountain lions outside of California and (if they are successful) import any harvested animal into California, and transport and possess that animal within California, but do not because of the Import Ban. *Id.* ¶¶ 2, 18, 41 (providing numbers of members). The FAC alleges that up to 8,000 additional California hunters share similar interests and intentions related to mountain lion hunting. *Id.* ¶ 44.[6] Finally, others, including Safari Club members, are outfitters and guides who would benefit from selling mountain lion hunts outside of California to California residents who would purchase such hunts if the Import Ban were not in place. *Id.* ¶¶ 2, 18, 41 (providing numbers of members).[7]

These California hunters would have ample opportunities to undertake these trips. Other states in which California hunters could hunt mountain lions routinely do not fill their quotas for mountain lion harvests. *Id.* ¶¶ 37-38 (describing unfilled quotas from Colorado, Nevada, South Dakota, and Idaho; and alleging unfilled quotas in other states).[8] Thus, these California hunters would not simply be competing with hunters from other states for a limited number of hunting tags. These California hunters would fulfill new hunting opportunities and would create new commerce associated with mountain lion hunting.

By discouraging these hunters from undertaking these trips, the Import Ban places a

---

[6] Documents on websites of California and federal agencies contain information described in paragraph 44 of the FAC and provide the basis for the factual allegations. These documents are Exhibits H and I to Second Request for Judicial Notice (Dkt. 48). Exhibit H is updated as of June 30, 2015, as compared to February 28, 2015 as noted in the FAC.

[7] At its annual conventions, Safari Club conducts auctions for hunting opportunities, including for mountain lion hunts outside of California. Since 1999, Safari Club has offered a total of 92 convention auction items for mountain lion only hunts or combined hunts in which one of the species was mountain lion. The donor valuation for these hunts was a total of $873,375.00. FAC ¶ 51. The Import Ban discourages California members from bidding on these auction items, lessening their value and the income that flows to Safari Club and the outfitter/guide. *See id.*

[8] Documents from the websites of state agencies that establish the facts concerning these unfilled quotas are Exhibits C-G to Second Request for Judicial Notice (Dkt. 48).

substantial burden on interstate commerce by eliminating numerous sources of commerce.  The cost of these numerous mountain lion hunts, between $4,000-20,000 each, depending on various factors, is lost.  *Id.* ¶¶ 4, 48.  Hunters who forego trips do not buy the gas, airline tickets, and other expenses associated with travelling to other states.  *Id.* ¶ 47 (approximating various costs).  These California hunters also do not spend money on lodging and food, supplies, ammunition, special equipment, supplies, fees and licenses, taxes, and other items.  *Id.*  The Import Ban prevents the movement of harvested mountain lions into California and eliminates the commerce associated with taxidermy, shipping, transportation, and related activities.  *Id.* ¶ 50.  These substantial impacts on interstate commerce have been ongoing for the 24 years the Import Ban has been in effect.  *Id.* ¶¶ 22, 36.

The State has no legitimate interest in banning importation and discouraging the hunting of mountain lions outside of California by California residents.  The Import Ban does not in any way enhance or support habitat or species conservation in California.  *Id.* ¶¶ 24-25, 64.  In addition, a properly taxidermied and handled mountain lion poses no threat to the safety, health, or welfare of the people or resources of California.  FAC, ¶¶ 10, 65.  Numerous other harvested animals enter California, including from other countries, and are transported and possessed throughout the state without harm or risk to the safety, health, or welfare of the people or resources of California.  *Id.* ¶ 10.

Finally, numerous facts undermine the idea that the Import Ban prevents a practice that allegedly constitutes cruelty to animals or that prevention of cruelty was a purpose behind the Import Ban.  As mentioned above, the statutory findings and declarations of purpose do not mention animal cruelty at all.  Under state law, permissible hunting methods, including the use of dogs to track certain kinds of animals, are not subject to California's "cruelty to animals" law.  *Id.* ¶¶ 9, 55.  The Department has long used, or allowed others to use, dogs to track mountain lions

for the purpose of killing or capturing them, the State continues this practice to this day, and the State does not consider the use of dogs to hunt or track mountain lions to be animal cruelty. *Id.* ¶¶ 58-60.[9]   The State allows the use of dogs to hunt other animals, including feral pigs. *Id.* ¶ 55.[10] Other states do not consider mountain lion hunting to be cruelty to animals (like California, they specifically exclude hunting from the animal cruelty laws) and most states allow the use of dogs to hunt mountain lions. *Id.* ¶ 56.[11]   On information and belief, State Defendant Bonham does not consider mountain lion hunting, as it occurs in other states, to be animal cruelty, and the Department did not consider it so at the time the Import Ban was enacted. *Id.* ¶ 57.

If State Defendants believe any of these alleged facts are inaccurate, they can conduct discovery and dispute them in summary judgment or trial.  The Court likewise should allow Safari Club to fully explore these factual and legal issues – including the widespread and substantial effect on interstate commerce and the alleged purposes behind the Import Ban – in discovery and summary judgment or trial.  But for now, as discussed below, the Court must accept all well-pled facts and inferences drawn from them as true.[12]

---

[9] Newspaper articles helping to establish the allegation that the Department uses dogs to track mountain lions are Exhibits K-M to Second Request for Judicial Notice (Dkt. 48).

[10] California's Guide to Hunting Wild Pigs, page 21, provides proof that this use of dogs is an allowed hunting practice in California.  *See* Exhibit J to Second Request for Judicial Notice (Dkt. 48).

[11] For example, Arizona specifically exempts from the prohibition against cruelty to animals "the taking of wildlife or other activities permitted by [game and fish laws]" and "activities regulated by the Arizona game and fish department...." Ariz. Rev. Stat. Ann. § 13-2910(c). Arizona regulation specifically permits "pursuit with dogs" for the hunting of mountain lions.  Ariz. Admin. Code § R12-4-304(A)(8)(k).

[12] A brief summary of the procedural history follows.  On August 6, 2014, Safari Club filed its Complaint for Declaratory and Injunctive Relief (Dkt. 2).  On October 6, 2014, State Defendants filed a Motion to Dismiss Plaintiff's Complaint (Dkt. 15, "MTD") and a Request for Judicial Notice.  After briefing, the Court granted the motion to dismiss but allowed Safari Club to file an amended complaint (Dkt. 37).  Safari Club filed its FAC on May 13, 2015 (Dkt. 38).  On June 17, 2015, State Defendants filed their second motion to dismiss (Dkt. 42, "Second MTD").  Amicus Curiae the Humane Society of the United States ("HSUS") filed an amicus brief on June 24, 2015

IV.    **ARGUMENT**

A.    **Standards for Pleading and for Resolving a Motion to Dismiss**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "Specific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  As long as the allegations of the complaint are sufficient to raise the right to relief "above the speculative level," plaintiffs can defeat a motion for failure to state a claim, even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555-56 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A court reviewing a Rule 12(b)(6) motion must accept the material allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *rev'd on other grounds* 131 S.Ct. 2074 (2011).

State Defendants' second motion to dismiss suggests that Safari Club's FAC must provide enough detailed information to definitively prove that Safari Club is entitled to relief.  However, a "motion to dismiss is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 360 (9th Cir. 2009) (internal citation omitted).  Safari Club "is not required to 'demonstrate' anything in order to survive a Rule 12(b)(6) motion to dismiss.  Rather, it only needs to *allege* 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 721 (9th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis original).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

(Dkt. 43).  Safari Club International filed a Second Request for Judicial Notice on August 24, 2015 (Dkt. 48).

content, must be **plausibly suggestive** of a claim entitling the plaintiff to relief." *Moss v. U.S.*

*Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009), *citing Ashcroft,* 556 U.S. at 678 (emphasis

added).  Safari Club's FAC exceeds these standards.

### B.   With the Additional Facts in the FAC, Safari Club Has Alleged More Than a Plausible Commerce Clause Claim

Safari Club has alleged, and could further prove through development and presentation of

evidence, a substantial burden on interstate commerce that outweighs the illusory and tenuous

local interests purportedly served by the Import Ban.  State Defendants ask this Court to do what

few courts have done in Commerce Clause cases – dismiss the case before any discovery and

presentation of facts have occurred, whether through summary judgment, a request for

preliminary injunction, trial, or other proceedings.  In most cases, courts have given the plaintiffs

an opportunity to obtain and present the facts upon which they base their claims.[13]  Granting the

second motion to dismiss would deprive Safari Club of the ability to conduct discovery and

present the facts in support of its claims.  This Court should not grant the motion to dismiss

because Safari Club has alleged facts that establish what is required at this point – a "plausible"

---

[13] Most courts have allowed plaintiffs to discover and demonstrate the evidence in support of their Commerce Clause claims. *See, e.g., Pike v. Bruce Church, Inc.,* 397 U.S. 137, 140 (1970) ("After discovery proceedings, an agreed statement of facts was filed with the [District] court."); *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.,* 520 U.S. 564, 569-70 (1997) (striking state law in case in which parties "agreed on the relevant facts, [and] filed cross-motions for summary judgment"); *Pac. Nw. Venison Producers v. Smitch,* 20 F.3d 1008, 1014-15 (9th Cir. 1994) ("To defeat the Department's motion for summary judgment, [plaintiff] was required to show that it could offer evidence at trial legally sufficient to support a determination that the impacts of the regulations on interstate and foreign commerce are so great that they outweigh this vital state interest."); *Dorrance v. McCarthy,* 957 F.2d 761, 764 (10th Cir. 1992) ("Plaintiff presented affidavits from several experts concerning" an aspect of *Pike* test – whether "interests could be advanced through less burdensome means than a complete ban on private ownership of big game animals.").  In one case relied on heavily by State Defendants, the district court had the benefit of the presentation of facts in the preliminary injunction proceedings before later dismissing the complaint for failure to state a claim. *See Chinatown Neighborhood Ass'n v. Harris*, 33 F.Supp.3d 1085, 1092 (N.D. Cal. 2014), *affirmed on appeal,* 794 F.3d 1136 (9th Cir. 2015).

claim under the Commerce Clause.

**1.**   **State Defendants Fail to Address Invalidation of a State Law Under the *Pike* Commerce Clause Analysis**

The Commerce Clause of the U.S. Constitution provides, in part, the authority "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; …." U.S. CONST. art. I, § 8, cl. 3. "Although the Clause thus speaks in terms of powers bestowed upon Congress, the Court long has recognized that it also limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35 (1980). This principle is sometimes referred to as the "dormant Commerce Clause."

The parameters of the Commerce Clause are broad. "All objects of interstate trade merit Commerce Clause protection; none is excluded by definition at the outset; …." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622 (1978). Hunters travelling between states affect interstate commerce, and wildlife, once reduced to possession by the hunter (or trapper or angler), becomes an article of interstate commerce. *See Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993-95 (9th Cir. 2002); *Hughes v. Oklahoma*, 441 U.S. 322, 339 (1979). State actions that discourage the movement of persons who generate commerce are subject to invalidation under the Commerce Clause. *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine,* 520 U.S. 564, 573-74 (1997) (attendance by out-of-state campers "necessarily generates the transportation of persons across state lines that has long been recognized as a form of commerce"; striking state tax law that discouraged interstate travel to certain camps), *citing Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241 (1964).

Despite these broad parameters, State Defendants argue that "[a]s long as a State does not ***needlessly*** obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources." Second MTD at 8, *quoting Maine v. Taylor*, 477 U.S. 131, 151 (1986)

(emphasis added) (citations and quotations omitted).  This argument supports Safari Club's

challenge to the Import Ban because California is "***needlessly*** obstruct[ing]" interstate commerce

associated with the legal hunting of a non-endangered animal.  The obstruction is needless

because, as discussed below, State Defendants have not explained how a ban on the importation,

possession and transfer of mountain lions hunted in other states or countries protects the "health

and safety" of the citizens of California or the integrity of the State's natural resources.

       Recognizing the weakness of their position, State Defendants, for the first time in their

reply in support of their first motion to dismiss, introduced their newly adopted animal cruelty

justification for the Import Ban.  State Defendants cannot rely on this argument as support for the

Import Ban because prevention of animal cruelty is not reflected in the statutory purposes; is an

emotion-based opinion about mountain lion hunting; and is contrary to the State's laws, policies,

and practices.

       The courts have established various tests to analyze Commerce Clause violations.  "If the

regulations discriminate in favor of in-state interests, the state has the burden of establishing that

a legitimate state interest unrelated to economic protectionism is served by the regulations that

could not be served as well by less discriminatory alternatives."  *Pac. Nw. Venison Producers v.*

*Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994), *citing Maine v. Taylor,* 477 U.S. 131, 138 (1986). On

the other hand,

> Where the statute regulates even-handedly to effectuate a ***legitimate*** local public
> interest, and its effects on interstate commerce are only incidental, it will be upheld
> unless the burden imposed on such commerce is clearly excessive in relation to the
> putative local benefits. ….  If a legitimate local purpose is found, then the question
> becomes one of degree.  And the extent of the burden that will be tolerated will of
> course depend on the nature of the local interest involved, and on whether it could
> be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (emphasis added; citations omitted).  In

applying *Pike*, the Supreme Court has analyzed whether the defendant "could have achieved its

aims without burdening interstate commerce." *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 526 (1989), *citing Pike*, 397 U.S. at 142; *see also Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 731 F.3d 843, 846 (9th Cir. 2013) (quoting *Pike* test as including "whether [the state's interest] could be promoted as well with a lesser impact on interstate activities").[14]  "[C]ertain types of impacts on interstate commerce are of special importance in the balance with the state's putative interest.  These impacts include … impacts on commerce beyond the borders of the defendant state, ... and impacts that fall more heavily on out-of-state interests …." *Pac. Nw.*, 20 F.3d at 1015.  Most of the impacts of the Import Ban fall on out-of-state commerce and interests, such as outfitters/guides operating in other states, local hotels and restaurants, and other local businesses that support hunting.[15]

State Defendants claim that "[t]he purpose of the dormant Commerce Clause is to 'prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent.'" Second MTD at 8, quoting *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994).  This characterization misstates the *C & A Carbone* case as it omits what precedes the language that State Defendants quoted.  After discussing "the two lines of analysis," one involving discrimination against interstate commerce and one involving the balancing of impacts versus local interest under *Pike*, the Supreme Court stated "[t]he central rationale for ***the rule against discrimination*** is to prohibit state or municipal laws …." *C & A Carbone,* 511 U.S. at

---

[14] State Defendants wrongly suggest that a consideration of alternatives with a lesser impact on interstate commerce is "legally irrelevant" under *Pike*.  *See* Second MTD at 14.

[15] Although Safari Club is relying on the *Pike* analysis, two factors push Safari Club's claim closer to the discrimination analysis, and should at least factor into the *Pike* analysis.  First, the Import Ban's "effects on interstate commerce" are not "only incidental," they are the direct result and intent of the law.  Second, in one sense, the Import Ban does ***not*** regulate "even-handedly" because it treats mountain lions differently than other similar (non-endangered) animals that can be legally hunted outside of California and imported into, and transported and possessed within California.  CAL. FISH & GAME CODE § 2353.

390 (emphasis added).  The language that State Defendants quoted does not represent the purpose behind Commerce Clause cases like the present case, *Pike,* and similar cases.  As is clear from *Pike,* another purpose is to prevent burdens on interstate commerce that serve no legitimate state or local purpose, regardless of any other purposes of the statute.  *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 145 (1970) ("tenuous" state interest cannot justify unnecessary impact on interstate commerce).

For all these reasons, the *Pike* test applies to Safari Club's claim, contrary to State Defendants' arguments about in-state and out-of-state impacts.  Second MTD at 8-9.  The *Pike* test looks at (1) the legitimacy and nature of the local interest, including whether "it could be promoted as well with a lesser impact on interstate activities"; and (2) whether the "burden on [interstate] commerce is clearly excessive in relation to the putative local benefits."  Application of this test, under the facts Safari Club has alleged, reasonable inferences, and other judicially noticeable facts, establishes that Safari Club has asserted more than a "plausible" claim for relief because California's enforcement of the Import Ban substantially burdens interstate commerce while advancing no legitimate local purpose.

Although *Pike* did not discuss it explicitly, subsequent cases in this Circuit require the plaintiff to first demonstrate that the challenged action has a "substantial burden" on interstate commerce.  *Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*, 768 F.3d 1037, 1044-45 (9th Cir. 2014) (The substantial burden analysis "turn[s] on the interstate *flow of goods.*") (citation omitted; emphasis in original).  The Ninth Circuit has explained the basis for this requirement: "To determine whether the dormant Commerce Clause is applicable, we ask … whether [the activity regulated] has a 'substantial effect' on interstate commerce ***such that Congress could regulate the activity***."  *Conservation Force, Inc. v. Manning,* 301 F.3d 985, 993 (9th Cir. 2002) *citing Camps,* 520 U.S. at 574. (emphasis added).  State Defendants are essentially arguing that

Congress lacks the authority to regulate the interstate movement of harvested wildlife, or here specifically the transportation of mountain lions across state lines.

The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power. ... [1] the use of the channels of interstate commerce. ;... [2] the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. ... [3] those activities having a substantial relation to interstate commerce, ...." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). The Court characterized "the power to regulate commerce" as "broad" but not unlimited. *Id.* at 557. The Supreme Court discussed cases that upheld the exercise of Congress' Commerce Clause powers based on "restaurants utilizing substantial interstate supplies," "inns and hotels catering to interstate guests," and "production and consumption of homegrown wheat." *Id.* at 559-60. Under this broad Commerce Clause power, Congress would have the authority to regulate the movement of harvested animals across state lines. For example, the Lacey Act makes it unlawful, among other things, to "transport in interstate or foreign commerce -- (A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law." 16 U.S.C. § 3372.[16]

State Defendants also assert that the "[b]urdens on commerce that result from regulations pursuant to the State's police power to protect the public health and safety are generally not regarded as significant even if they involve some loss of trade." Second MTD at 10, *citing Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). Safari Club has asserted and will prove far more than "some loss of trade" and will prove that the State's purported public health and safety interests are illusory and tenuous. In addition, the Ninth

---

[16] Congress also has asserted Commerce Clause jurisdiction over wildlife, including individual animals, within the states under the Endangered Species Act. *See* 16 U.S.C. §§ 1531-44 (Endangered Species Act).

Circuit has applied the *Pike* analysis even after finding no substantial burden on interstate commerce where the plaintiff "claims that the [alleged purposes served by the challenged action] are not just minimal, but illusory or nonexistent, …." *Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 731 F.3d 843, 848-49 (9th Cir. 2013).

Finally, State Defendants wrongly assert that Safari Club's factual allegations concerning the burdens on interstate commerce do not address a "*substantial burden on interstate commerce within the meaning of the dormant Commerce Clause*" because those burdens only fall on "'particular interstate firms'," not the interstate market itself.  Second MTD at 11-12 (emphasis in original), second quotation from *Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 127-28 (1978). *Exxon* involved a different situation, in which the state law would discourage some refiners from owning gas stations in the state, but those lost stations would be replaced by other refiners or suppliers who were not affected by the law; therefore, the interstate market did not suffer.  437 U.S. at 127-28.  As the Court explained:

> Some refiners may choose to withdraw entirely from the Maryland market, but there is **no reason to assume that their share of the entire supply will not be promptly replaced by other interstate refiners.** The source of the consumers' supply may switch from company-operated stations to independent dealers, but interstate commerce is not subjected to an impermissible burden simply because **an otherwise valid regulation causes some business to shift from one interstate supplier to another.**

*Id.* at 127 (emphasis added).[17]  In contrast, Safari Club has alleged that the Import Ban **eliminates completely** the interstate and foreign commerce associated with Californians travelling to other states and countries to hunt mountain lions.  The interstate commerce is not shifted from one business to another business; instead, the travel never occurs, the hunters never spend $4,000-

---

[17] State Defendants also cite *Nat'l Optometrists,* 682 F.3d at 1152 & n.11.  This case adds nothing.  It involves the same situation as *Exxon,* but the plaintiff alleged that the shift of commerce (optometry business) would be from out-of-state optometrists to in-state optometrists, as opposed to between two out-of-state businesses as in *Exxon*.  The Ninth Circuit rejected this distinction and applied the holding from *Exxon.  Id.*

20,000 to hire a guide, the hunters never book the hotels or buy the meals, the taxidermy work is never performed, the hunter never buys the ammunition and supplies, and other purchases and expenditures are never made.

Finally, these impacts "fall more heavily on" and burden interstate commerce more than commerce in California.  *See Pac. Nw.,* 20 F.3d at 1015 ("A review of recent Supreme Court cases reveals that certain types of impacts on interstate commerce are of special importance in the balance with the state's putative interest. These impacts include … impacts on commerce beyond the borders of the defendant state, … and impacts that fall more heavily on out-of-state interests, ….").  The Import Ban itself, which is the only part of the law that Safari Club challenges, discourages interstate travel and the spending of money by hunters in states other than California. See discussion in Section 1.  While Section 4800 as a whole does not directly discriminate against interstate commerce *in favor of in state commerce*, it does have impacts outside of California and falls more heavily on commerce outside of California.

Below, Safari Club explains in detail that its FAC has established more than a "plausible" Commerce Clause claim, including allegations of (1) a substantial impact on interstate commerce, which is excessive in relation to the putative local benefits; and (2) purported local interests that are illusory and are not attributable to the Import Ban, that the Import Ban does not advance, and that could be promoted through means with a lesser impact on interstate commerce.

       2.      **Safari Club Has Alleged a Substantial Impact on Interstate Commerce**

The Import Ban flatly prohibits the importation of an article of commerce.  The impact of that prohibition is, and has been for over 24 years, to discourage and eliminate significant amounts of interstate commerce.  Lost to interstate commerce is the travel of California residents to other states and countries, fees paid to guides and outfitters ($4,000-20,000 per trip), monies spent in the hunting of mountain lions by California residents (including for the purchase of

ammunition and equipment, travel, lodging and food, clothing), the transport of the harvested mountain lions into California, taxidermy work that might be done in in other states or California, taxes, permits, and other expenditures.  FAC ¶¶ 4-5, 45-50, 51-52, and 73-74.  The reduced hunting also affects associated commerce related to dog training, dog breeding, and the sale of training materials for dogs.  *Id.* ¶¶ 39, 56 (describing use of dogs, which must be breed and trained to pursue game).   Numerous Safari Club members, and on information and belief, an even larger number members of the general hunting community in California, have been either foregoing taking trips to other states and countries to hunt mountain lion, or not importing into California already harvested animals.  *Id.* ¶¶ 2-3, 18, 41-45, 72.  As the states that authorize mountain lion hunting do not fill their mountain lion harvest quotas, these trips and expenditures would be in addition to the commerce already generated by mountain lion hunts.  *Id.,* ¶¶ 37-40.

Safari Club's FAC describes impacts that have already been occurring for over 24 years and, barring an unlikely amendment or repeal, will continue indefinitely.[18]  Thus, Safari Club has done far more than simply claim that the adverse impacts created by the Import Ban are excessive in comparison to the alleged purposes of the law.  *See* Second MTD at 9.  Instead, Safari Club has alleged what has been accepted in other cases to invoke a Commerce Clause analysis.  The impacts on interstate commerce include the adverse impact on interstate travel and lost spending created by the Import Ban.  *See Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 (9th Cir. 2002) ("hunting in Arizona promotes interstate travel of people, like the plaintiffs, who want to take advantage of Arizona's excellent hunting opportunities.").  The Supreme Court has explained:

Even though petitioner's camp does not make a profit, it is unquestionably

---

[18] Section 4800 may be "amended only by a statute approved by a vote of four-fifths of the members of both houses of the Legislature."  WILDLIFE PROTECTION. INITIATIVE STATUTE, § 8, 1990 Cal. Legis. Serv. Prop. 117 (West).

> engaged in commerce, not only as a purchaser, …, but also as a provider of goods and services.  It markets those services, … to campers who are attracted to its facility from all parts of the Nation. … The attendance of these campers necessarily generates the transportation of persons across state lines that has long been recognized as a form of "commerce".

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 573 (1997) (citations omitted).  The hunters who travel interstate are part of the relevant interstate market, which includes the services they use and products they buy associated with traveling and hunting out of state, the articles (*i.e.,* mountain lions) that they wish to transport into and within California, and the services and commerce associated with those articles (*e.g.,* taxidermy work).

State Defendants argue that the substantial burden on interstate commerce can be demonstrated only by inconsistent regulations and the need for a uniform system of regulation.  Second MTD at 10 ("Such 'significant burden[s]' *generally* involve 'inconsistent regulation of activities that are inherently national or require a uniform system of regulation'" (emphasis added)).  But this requirement also can be demonstrated by establishing a significant adverse impact on interstate commerce itself.  In *Pike*, the impact of eliminating the fruit packing company's inability to comply with the law was qualified as requiring the company to construct a $200,000 processing plant (in 1970 dollars).  *Pike,* 397 U.S. at 140.  Today, adjusting for inflation, that impact would be about $1,200,000.  FAC ¶ 29.[19]  In a recent case, the plaintiff alleged an impact on interstate commerce of $5,000,000 to establish their claim under the *Pike* analysis.  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 952 (9th Cir. 2013).  The court rejected the plaintiff's argument that this was a significant impact on commerce, not because of the size of impact, but only because it found that the plaintiff had misread the statute and overestimated the impact on the interstate industry.  *Id.*  Thus, Safari Club

---

[19].  Using the U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Indicator, Inflation Calculator, http://www.bls.gov/data/inflation_calculator.htm, $200,000 in 1970 is comparable to $1,230,092.78 in 2015.  Exhibit A to Second Request for Judicial Notice (Dkt. 48).

can demonstrate a substantial impact on interstate commerce through facts showing the adverse financial and economic impact of the Import Ban.

The FAC alleges that the negative impact of the Import Ban on interstate commerce exceeds $15,000,000.  FAC ¶ 75.  Through discovery, expert testimony, and further fact development, the facts alleged in the FAC can be quantified and qualified to meet this burden (*e.g.,* to the level in *Pike* and beyond).  In addition, as noted above, these impacts have occurred for over 24 years and, absent court action, will continue indefinitely.  State Defendants ask the Court to accept a far too restricted reading of the standard for a substantial impact on interstate commerce.  Safari Club has met its burden to allege sufficient facts establishing this impact.

In an attempt to defeat Safari Club's factual and legal arguments, State Defendants rely heavily on *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994).  Second MTD at 10-12.  That case is both distinguishable from the present case in many significant regards and, in other ways, helps demonstrate that the Court should allow discovery and fact development before applying the *Pike* analysis and should not dismiss Safari Club's Commerce Clause claim.  The *Pacific Nw* case involved an import and possession ban, enacted by the State of Washington, regarding certain live wild animals.  That court explained that under *Pike*, "what is required is evidence that these effects [on commerce] are of a type or an extent that could support a determination that they are 'clearly excessive' in relation to the state's interest in the health of its native wildlife," and an analysis of whether "less burdensome alternatives would protect the state's wildlife as well as the regulations do."  *Pacific Nw.*, 20 F.3d at 1015, 1016.

Safari Club seeks an opportunity to present such "evidence."  The facts Safari Club has alleged and will develop if this Court denies State Defendants' motion to dismiss, demonstrate the distinction between the current case and *Pacific Nw.*  In *Pacific Nw*, the plaintiff was able to present facts in summary judgment proceedings (presumably following discovery).  *Id.* at 1011

("[o]n summary judgment…."), 1015 (analyzing the "summary judgment record").  The state

presented numerous reasons why it needed to ban the importation of *live* wildlife from other

states.  *Id.* at 1013 ("The state's putative interests to be served by these regulations are to protect

its native wildlife from diseases and parasites, to maintain the genetic purity of its wildlife, to

protect its wildlife from competition for forage and habitat, and to ensure that native wildlife will

not be captured and added to captive herds.").  In contrast to the *Pacific Nw* case, State

Defendants here can show no similar interest in the health of its native wildlife, as Safari Club has

only challenged the ban on the importation and possession of harvested mountain lions sport-

hunted in other states and countries.

As discussed in the next section, State Defendants ask the Court to accept the State's

interests on faith, presented only in their motions to dismiss, without Safari Club having the

opportunity to refute the legitimacy of those alleged and unproven interests following discovery

(including expert testimony) and summary judgment briefing.  *See id.* at 1015 (plaintiff given

opportunity to "offer evidence" undermining state's purported  reasons for the live animal import

ban).  Safari Club seeks the same opportunity as was provided the plaintiffs in *Pacific Nw* and

other cases – to develop and present factual proof in support of its allegations that the impacts on

interstate commerce are substantial, widespread, and clearly excessive in relation to the State's

alleged interest.

3.      **The Import Ban Does Not Advance the State's Purported Interest in Habitat and Species Protection in California, and Alleged Prevention of Animal Cruelty is not a Legitimate Purpose**

State Defendants have burdened interstate commerce (*i.e.,* by eliminating and reducing

commerce) without a legitimate interest to justify doing so.  The State relies on illusory and non-

compelling justifications for the Import Ban.  These insupportable arguments should not defeat

Safari Club's right to move forward in this case and to be given the opportunity to present the

evidence to prove the Import Ban violates the Commerce Clause.

In initial briefing on their first motion to dismiss, State Defendants' **only** purported purposes behind the Import Ban were to protect wildlife habitat and wildlife **in California** and protect the health and safety of **Californians.**[20]  These alleged interests are not served by a ban on the importation, transportation, and possession of mountain lions harvested **outside of California.** The sections of the California Code State Defendants cite – Sections 2780 and 4800 – all relate to wildlife habitat and resources within the state, not outside the state.  *See* Second MTD at 13.  In addition, a properly permitted, tagged and harvested wildlife specimen from outside California cannot have a deleterious effect on the health and safety of residents of California.  Now, State Defendants add another purported rationale – a desire to prevent the so-called "cruel practice of trophy hunting."  *Id.*  State Defendants cannot remedy the weaknesses in the original purposes of the Import Ban by newly introducing an argument that was not the basis for the law codifying the Import Ban.  Moreover, the prevention of animal cruelty argument is undermined by the State's own laws, policies, and practices.

The only cited statute that includes any purposes related to the Import Ban references only California wildlife and habitat, and does not mention animal cruelty or anything similar.  CAL. FISH & GAME CODE § 2780, from Proposition 117, provides "[a]ll state officials shall implement this chapter to the fullest extent of their authority in order to preserve, maintain, and enhance **California's** diverse wildlife heritage and the habitats upon which it depends" (emphasis added). The other cited statute, CAL. FISH & GAME CODE § 4800, which contains the Import Ban, does not

---

[20] In their **first** motion to dismiss, State Defendants argued "[a]s noted above, the Mountain Lion Prohibition, including the prohibition on the importation and possession of mountain lions and parts of mountain lions legally killed in other states, was enacted to conserve and protect mountain lion populations. *See* Fish & Game Code §§ 2780, 4800."  MTD at 12, Dkt. 15; *see also id.* at 12-13 n.3 (citing CAL. FISH & GAME CODE § 1801).  The first motion to dismiss never mentioned animal cruelty.  Only in their reply brief did State Defendants' counsel discover this alleged purpose.

even contain any findings or declarations about the purpose behind the Import Ban.  Prohibiting importation, which impacts only mountain lion hunting outside of California, simply does not conserve or protect habitat and wildlife, including mountain lions, in California.  Instead, it harms other states and their wildlife management efforts.[21]

Equally unpersuasive is the alleged purpose originally mentioned by amicus HSUS and later adopted by State Defendants.  For several reasons, the subjective belief asserted in one statement of the biased argument of the proponents of Proposition 117 that mountain lion hunting is "cruel and unnecessary," Second MTD at 3, 14; Second Amicus Br. at 3, 9, *quoting* Ballot Pamphlet, cannot be attributed to the voters of the State or advanced as the justification for the Import Ban.

First, State Defendants did not originally offer this justification in defense of this case, suggesting that it is a post hoc rationalization of counsel (after a non-party first suggested it) and not reflective of the State's real view of the purpose of the law.

Second, this alleged anti-hunting justification carries no weight as it is not contained in the express findings and declarations of Proposition 117, which only discuss the protection of California habitat and wildlife and do not assert in any way that mountain lion hunting is cruel. CAL. FISH & GAME CODE §§ 2780, 2781.  Considering the extensive findings and purposes, the Court should not accept a purpose that is not found in the statutory findings and declarations.  *See*

---

[21] In addition, despite Section 2780, large numbers of animals are sustainably hunted in California every year (Safari Club supports the well-regulated hunting of wildlife).  While the California Department of Fish and Wildlife does not appear to track the number of animals hunted each year, in 2014 the State issued close to 2,000,000 hunting licenses in the state (some hunters hold more than one type of license).  Hunting Items Reported By License Year (2010-2015), as of 6/30/15, https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=59821&inline, Exhibit H to Second Request for Judicial Notice (Dkt. 48).  State Defendants do not explain how Section 2780 justifies a ban on the import of a single species hunted out of the state, while widespread hunting of other animals is occurring (under scientifically-based hunting laws).  The answer is that it does not.

*Smith v. Doe*, 538 U.S. 84, 93 (2003) (in interpreting intent of state legislature, Supreme Court first and primarily analyzed the findings and declarations found in the statute itself).  The California Supreme Court has indicated that the primary focus of the search for the purpose and reach of a statute is in the "formally expressed intent" of a voter initiative.  "For a court to construe an initiative statute to have substantial unintended consequences strengthens neither the initiative power nor the democratic process; ***the initiative power is strongest when courts give effect to the voters' formally expressed intent,*** without speculating about how they might have felt concerning subjects on which they were not asked to vote."  *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal. 4th 920, 930 (2008) (emphasis added) (rejecting argument that Compassionate Use Act (CAL. HEALTH & SAFETY CODE § 11362.5) required employers to accommodate marijuana use, in part because "employment law [is not] mentioned in the findings and declarations").[22]

A principle of statutory construction – *expression unius est exclusio alterius* – applies here because the statute lists the purposes behind the initiative, but does not mention hunting or animal cruelty.  A California court, quoting the California Supreme Court, has explained:

> The statute does not list minority as one of the grounds for excusing noncompliance with the limitations period. By longstanding rule of statutory construction, the Legislature's omission of a term in a list of terms indicates the Legislature did not intend to include the omitted term, and we cannot add the term to the statute by judicial fiat. " 'Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' ".'

*Blankenship v. Allstate Ins. Co.*, 186 Cal. App. 4th 87, 94-95 (2010), *quoting Rojas v. Superior*

---

[22] In *Chinatown Neighborhood Ass'n v. Harris*, the Ninth Circuit relied on the express findings and declarations in the statute to determine that one of the purposes of the shark fin ban was preventing animal cruelty. 794 F.3d 1136, 1147 (9th Cir. 2015), citing 2011 Cal. Legis. Serv. ch. 524, § 1 (A.B.376) (noting, among other things, that with shark finning "[s]harks starve to death, may be slowly eaten by other fish, or drown because most sharks need to keep moving to force water through their gills for oxygen.").

*Court,* 33 Cal. 4th 407, 424 (2004).  The lack of any mention of animal cruelty in the extensive statutory findings and declarations establishes that it is not properly considered one of the purposes behind the Import Ban.[23]

Third, a number of other factors undermine the legitimacy of this alleged purpose.  The State has long used and still uses dogs to track mountain lions for the purpose of killing or capturing them and California law allows the use of dogs to hunt other animals, including feral pigs.  FAC ¶¶ 9, 58-60.[24]  Permissible hunting methods are not subject to California's "cruelty to animals" law.  *Id.* ¶¶ 9, 55 ("CAL. PENAL CODE § 599c (West) ('No part of this title shall be construed as interfering with any of the laws of this state known as the "game laws,"….')").  Other states do not consider mountain lion hunting to be cruelty to animals and allow the use of dogs to hunt mountain lions.  *Id.* ¶¶ 9, 56.  And finally, as alleged in the FAC, Defendant Bonham and the Department he leads do not now consider and did not consider mountain lion hunting to be animal cruelty at the time the Import Ban was enacted.  *Id.* ¶ 57.

Fourth, this Court should reject an emotionally-based opinion about mountain lion hunting as the basis for the Import Ban, especially because the statutory findings do not support such a conclusion and any so-called "legislative history" is unpersuasive.  The unscientific value-based opinions of particular interest groups do not provide an ascertainable or certain benefit to the State as a whole (as, for example, protection of habitat does) because other citizens hold the

---

[23] In response to similar arguments in the FAC, State Defendants respond that "a state need not provide a justification or rationale for its legislative decisions."  Second MTD at 13 n.4, *citing King v. Christie,* 981 F. Supp. 2d 296, 325 (D.N.J. 2013), *aff'd King v. Governor of the State of New Jersey,* 767 F.3d 216 (3rd Cir. 2014).  Even assuming *King* is a persuasive case here*,* that court relied on the "[t]he legislative findings set forth [in the statute] support [the legislature's] conclusion."  Proposition 117 sets forth its purposes in statutory findings and declarations and, unlike in *King,* they do not include State Defendants' proffered purpose – animal cruelty.

[24] In fact, under California law, depredating mountain lions can be taken by any means, "except that no mountain lion shall be taken by means of poison, leg-hold or metal-jawed traps, and snares."  CAL FISH & GAME CODE § 4809.  Unlike these methods, using dogs to track a mountain lion for purposes of taking them is not singled out as a prohibited method.

moral view that legal mountain lion hunting outside of California is not only ethical, but essential to wildlife management and a traditional cultural activity. *See id.* ¶¶ 17, 63. The Import Ban is an arbitrary and ineffective attempt to manage the wildlife resources of California through influencing conduct (mountain lion hunting) outside of California.

Finally, the authorities establish that courts should be wary of relying on the tenuous nature of any so-called "legislative history" surrounding voter initiatives. *See* Second MTD at 13 n.4, 14. As the Ninth Circuit has explained:

> "Even more than candidate elections, initiative campaigns have become a money game, where average citizens are subjected to advertising blitzes of distortion and half-truths and are left to figure out for themselves which interest groups pose the greatest threats to their self-interest." … Knowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot-measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown.

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105-06 (9th Cir. 2003) *quoting* David S. Broder, *Democracy Derailed: Initiative Campaigns and the Power of Money* at 18 (2000); *see also ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1205, 1207-11 (E.D. Cal. 2009) (extensive analysis of need for California's "compelled disclosure law" for ballot initiative process due to opportunities for confusion and misinformation).[25]

The inclusion of "importation" in the prohibitions of Section 4800(b) was not a well thought out attempt to reach far beyond the borders of the state to affect a hunting practice in other states. Instead, it appears to have been an arbitrary mimicking of the federal Endangered

---

[25] HSUS also cites to the arguments of the proponents and opponents of a failed 1996 initiative to amend Proposition 117. Second Amicus Br. at 3. HSUS, apparently, is trying to support an argument that Proposition 117 was about ending sport hunting. Their argument about events from 1996, even if viable, in no way establishes a justification for the Import Ban. First, "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation. … But post-enactment legislative history by definition 'could have had no effect on the congressional vote,' …." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 1081-82 (2011) (citations omitted). Second, whether or not this 1996 initiative suggests that Proposition 117 was about ending sport hunting of mountain lions, it only involved the hunting of mountain lions in California, and not those hunted outside the state.

Species Act list of prohibited activities for species listed as endangered under that law.  Every

prohibition in Section 4800 is also found in the ESA prohibitions.  *Compare* CAL. FISH & GAME

CODE § 4800 ("unlawful to take, injure, possess, transport, import, or sell any mountain lion or

any part or product thereof ….") *with* 16 U.S.C. § 1538(b) (prohibitions include "import"; "take"

(defined as "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect"); "possess,

sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in

violation of subparagraphs (B) and (C)"; and "sell or offer for sale in interstate or foreign

commerce").  For all these reasons, State Defendants place too much weight on the language from

the one-sided argument section of the ballot initiative.

Although nothing supports the view that the intent of the Import Ban was to impose a

moral opinion on out-of-state mountain lion hunting generally, State Defendants and HSUS try to

justify such an approach as common.  Second MTD at 14; Second Amicus Br. at 9-10.  But the

cases and statutes they cite are distinguishable and do not support that the Import Ban was the

result of application of some ethical norm, which is not universally or even widely shared.  The

undisputed purpose of Proposition 117, as stated by both the law itself and originally by State

Defendants, is the enhancement of California's natural resources, primarily its wildlife habitat.

Ethical opinions do not belong in the analysis of the law's purpose.

In any event, the authorities that State Defendants and HSUS cite are distinguishable and

not relevant.  *See* Second MTD at 14; Second Amicus Br. at 9-10.  The State's prohibitions

regarding the pelts of dogs and cats, consumption of domestic pets, and commercial activities

involving certain protected species are a far cry from banning the import, for all purposes,

including personal uses, of an abundant, legally-hunted wild animal.  The cited cases, only one of

which involves a California statute, also do not involve a situation similar to the Import Ban.  In

one case, "[t]he state's putative interests to be served by these regulations are to ***protect its native***

*wildlife* from diseases and parasites, to maintain the genetic purity of its wildlife, to protect its wildlife from competition for forage and habitat, and to ensure that native wildlife will not be captured and added to captive herds." *Pac. Nw. Venison Producers,* 20 F.3d at 1013 (emphasis added). The other two cases involved statutes with the stated interest of preventing further harm and endangerment to imperiled species outside of California. *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1443 (S.D.N.Y.) *aff'd,* 831 F.2d 410 (2d Cir. 1987) ("The statute was adopted to halt commercial practices which ***the New York Legislature believed might lead to the extinction or near extinction of many species***.") (emphasis added); *Viva! Int'l Voice For Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal. 4th 929, 937 (2007) ("Section 653o was passed to ***prevent the extinction of species*** the Legislature deemed threatened.") (emphasis added).

State Defendants' rationales are illusory and not compelling. They do not justify the substantial impact on interstate commerce alleged in the FAC. *See Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991), *as amended on denial of reh'g* (Jan. 9, 1992) (explaining *Pike* balancing test as involving analysis whether "the asserted benefits of the statute are in fact illusory" or the state's interest is "tenuous"). Further factual development is necessary to address the State's purported interest in the Import Ban and give Safari Club the opportunity to demonstrate that it is entitled to relief. Like the plaintiffs in numerous other cases, including *Pike* and *Pacific Nw,* Safari Club should have the opportunity to discover, generate, and present further facts in support of its allegations that the State's purported local interest is illusory, irrational, and outweighed by the Import Ban's substantial impact on interstate commerce.

### C.     With the Additional Facts in the FAC, Safari Club Has Alleged More Than a Plausible Equal Protection Claim

The Import Ban also singles out and discriminates against the group of hunters who wish to hunt mountain lions out of state and import into, transfer and possess within California their

harvested mountain lions.  Hunters of other species out-of-state, including those that are not protected under state or federal law (*e.g.,* are not endangered), are permitted to import, transport, and possess their legally harvested animals in California.  *See* Cal. Fish & Game Code § 2353. Even hunters of some species that are protected under state law are not subject to a complete ban on the importation, transportation, and possession of their harvested animal in California.  *Id.* § 4700 ("Legally imported fully protected mammals or parts thereof may be possessed under a permit issued by the department.").  The Import Ban bars mountain lion hunters from importing their legally hunted animals while hunters of other animals not protected by state or federal law can import their animals.  The U.S. Constitution prohibits the states from denying any person the equal protection of the laws.  U.S. Const. amend. XIV ("Section 1. … No State shall … deny to any person within its jurisdiction the equal protection of the laws.").  Because this amendment directly applies to the States, it prohibits California from engaging in conduct that deprives individuals of equal protection of the law.

The Supreme Court has explained in general that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (under that standard, striking Colorado law discriminating against homosexuals).  The Import Ban does not involve a fundamental right or suspect class, so the "rational relation" test applies.  To satisfy the test, the law in question must "rationally further[] a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Safari Club has alleged facts, which must be accepted as true, that both (1) show that hunters of mountain lions harvested outside of California are disparately subject to an import ban as compared to hunters of other non-endangered species, and (2) negate the alleged legitimacy of the State's interest in the Import Ban asserted by State Defendants and HSUS.  In their second

1   motion to dismiss, State Defendants claim that the purpose for the Import Ban is to protect,

2   enhance, and restore wildlife habitats, and that there is "'an urgent need' to protect [mountain

3   lions] and to 'support California's unique and varied wildlife resources.'"  Second MTD at 17;

4   *see also* Second Amicus Br. at 12.  As explained above, State Defendants and HSUS fail to

5   explain how an import ban that affects mountain lion hunting outside of California benefits

6   mountain lions or other California wildlife or enhances the habitat for these species within

7   California.  In addition, Safari Club has provided factual allegations more than sufficient to

8   overcome any presumption of rationality.  Their attempted reliance on animal cruelty to justify

9

10  the Import Ban also fails for the reason discussed in the Commerce Clause section above.

11          Safari Club's FAC explains that the Import Ban "arbitrarily and without justification"

12  violates the Equal Protection Clause (FAC, ¶ 82) and provides factual information to support the

13  claim.  To rebut any assertion that there is "an urgent need to protect" mountain lions, the FAC

14  states that mountain lions are not listed as endangered or threatened under the federal Endangered

15  Species Act (*id.* ¶ 6), and provides a statement from the California Department of Fish and

16  Wildlife indicating that mountain lions are not scarce or endangered in California and can be

17  found wherever deer are present.  *Id.* ¶ 35.  To rebut any assertion that the Import Ban provides

18  for protection, enhancement, or restoration of wildlife habitats, Safari Club's FAC explains that

19  discouraging hunting outside of California does not in any way provide for habitat conservation

20

21  in California.  *Id.* ¶¶ 24, 64.  The Import Ban also does not help California manage mountain lions

22  or other species within California.  *Id.* ¶ 64.  Finally, as mountain lion hunting as practiced in

23  other states is not animal cruelty, this purported justification fails also.  See *id.* ¶¶ 9, 54, 56, 76

24  and discussion above.

25          HSUS argues, citing to CAL. PENAL CODE § 653o, that hunters who would like to hunt

26

27  mountain lions outside of California and import them back to California are not treated differently

28

than other hunters of different species.  Second Amicus Br. at 14.  That law is not at all similar to the Import Ban.  First, section 653o prohibits importation of specified species for "commercial purposes."  An individual who harvests an animal and wishes to import it into California for his or her own personal use does not do so for "commercial purposes."  In this case, Safari Club does not challenge the prohibition on the sale of mountain lions or their parts in California.  California law does ***not*** prohibit the importation of hunting trophies of the species listed in section 653o for personal purposes, such as displaying in a home.  If any prohibitions exist against the importation of other species for personal use, these prohibitions are found in federal and international statutes, legislation and treaties, and not in California state law.

Because, in the context of a motion to dismiss, this Court must take all of Safari Club's assertions as true, this Court should conclude that State Defendants are unable to show any rational relationship between the Import Ban and mountain lion protection.  At later stages of this litigation, when Safari Club will be required to show additional evidentiary support for the allegations of its FAC, Safari Club will have the benefit of discovery and presentation of evidence to accompany summary judgment briefing.  Safari Club will be able to further demonstrate and prove that the Import Ban is irrational and violates the Equal Protection Clause.

Most of the cases cited by State Defendants in support of their Equal Protection arguments were not decided on a motion to dismiss.  Second MTD at 16-17.  One case that was decided on a motion to dismiss involved challenges to the statutes of limitation and repose, well-established components of American jurisprudence and not subject to serious debate about their purposes.[26] Two others were dismissed only after the court had the benefit of presentation of facts in preliminary injunction proceedings.[27]

---

[26] *Fields v. Legacy Health System*, 413 F.3d 943, 955 (9th Cir. 2005).

[27] *Chinatown Neighborhood Ass'n*, 33 F.Supp.3d at 1092 (discussed above); *Teixeira v. Cnty. of*

In addition, Safari Club does not suggest that the Court should determine the "optimal" way to achieve mountain lion protection.  Second MTD at 18.  Rather, Safari Club asks the Court to judge the rationality of the Import Ban as it applies to importation, transportation, and possession of mountain lions hunted outside of California.  Safari Club alleges that the Import Ban discriminates against those who wish to hunt mountain lions outside of California as compared to similarly situated hunters of other non-imperiled game animals, and that the Import Ban serves no legitimate state interest, and is not rational.  Particularly in light of the Rule 12(b)(6) standard, the Court should deny State Defendants' motion to dismiss this claim.

### D. Safari Club Has Alleged More Than a Plausible Section 1983 Claim

As Safari Club has asserted (more than) "plausible" Commerce Clause and Equal Protection Clause claims, Safari Club also has asserted a plausible Section 1983 claim.  Section 1983 provides a civil remedy for violations of federal constitutional law under the color of state law.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .").  Defendants Harris and Bonham are "persons" under Section 1983 because Safari Club is suing them for prospective declaratory and injunctive relief.  "A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), *quoting Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-60 (1908).  Safari Club is not bringing a Section 1983 claim for

*Alameda*, 2013 WL 4804756, *3 (N.D. Cal. 2013).

monetary damages and is not bringing any claim directly against the State of California.  Because

Safari Club's Commerce Clause and Equal Protection Clause claims should not be dismissed for

the reasons described above, its Section 1983 claim should similarly not be dismissed.

> **E.** **If the Court Finds Safari Club Still Has Not Asserted Plausible Claims, It Should Grant Safari Club One More Opportunity to Amend to Cure Any Deficiencies**

Safari Club recognizes that the Court allowed it to amend its complaint to address issues

raised in the ruling on the first motion to dismiss.  Safari Club has responded with a FAC that

comprehensively addresses the facts needed to state plausible Constitutional and statutory claims.

If the Court concludes that Safari Club still has not sufficiently alleged facts to state one or more

plausible claims and the identified deficiency is one that was not readily apparent, Safari Club

requests that the Court exercise it discretion to grant Safari Club leave to amend its FAC one

more time to assert the facts necessary to cure the deficiency.

**V.     CONCLUSION**

The cases most relevant to the claims that Safari Club has brought demonstrate that Safari

Club has alleged and could demonstrate a significant impact on interstate commerce that

outweighs the State's asserted purpose allegedly served by the Import Ban.  For similar reasons,

Safari Club has asserted a plausible Equal Protection claim based on the irrational treatment of

mountain lion hunters as compared to hunters of other non-endangered, out-of-state species.  As

both of these claims are (more than) "plausible," Safari Club also has asserted a plausible Section

1983 claim.  For these reasons, the Court should deny the motion to dismiss and allow the parties

to proceed to discovery.

1   Dated this 14th day of September, 2015.

2                                          Respectfully submitted,

3                                          /s/ Douglas S. Burdin
                                           Douglas S. Burdin, Esq.*
4                                          (D.C. Bar No. 434107)
                                           Anna M. Seidman, Esq.*
5                                          (D.C. Bar No. 417091)
                                           Jeremy E. Clare
6                                          (D.C. Bar No. 1015688)
                                           Safari Club International
7                                          501 2nd Street N.E.
                                           Washington, D. C.  20002
8                                          Telephone: (202) 543-8733
                                           Facsimile: (202) 543-1205
9                                          dburdin@safariclub.org
                                           aseidman@safariclub.org
10                                         jclare@safariclub.org
11
                                           Linda J. Linton, Esq. (Counsel for Service)
12                                         (California Bar No. 177821)
                                           Linton & Associates, P.C.
13                                         6900 S. McCarran Blvd., #2040
                                           Reno, NV  89509
14                                         Telephone: (775) 333-0881
                                           Facsimile: (775) 333-0877
15                                         llinton@lintonlegal.com
16
                                           Counsel for Plaintiff
17                                         Safari Club International
18
                                           * Pro Hac Vice Granted
19

20

21

22

23

24

25

26

27

28

Case Name: **Safari Club International v. Kamala D. Harris, et al. 2:14-cv-01856-GEB-AC**

I hereby certify that on September 14, 2015, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury the foregoing is true and correct and that this declaration was executed on September 14, 2015.

Respectfully submitted,

/s/ Douglas S. Burdin
Douglas S. Burdin, Esq.*
(D.C. Bar No. 434107)

Counsel for Plaintiff
Safari Club International

* Pro Hac Vice Granted