1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  ALEXANDRA ROBERT GORDON, State Bar No. 207650
   Deputy Attorney General
4   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
5   Telephone:  (415) 703-5509
    Fax:  (415) 703-5480
6   E-mail:  Alexandra.RobertGordon@doj.ca.gov
   *Attorneys for Defendants Attorney General Harris*
7  *and Director Bonham*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **SAFARI CLUB INTERNATIONAL,**<br><br>                                    Plaintiff,<br><br>v.<br><br>**KAMALA D. HARRIS, in her official capacity as the Attorney General of California; CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife,**<br><br>                                    Defendants | 2:14-cv-01856-GEB-AC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:             September 28, 2015<br>Time:            9:00 a.m.<br>Courtroom:  10<br>Judge:           Hon. Garland E. Burrell, Jr.<br>Action Filed: August 7, 2014 |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
ARGUMENT ..... 1
I. Plaintiff's Dormant Commerce Clause Claim Fails ..... 2
A. Because Plaintiff Has failed to Allege a Substantial Burden on Interstate Commerce, *Pike* Balancing Is Not Required. ..... 3
B. The Mountain Lion Prohibition Serves Important State Interests and Its Putative Benefits Outweigh Any Burden on Interstate Commerce. ..... 7
II. Plaintiff Has Not stated and Cannot State a Claim for Relief Under the Equal Protection Clause ..... 10
III. Plaintiff's Remaining Claim Must Be Dismissed ..... 11
CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Anderson v. Holder*
  673 F.3d 1089 (9th Cir.2012)....................................................................................8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..............................................................................................2, 9

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013).........................................................................2, 3, 6, 7

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*
  511 U.S. 383 (1994)..................................................................................................5

*Cal. Pro-Life Council, Inc. v. Getman*
  328 F.3d 1088 (9th Cir. 2003)...................................................................................8

*Chapman v. Houston Welfare Rights Organization*
  441 U.S. 600 (1979)................................................................................................11

*Chinatown Neighborhood Ass'n v. Harris*
  33 F. Supp. 3d 1085 (N.D. Cal. 2014) ............................................................. *passim*

*Chinatown Neighborhood Ass'n v. Harris*
  794 F.3d 1136 (9th Cir. 2015)...................................................................................3

*City of Philadelphia v. New Jersey*
  437 U.S. 617 (1978)..................................................................................................4

*CTS Corp. v. Dynamics Corp. of America*
  481 U.S. 69 (1978)....................................................................................................4

*Dairy v. Bonham*
  No. C-13-1518 EMC, 2013 WL 3829268 (N.D. Cal. July 23, 2013) ................2, 11

*Exxon Corp. v. Governor of Maryland*
  437 U.S. 117 (1978)..................................................................................................5

*FCC v. Beach Communications, Inc.*
  508 U.S. 307 (1993)................................................................................................10

*General Motors Corp. v. Tracy*
  519 U.S. 278 (1997)..............................................................................................3, 6

*Healy v. Beer Inst.*
  491 U.S. 324 (1989)..................................................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Heller, v. Doe*
  509 U.S. 312 (1993) ..................................................................................................10

*Huron Portland Cement Co. v. Detroit*
  362 U.S. 440 (1960) ....................................................................................................5

*Kassel v. Consol. Freightways Corp.*
  450 U.S. 662 (1981) ....................................................................................................7

*Legislature v. Eu*
  54 Cal.3d 492 (Cal. 1991) ......................................................................................7, 11

*Minnesota v. Clover Leaf Creamery Co.*
  449 U.S. 456 (1981) ....................................................................................................3

*Missouri Pac. R. Co. v. Norwood*
  283 U.S. 249 (1931) ....................................................................................................7

*Mourning v. Family Publ'n Serv., Inc.*
  411 U.S. 356 (1973) ..................................................................................................10

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
  682 F.3d 1144 (9th Cir. 2012) ..........................................................................3, 4, 7, 9

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
  272 F.3d 104 (2d Cir. 2001) ........................................................................................6

*Pacific Nw. Venison Producers v. Smitch*
  20 F.3d 1008 (9th Cir. 1994) ............................................................................. passim

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) ........................................................................................... passim

*ProtectMarriage.com v. Bowen*
  599 F. Supp. 2d 1197 (2009) .......................................................................................8

*PTI, Inc. v. Philip Morris, Inc.*
  100 F. Supp. 2d 1179 (C.D. Cal. 2000) ....................................................................2, 9

*Safari Club Int'l v. Harris*
  No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869 (E.D. Cal. Apr. 29, 2015) ...........8

*Teixeira v. Cty. of Alameda*
  No. 12-cv-03288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ...........1, 2, 11

# **TABLE OF AUTHORITIES**
(continued)

**Page**

*U.S. R.R. Ret. Bd. v. Fritz*
   449 U.S. 166 (1980).................................................................................................8

*Valley Bank of Nev. v. Plus Sys., Inc.*
   914 F.2d 1186 (9th Cir. 1990)..................................................................................4

*Wilson-Combs v. California Dep't of Consumer Affairs*
   No. CIV. 07-2097 2008 WL 227850 (E.D. Cal. Jan. 28, 2008)..............................11

*Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*
   753 F.3d 843 (9th Cir. 2013).................................................................................4, 7

**STATUTES**

United States Code, Title 42
   § 1983......................................................................................................................11

California Fish and Game Code
   § 2780..............................................................................................................7, 8, 10
   § 4800............................................................................................................. *passim*

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   Fourteenth Amendment...............................................................................1, 10, 11
   Article I, § 8, Clause 3 ............................................................................... *passim*

## INTRODUCTION

Plaintiff does not meaningfully address, let alone refute, the arguments set forth in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's First Amended Complaint (Memorandum).  Rather, plaintiff's opposition brief, much like its First Amended Complaint, consists of little more than criticisms of the purposes and effect of California Fish and Game Code section 4800 (the Mountain Lion Prohibition), allegations regarding harm to the business interests of its members and other individuals engaged in the trade and trafficking of mountain lions and mountain lion products, and unsupported legal conclusions. Even after amendment, plaintiff does not allege plausible claims for relief under the dormant Commerce and Equal Protection Clauses.  Moreover, because the Mountain Lion Prohibition is facially neutral, does not discriminate against or place a substantial burden on interstate commerce, and is rationally related to legitimate governmental interests in protecting wildlife and the environment and in preventing animal cruelty, plaintiff cannot demonstrate that the law is unconstitutional, and thus, it cannot state a claim upon which relief can be granted.  This Court should thus dismiss the First Amended Complaint and enter judgment for defendants.

## ARGUMENT

Even under the most generous and favorable reading, the First Amended Complaint (FAC) does not suggest that it is *possible,* let alone plausible, that the Mountain Lion Prohibition violates either the dormant Commerce or the Equal Protection Clause.  Where, as here, a plaintiff has not plausibly alleged and cannot plausibly allege claims under the dormant Commerce and Equal Protection Clauses, dismissal with prejudice is warranted.  *See, e.g.*, *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1107 (N.D. Cal. 2014) *aff'd sub nom*. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015);[1] *PTI, Inc. v. Philip Morris, Inc.*,

---

[1] Plaintiff's attempt to distinguish *Chinatown Neighborhood Ass'n* (as well as *Teixeira v. Cty. of Alameda*, No. 12-cv-03288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013)), fails. Plaintiff argues that the motions to dismiss in these cases occurred "only after the court had the benefit of presentation of facts in preliminary injunction proceedings."  While this is true as a matter of chronology, the evidence presented in the motions for preliminary injunction was not considered by the court in either of these cases in resolving the motions to dismiss.  Rather, the court determined that plaintiffs' *complaints* did not state plausible claims for relief and thus dismissed each action with prejudice.  *See Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp.
(continued…)

100 F. Supp. 2d 1179, 1202-03 (C.D. Cal. 2000); *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 WL 3829268, *6-7 (N.D. Cal. July 23, 2013).

As a threshold matter, plaintiff's argument that it should be given an opportunity to "discover, generate, and present further facts" in support of its claims is baseless. *See* Plaintiff's Opposition to Defendants' Second Motion to Dismiss (Opposition), ECF No. 50 at 22. Although plaintiff notes that, particularly in dormant Commerce Clause cases, plaintiffs are often allowed to put forth evidence regarding the substantial burden placed on commerce by a law and/or its putative benefits, Opposition 3, 11, 21-22 & n.13, this is not compulsory. Rather, and unlike in the cases upon which it relies, plaintiff has failed to allege plausible claims for relief, and thus is not entitled to discovery and/or to proceed to summary judgment or trial. *See Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d at 1097 ("plaintiffs must plead sufficient facts showing that they are plausibly entitled to relief before those facts may be weighed by a jury"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Contrary to its understanding, Opposition 10, no one is asking plaintiff to prove its case at the pleading stage; rather it is being asked to properly allege viable claims for relief. As discussed below and in defendants' Memorandum, plaintiff has not met, and cannot meet this burden.

## I. PLAINTIFF'S DORMANT COMMERCE CLAUSE CLAIM FAILS

Plaintiff apparently concedes that the Mountain Lion Prohibition, which bans, subject to limited exceptions, the killing, injuring, possession, transport, importation, or sale of mountain lions and/or mountain lion product or parts in California, *see* Cal. Fish & Game Code § 4800, does not discriminate against interstate commerce or regulate extraterritorially.[2] Plaintiff argues

---

(…continued)
3d at 1107; *Teixeira*, 2013 WL 4804756, at *11.

[2] Plaintiff could not credibly argue otherwise. The Mountain Lion Prohibition regulates even-handedly and treats all mountain lions and/or mountain lion parts, regardless of their point of origin, exactly the same. *See* Cal. Fish & Game Code § 4800. Accordingly, it does not discriminate against interstate commerce. *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 398 (2014). The Mountain Lion Prohibition also does not, either directly or indirectly, control commerce occurring wholly
(continued…)

1  instead that under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

2  (1970), the Mountain Lion Prohibition's "substantial impact" on interstate commerce exceeds its

3  putative local benefits and that these benefits are illusory.  These arguments fail.

### A.  Because Plaintiff Has Failed to Allege a Substantial Burden on Interstate Commerce, *Pike* Balancing Is Not Required.

6  Plaintiff is not entitled to balancing under *Pike*.  This is not, as plaintiff asserts, because

7  defendants contend that mountain lions are not articles of commerce and/or that Congress lacks

8  the authority to regulate the interstate transportation of mountain lions.  Opposition 15-16.[3]

9  Rather, *Pike* balancing is not warranted because application of the *Pike* test requires that a

10  plaintiff first establish a substantial burden on interstate commerce, and the FAC fails to do so.

11  *See* Memorandum 10-12; *Ass'n des Eleveurs de Canards*, 729 F.3d at 952.  As the Ninth Circuit

12  has held, a "state regulation does not become vulnerable to invalidation under the dormant

13  Commerce Clause merely because it affects interstate commerce."  Rather, "[a] critical

14  requirement for proving a violation of the dormant Commerce Clause is that there must be a

15  *substantial burden* on *interstate commerce*."  *Nat'l Ass'n of Optometrists & Opticians v. Harris*,

16  682 F.3d 1144, 1148 (9th Cir. 2012), *cert. denied*, 81 U.S.L.W. 3452 (U.S. Feb. 19, 2013) (No.

17  12-461) (emphasis in original).  The Ninth Circuit has explained that most regulations that are

18  struck down under *Pike* are invalid because of discrimination.  *Nat'l Ass'n of Optometrists*,

19  682 F.3d at 1148; *see also General Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997) (citing

20  cases and concluding that "several cases that have purported to apply the undue burden test

21  (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the

22  challenged state regulations"); *Chinatown Neighborhood Association*, 794 F.3d at 1146 ("[O]nly

---

(…continued)
outside of California and thus is not an impermissible extraterritorial regulation.  *See Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 548 (1981).

[3] Plaintiff's assertion that defendants have failed to address the *Pike* analysis is puzzling.  *See* Opposition 12-15.  *Pike* balancing is addressed on pages nine through fifteen (9-15) of defendants' Memorandum, in which defendants explain why it is not required, but would be satisfied in any case.

3

Defendants' Reply (2:14-cv-01856-GEB-AC)

a small number of . . . cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory . . . .") (citation omitted) [4]  In a "small number" of dormant Commerce Clause cases, courts have also invalidated statutes that created inconsistent regulation of activities that "are inherently national or require a uniform system of regulation," almost all of which involve attempted regulation of interstate transportation.  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148-49; *see also CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 88 (1987) (contrasting transportation cases with Indiana law regulating takeovers); *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1192 (9th Cir. 1990) (distinguishing transportation cases and cases involving national sports leagues as those requiring national uniformity).

Plaintiff has failed to allege a cognizable "substantial burden" within the meaning of the dormant Commerce Clause.  *See generally* Memorandum 10-12.  The FAC does not establish that the Mountain Lion Prohibition is discriminatory or creates inconsistent regulation of activities that "are inherently national or require a uniform system of regulation."  Instead, plaintiff argues that over the last 24 years, the "substantial impact" of the Mountain Lion Prohibition is to "discourage and eliminate significant amounts of interstate commerce," such as travel to other states and countries, fees paid to guides and outfitters, monies spent on the purchase of hunting ammunition and equipment, lodging, permits and fees, taxidermy work, and commerce related to dog training and the sale of dogs.  Opposition 18-19 (citing FAC ¶¶ 4-5, 39, 45-50, 51-52, 56, 73-

---

[4] Plaintiff mistakenly contends that "the direct result and intent of the law" is to affect interstate commerce in mountain lion products, and therefore, that "push[es] [its] claim closer to the discrimination analysis."  Opposition 14, n.15.  Whatever incidental effect the Mountain Lion Prohibition may have on commerce, intentional or not, that effect would establish neither discrimination nor a "substantial burden" under *Pike*.  *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("The crucial inquiry, therefore, must be directed to determining whether [a statue] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental"); *Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 753 F.3d 843, 849 (9th Cir. 2013).  Plaintiff's related argument that the Mountain Lion Prohibition does not regulate "even-handedly" because it treats mountain lions differently than other animals that can be legally hunted and imported into California is similarly fruitless.  An "import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items."  *Pacific Nw. Venison Producers,* 20 F.3d at 1012.  Accordingly, plaintiff's assertion that California is "needlessly obstruct[ing] interstate commerce" by prohibiting the import of mountain lions and mountain lion parts, Opposition 12-13, also fails.

74). However, and contrary to plaintiff's assertions, *see* Opposition 14-15, the point of the dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-state interests, not to protect the economic interests of businesses engaged in interstate commerce. *See C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994); *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127-128 (1978). Thus, allegations that the Mountain Lion Prohibition is inhibiting the business of plaintiff and its members, the mountain lion hunting industry generally and/or subsidiary businesses are insufficient as a matter of law to demonstrate that the law imposes a substantial burden on interstate commerce. *See Chinatown Neighborhood Association*, 33 F. Supp. 3d at 1100-01.

Plaintiff's related contention that a substantial burden on commerce could be alleged or proven with evidence of the financial and economic impact of the Mountain Lion Prohibition is misguided. While some dormant Commerce Clause cases do involve an examination of the economic effects of a statute, the determination of whether a law places a substantial burden on interstate commerce is not a quantitative exercise, but a qualitative one. Put another way, it is not the *amount* of burden on commerce, but the *type* of burden, and specifically whether a statute discriminates against interstate commerce in practical effect and/or impedes the flow of goods where national uniformity is required, that is dispositive. *See Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448 (1960) ("State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand"); *Pacific Nw. Venison Producers*, 20 F.3d at 1015 (noting that certain types of impacts, including disruption of travel and shipping due to a lack of uniformity in state laws, extraterritorial regulation, and impacts that fall more heavily on out-of-state interests, are of "special importance" in *Pike* analysis and stating that "legitimate regulations that have none of these effects arguably are not subject to invalidation under the Commerce Clause").

Thus, in *Pike*, the Court's determination that the challenged statute placed a clearly excessive burden on commerce in relation to its benefits was not, as plaintiff suggests, primarily based on the fact that the challenged statute would have caused plaintiff to spend $200,000 (in 1970 dollars) to build a processing and packing facility. *See* Opposition 20. Rather, it was

because the law, which effectively required all cantaloupes sold in Arizona to be packed in that state, was, in practical effect, discriminatory. *See Pike*, 397 U.S. at 140-42; *see also Tracy*, 519 U.S. at 299 n.12.[5]  As the Court noted, the statute functioned as "a straightjacket . . . with respect to the allocation of [plaintiff's] interstate resources," and that it "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere," or which "impose an artificial rigidity on the economic pattern of the industry." *Id*. at 145-46.  By contrast, the Mountain Lion Prohibition does not, either directly or in practical effect, privilege intrastate commerce over interstate commerce. *See* Cal. Fish & Game Code § 4800.  Accordingly, and because the Mountain Lion Prohibition does not apply to activities that are inherently national or require a uniform system of regulation, regardless of its financial impact or effects on commerce, it does not create a substantial burden on interstate commerce within the meaning of *Pike* and its progeny. *See Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001) (for "a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce"); *Pac. Nw. Venison Producers*, 20 F.3d at 1015.[6]

---

[5] Similarly, and contrary to plaintiff's characterization, in *Ass'n des Eleveurs de Canards*, the Ninth Circuit did not uphold the district court's determination that the ban on foie gras and duck products produced by force feeding was not a substantial burden on interstate commerce simply because plaintiffs in that case overstated the ban's monetary impact. *See* Opposition at __. Rather, it was because the law was not discriminatory, the market for foie gras was not inherently national and did not require uniform system of regulation, and the law's effect was only to preclude a more profitable method of producing foie gras, which is not a substantial burden on interstate commerce. *See* 729 F.3d at 951-52.

[6] Plaintiff wrongly contends that the impacts of the Mountain Lion Prohibition "fall more heavily on" and impact interstate commerce more than in-state commerce. Opposition 18 (quoting *Pac. Nw. Venison Producers*, 20 F.3d at 1015). Plaintiff claims that this is so because it is only challenging the portion of the Mountain Lion Prohibition that bans importation from other states. *Id.* However, regardless of which part of the statute plaintiff challenges, taken as a whole, the Mountain Lion Prohibition makes no distinction between in-state and out-of-state mountain lions and mountain lion products; all are banned. *See* Cal. Fish & Game Code § 4800.

### B. The Mountain Lion Prohibition Serves Important State Interests and Its Putative Benefits Outweigh Any Burden on Interstate Commerce.

Because plaintiff has not alleged and cannot allege any facts to establish a cognizable burden on interstate commerce, *Pike* balancing is not required and plaintiff's Commerce Clause claim fails. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155-56; *Chinatown Neighborhood Ass'n*, 33 F. Supp. 3d at 1100-01.  However, even if the Court were to undertake this analysis, the Mountain Lion Prohibition would be valid.  As set forth in defendants' Memorandum, the Mountain Lion Prohibition, including the prohibition on the importation and possession of mountain lions and parts of mountain lions legally killed in other states, was enacted to conserve and protect mountain lion populations both within California and generally, and to prevent the cruel practice of trophy hunting.  *See* Memorandum 14-15; Cal. Fish & Game Code §§ 2780, 4800.  It is well settled that the protection of wildlife and the environment and the prevention of animal cruelty are legitimate state interests. *Association des Eleveurs*, 729 F.3d at 952; *Pacific Nw. Venison Producers*, 20 F.3d at 1013.  Plaintiff has not alleged facts sufficient to overcome the strong presumption of validity afforded to state laws. *See Missouri Pac. R. Co. v. Norwood*, 283 U.S. 249, 254, *modified sub nom. Missouri Pac. R.R. Co. v. Norwood*, 283 U.S. 809 (1931); *Pacific Nw. Venison Producers*, 20 F.3d at 1014; *Legislature v. Eu*, 54 Cal.3d 492, 501 (Cal. 1991).  Instead, plaintiff argues that California's stated interests are illusory, irrational, and "non-compelling" and not actually advanced by the Mountain Lion Prohibition.  Opposition 22-29.  These arguments fail as a matter of law.

Insofar as plaintiff argues that the Mountain Lion Prohibition is irrational and its benefits are illusory, it has not alleged, and cannot allege, any facts tending to show that the State's interests in the protection and conservation of wildlife and the prevention of animal cruelty are "tenuous" and/or that the Mountain Lion Prohibition furthers them "so marginally" and that it "interfere[s] with commerce so substantially," *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981), as to be "a fig leaf masking discrimination." *Yakima Valley*, 731 F.3d at 849; *see also Association des Eleveurs*, 729 F.3d at 952; *Pacific Nw. Venison Producers*, 20 F.3d at 1013.  Instead, plaintiff devotes pages to arguing that the prevention of animal cruelty cannot be

considered as an interest underlying the Mountain Lion Prohibition because: (1) defendants did not offer it as a justification in their opening brief in support of their original motion to dismiss; (2) it is not mentioned in the legislative findings accompanying the Mountain Lion Prohibition; (3) it is merely an "ethical" and/or "emotional" opinion that mountain lion hunting is cruel, which should not be given any weight; and (4) in plaintiff's opinion, as well as the opinion of others, hunting and killing mountain lions is not cruel.  Opposition 23-29.  However, regardless of whether defendants mentioned the prevention of animal cruelty as a justification for the Mountain Lion Prohibition in their first opening brief, which they did, *see* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, ECF No. 15, 3 n.1, or whether the prevention of animal cruelty was explicitly set forth in the legislative findings, and despite plaintiff's disagreement with the people of California's assessment, the legislative history of the Mountain Lion Prohibition demonstrates that it was enacted, in part, to prevent what the people believed was the cruel practice of trophy hunting for mountain lions.  *See* Defendants' Request for Judicial Notice (Defendants' RJN), ECF. No. 42-1, Exh. A; *cf. U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature"); *Safari Club Int'l v. Harris*, No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869, at *2 (E.D. Cal. Apr. 29, 2015) ("Judicial notice is taken of the California Ballot Pamphlet for Proposition 117 since this information about the Import Ban was publicly available to voters and includes the argument that "mountain lion hunting is cruel and unnecessary").[7]  Moreover, as discussed above, preventing animal cruelty is not the only interest asserted; the law was also enacted to protect and promote the conservation and sustainability of mountain lion populations and habitats.  *See* Cal. Fish & Game Code § 2780 (a), (d), (e).

---

[7] Plaintiff's assertion that the Court should not consider legislative history of voter initiatives is baseless.  Opposition 27-28.  The Court may take notice of the legislative history of a statute.  *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir.2012); *Safari Club Int'l*, 2015 WL 1956869, at *2.  The cases cited by plaintiff, *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003), and *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1205, addressed constitutional challenges to election-related disclosure requirements, and are inapposite.

Plaintiff's repeated assertions that California's interests are illusory and irrational, both in its FAC and in its opposition, are at best unsupported legal conclusions that are insufficient to meet its pleading burden. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff might believe that the Mountain Lion Prohibition is unwise or prefer that it be written differently, but these are political considerations that are immaterial to the claims it attempts to allege. In the context of dormant Commerce Clause claims, courts should not "second guess the empirical judgments of lawmakers concerning the utility of legislation." *CTS Corp.*, 481 U.S. at 92; *Pac. Nw. Venison Producers*, 20 F.3d at 1016 ("Courts should decline to second-guess such legislative judgments when the evidence of the regulatory measure's effect on interstate commerce is so tenuous"); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1157 (stating that under rational basis review of dormant Commerce Clause claim, courts should "not consider any evidence regarding alternative means for the State to achieve its goals"). Finally, although plaintiff asserts that the Mountain Lion Prohibition does not achieve (and/or that the State has failed to explain how it achieves) the State's interests in conserving and protecting mountain lions and in preventing animal cruelty, even if this were true, under the *Pike* analysis, courts consider only the *putative* benefits of a statute. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (noting that *Pike* "does not mention actual benefits as part of the test for determining when a regulation violates the dormant Commerce Clause"); *see also id.* at 1156 (stating that where no constitutionally significant burden on interstate commerce has been shown, courts give even greater deference to the asserted benefits of a state law or regulation).

The FAC contains no allegations plausibly suggesting that the State's interests are illegitimate or that the burden on interstate commerce caused by the Mountain Lion Prohibition clearly exceeds its local benefits. *See Pike*, 397 U.S. at 142. Accordingly, and because plaintiff has not stated, and cannot state, a claim under the Commerce Clause, this Court should dismiss plaintiff's First Claim for Relief. *See, e.g.*, *Chinatown Neighborhood Ass'n*, 33 F. Supp. 3d at 1101; *PTI, Inc. v. Philip Morris, Inc.*, 100 F. Supp. 2d 1179, 1202-03 (C.D. Cal. 2000).

## II. PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM FOR RELIEF UNDER THE EQUAL PROTECTION CLAUSE

Plaintiff's equal protection claim also fails as a matter of law. Although plaintiff argues that the Mountain Lion Prohibition violates the Equal Protection Clause because it discriminates against hunters of mountain lions and allows the hunting of other species, it concedes that because the law does not involve either a fundamental right or a suspect classification, only rational basis review applies. Opposition 30. Plaintiff has not alleged facts that, if true, "negative every conceivable basis which might support" the Mountain Lion Prohibition, *Heller*, *v. Doe*, 509 U.S. 312, 319 (1993), nor facts demonstrating that the law is wholly irrational. *See Chinatown Neighborhood Ass'n*, 33 F. Supp. 3d at 1097.

The people of California have found and declared that the protection, enhancement, and restoration of wildlife habitats, including mountain lion habitats, is "vital to maintaining the quality of life in California," and that there is "an urgent need" to protect them and to "support California's unique and varied wildlife resources." Cal. Fish & Game Code § 2780. The people have also determined that the practice of trophy hunting is "cruel and unnecessary." *See* Defendants' RJN, Exh. A. In keeping with these findings, California has determined that the mountain lion is a specially protected mammal under the laws of this state and that it should be unlawful to take, injure, possess, transport, import, or sell any mountain lion or part of a mountain lion. Cal. Fish & Game Code § 4800. Although plaintiff disagrees with the people's assessment and believes that the Mountain Lion Prohibition does not achieve the State's important interests, "equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications*, *Inc.*, 508 U.S. 307, 313 (1993). Further, rational basis review does not give courts latitude to speculate as to whether some other scheme could have better regulated the evils in question. *Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 378 (1973). Moreover, a statute may pass rational basis review "even where there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321 .

Plaintiff mistakenly suggests that at the pleading stage, conclusory allegations that the Mountain Lion Prohibition is irrational and "arbitrarily and without justification" violates the

10

Equal Protection Clause are sufficient to defeat a motion to dismiss and/or entitle it to discovery and trial. Opposition 31-32. "Even in the context of a motion to dismiss, a plaintiff alleging an equal protection violation must plead a claim that establishes that there is not "any reasonable conceivable state of facts that could provide a rational basis for the classification." *Dairy*, 2013 WL 3829268, *6 (citing *Hettinga v. U.S.*, 677 F.3d 471, 479 (D.C. Cir. 2012)). As with its dormant Commerce Clause claim, plaintiff "ha[s] not alleged facts sufficient to overcome the presumption of rationality" that applies to duly enacted legislation. *Teixeira*, 2013 WL 4804756 at*10 ; *Eu*, 54 Cal.3d at 501. Moreover, given that the Mountain Lion Prohibition is rationally related to the State's interest in the conservation and protection of wildlife as well as the prevention of animal cruelty, plaintiff cannot state an equal protection claim as a matter of law. *See Pacific Nw. Venison Producers*, 20 F.3d at 1013; *Chinatown Neighborhood Ass'n*, 33 F. Supp. 3d at 1097. The Court should thus dismiss plaintiff's Second Claim for Relief.

### III. PLAINTIFF'S REMAINING CLAIM MUST BE DISMISSED

Because plaintiff has failed to allege claims under the dormant Commerce and Equal Protection Clauses, its remaining dependent claim, pursuant to 42 U.S.C. section 1983 should also be dismissed. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618 (1979); *Wilson-Combs v. California Dep't of Consumer Affairs*, No. CIV. 07-2097 WBSDAD, 2008 WL 227850, at *6 (E.D. Cal. Jan. 28, 2008).

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss the Complaint in its entirety and enter judgment in their favor.

Dated:  September 21, 2015

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants*
*Attorney General Harris and Director Bonham*

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Safari Club International v. Kamala D. Harris, et al.** | No. | **2:14-cv-01856-GEB-AC** |

I hereby certify that on <u>September 21, 2015</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 21, 2015</u>, at San Francisco, California.

| A. Bermudez | /s/ A. Bermudez |
|---|---|
| Declarant | Signature |

SA2014117523