UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL,<br><br>    Plaintiff,<br><br>    v.<br><br>KAMALA D. HARRIS, in her official capacity as the Attorney General of California; CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife,<br><br>    Defendants. | No. 2:14-cv-01856-GEB-AC<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendants seek dismissal with prejudice of Plaintiff's First Amended Complaint ("FAC"), under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendants argue "even after amendment, [P]laintiff does not allege sufficient facts in support of its constitutional claims." (Defs.' Mot. To Dismiss Pl.'s First Am. Compl. ("Mot.") 2:10-11, ECF No. 42.) The Humane Society of the United States ("HSUS") and The Fund for Animals ("The Fund") (together "Amici") filed an amicus curiae brief in support of Defendants' dismissal motion.[1]

---

[1] The Court granted Amici's motion for leave to file an amicus curiae brief on July 16, 2015. (Order Granting Amici's Mot. for Leave to File an Amicus Curiae Br., ECF No. 43.)

1

Plaintiff states in its FAC: "In this lawsuit, Plaintiff . . . challenges the State of California's [statutory] ban on the importation, transportation, and possession in California of mountain lions hunted outside of California" (referred to herein as "Import Ban"). (Pl.'s First Am. Compl. ("FAC") 1:8-11, ECF No. 38.) California voters approved the Import Ban through ballot initiative Proposition 117 in the year 1990; the Import Ban is prescribed in California Fish & Game Code §§ 4800(a), (b)(1). Plaintiff alleges the Import Ban "is unconstitutional under the U.S. Constitution's Commerce Clause (art. I, § 8, cl. 3) and the Equal Protection Clause (amend. XIV)." (Id. at 1:12-13).

## I.   FACTUAL ALLEGATIONS

Plaintiff also alleges in the FAC that the Import Ban "adversely and significantly burdens interstate commerce associated with the hunting of mountain lions" and "serves no legitimate state or local interest[;]" that its members "have affirmatively expressed a desire to . . . import into, transport within, and possess within California," harvested mountain lions they have hunted or plan to hunt outside of California; and that the Import Ban "directly discourages California residents from traveling to other states" to fulfill these desires. ((FAC ¶¶ 1, 2, 4.) Plaintiff further alleges:

> [A] large number of . . . residents of California . . . would make . . . plans to transport into California already harvested animals and hunt mountain lions outside of California if the Import Ban were not in place. . . . [N]umerous outfitters, taxidermists, and others would provide services related to mountain lion hunting outside of California to residents of

>            California interested in hunting mountain
>            lions if the Import Ban were not in place.
>            Many sporting goods stores . . . would be
>            able to supply hunting and other equipment
>            and gear needed for mountain lion hunting.
>            But for the Import Ban, they would sell more
>            products to more California hunters of
>            mountain lions outside of California.

(Id. ¶ 43)

>       Plaintiff alleges:
>
>            The impact on interstate commerce is
>            significant on an annual basis and even more
>            excessive when considered in light of the
>            commerce that would occur immediately after
>            the Import Ban was lifted, combined with the
>            commerce lost over the history of the Import
>            Ban and expected continued duration of the
>            ban.

(Id. ¶ 75.)

Plaintiff further alleges: "[t]he substantial impacts on interstate commerce are clearly excessive in relation to [California's] putative interest in habitat and wildlife conservation, health and safety of its residents, and alleged concern that legal mountain lion hunting in other states is 'animal cruelty,' in part because these purposes are illusory or nonexistent." (Id. ¶ 76.) Plaintiff alleges California "has no legitimate interest in discouraging" mountain lion hunting outside of California. (Id.)

Plaintiff alleges: "[t]he Import Ban singles out and discriminates against the group of hunters who wish to hunt mountain lions out of state and import into, transfer and possess within California their harvested mountain lions;" (Id. ¶11) that the Import Ban "bear[s] [no] rational relation to any legitimate end;" (Id. ¶83) and that "[t]he Import Ban arbitrarily and

3

without justification denies" out-of-state mountain lion hunters the right to import harvested mountain lions into California while allowing other harvested animals to be imported. (Id.)

## II.   LEGAL STANDARD

When deciding a Rule 12(b)(6) dismissal motion, all well-pleaded facts in the complaint are "accepted as true", Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)), and a judge draws "all reasonable inferences therefrom in the pleader's favor." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011); Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012)("For purposes of a motion to dismiss, we accept all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmoving party."). Under this pleading standard, a judge does "not accept legal conclusions in the complaint as true, even if [they are] cast in the form of factual allegations." Lacano Inv., LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014) (internal quotation marks omitted).

Generally, a federal court "'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" United States v. Corinthian Colls., 655 F.3d 984, 998 (9th Cir. 2011) (quoting Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001)). However, well-pleaded allegations of material facts "may [be] augment[ed]" by "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley, 657 F.3d at 46; see also United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("[a

federal] court may . . . consider certain materials [including] documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment.")

### III. CONSIDERATION OF DOCUMENTS BEYOND THE PLEADINGS

Defendants include in their motion a request that judicial notice be taken of exhibit A, which is attached to their request. Exhibit A is the text of the California Ballot Pamphlet for Proposition 117, which contains the Import Ban. This pamphlet includes the argument that mountain lion hunting is "cruel and unnecessary." (Defs.' Req. for Judicial Notice ("Defs.' RJN") Ex. A, p. 42, ECF No. 42-1.) The California Ballot Pamphlet for Proposition 117 is part of the legislative history of the Import Ban. "Legislative history is properly a subject of judicial notice." Anderson v. Holder, 673 F.3d 1089, 1094 n. 1 (9th Cir. 2012) (citing Chaker v. Crogan, 428 F.3d 1215, 1223 n. 8 (9th Cir. 2005). Therefore, the request that judicial notice be taken of Defendants' exhibit A is granted.

Amici request that judicial notice be taken of exhibits A, B and C attached to their Request for Judicial Notice. (Req. for Judicial Notice In Supp. Of Amicus Curiae Br. ("Amici's RJN"), ECF No. 43-3.) Amici contend that Exhibit A is a "pamphlet prepared . . . for the voting public analyzing measures that . . . appear[ed] on the ballot in the State's 1996 primary election, including Proposition 197, a measure that sought to amend the [Import Ban] at issue in this litigation [and ultimately failed]." (Id. at 3:1-4.) Amici argue that "[a]s part

1 | of the legislative history for the Mountain Lion Prohibition,
2 | Exhibit A is a proper matter for judicial notice." (Id. at 3:6-
3 | 7.) Amici have failed to demonstrate that the pamphlet regarding
4 | Proposition 197 is part of the legislative history of the Import
5 | Ban, therefore this portion of the judicial notice request is
6 | denied. Exhibits B and C are newspaper articles containing
7 | discussion of the policy changes and public discourse leading up
8 | to the passage of Proposition 117. Amici argue they "rely on
9 | these published articles to establish that various bases and
10 | purposes for Propositions 117 were presented to the public,
11 | including arguments specifically relating to mountain lion
12 | hunting[; and that the Court] may take judicial notice of
13 | publications introduced to 'indicate what was in the public realm
14 | at the time, not whether the contents of those articles were in
15 | fact true.'" (Id. 3:14-18) citing and quoting Von Saher v. Norton
16 | Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir.
17 | 2010). Judicial notice is taken of Amici's exhibits B and C
18 | solely for purpose of ascertaining information in the public
19 | realm at the time the ballot measure was submitted to the voters.
20 |     Plaintiff includes in its Opposition a request that
21 | judicial notice be taken of exhibits A to and including M, which
22 | are attached to Plaintiff's request.
23 |     Exhibits A through J are printouts of documents found
24 | on the websites of state and federal agencies. (Pl.'s Req. for
25 | Judicial Notice ("Pl.'s RJN") 5:4-6, ECF No. 48.)
26 |     Plaintiff argues exhibits A, C, D, E, F, G and I
27 | support Plaintiff's argument that the Import Ban has a
28 | substantial monetary impact on interstate commerce. Plaintiff

argues exhibit A "is an U.S. Department of Labor, Bureau of Labor Standards ("DOL") website page that allows one to calculate the present value of an amount of money from a past year." (Id. 6:2-3.) Plaintiff argues that exhibits C through G "are documents from the websites of various state wildlife agencies that demonstrate that states that allow mountain lion hunting, including by non-residents, regularly do not fill their quotas for mountain lions." (Id. 6:7-9.) "Exhibit I is a document from the U.S. Department of the Interior and U.S. Department of Commerce (Census Bureau) that calculates there were 377,000 resident California hunters in 2011." (Id. 6:16-18.) Exhibit I is available at the Census Bureau's website. (Id. 6:18 n. 3.)

Plaintiff argues it "intends to use" the contents of exhibits B and H to further its argument in "response to the State Defendant's purported justification for the Import Ban." (Id. 7:3-6.) "Exhibits B and H are documents from the Department [of Fish and Game's] official website." (Pl.'s RJN 6:17-19.) Plaintiff argues that exhibit B "provides information about the abundance and status of mountain lions in California." (Id. 6:24-25.) Plaintiff further argues exhibit H is "a chart prepared by the Department [of Fish and Wildlife] concerning the number of hunting licenses issued by the state from the years 2010-2015." (Pl.'s RJN 7:1-3.)

Plaintiff argues that exhibit J can be found on the California Department of Fish and Wildlife's website and helps demonstrate that California allows "the same hunting methods" used to hunt Mountain Lions that are used to hunt "numerous other species." (Id. 8:2-7.) Plaintiff contends "Exhibit J is the Guide

7

to Hunting Wild Pigs in California, [and that it] states that hunters can use dogs to hunt feral pigs." (Id. 7:24-8:1.)

"It is appropriate to take judicial notice of [the referenced public website] information, [since] it was made publicly available by government entities . . . , and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010). Therefore, judicial notice is taken of Plaintiff's Exhibits A to and including J.

Plaintiff also requests that judicial notice be taken of Plaintiff's exhibits K, L and M. Exhibits K through M "are newspaper accounts of incidents involving mountain lions in California". (Pl.'s RJN 8:9.) Plaintiff argues that exhibits K through M "help establish that Safari Club has a good faith basis for asserting that the Department uses dogs . . . to track mountain lions" and therefore exhibits K through M help prove "that the use of dogs to pursue game is not cruelty to animals as the State itself is using dogs to track and kill mountain lions." (Id. 8:10-16.) This request has not been opposed and therefore judicial notice is taken of exhibits K through M.

**A. Equal Protection Clause**

Defendants argue Plaintiff's equal protection claim is premised solely on "conclusory allegations [which] do not satisfy [P]laintiff's pleading burden . . . to state a cause of action for violation of the Equal Protection Clause." (Mot. 17:15-16.) Specifically, Defendants argue:

The people [of California have] . . .

>       determined that the hunting of mountain lions
>       is cruel and unnecessary . . . [; and] [i]n
>       keeping with these findings, California has
>       determined that the mountain lion is a
>       specially protected mammal under the laws of
>       this state and that it should be unlawful to
>       take, injure, possess, transport, import, or
>       sell any mountain lion or part of a mountain
>       lion.

(Id. 17:27-18:3 (citing Cal. Fish & Game Code §4800).)

Defendants contend that because the Import Ban is "rationally related to the State's interest in conserving and protecting mountain lions and in the prevention of animal cruelty, [P]laintiff cannot state an equal protection claim as a matter of law." (Id. at 18:12-14.)

Plaintiff counters that mountain lion hunting is not animal cruelty and thus this "purported justification fails." (Pl's. Opp'n ("Opp'n") 31: 23-24, ECF No. 50.) Plaintiff asserts the prevention of animal cruelty justification is a post hoc justification that was not considered by the voters. Further Plaintiff alleges in the FAC that the Import Ban is "arbitrar[y] and without justification" because California allows "others to engage in the hunting of numerous other protected and unprotected species without restrictions as to importation, transportation, and possession within California." (FAC ¶82 9-12.) Plaintiff argues "the Import Ban serves no legitimate state interest, and is not rational." (Opp'n 33:8.)

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne

Living Center, 473 U.S. 432, 439 (1985). However, "[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one person or another, with resulting disadvantage to various groups or persons." Romer v. Evans, 517 U.S. 620, 631 (1996); see also Rinaldi v. Yeager, 384 U.S. 305, 309 (1966) (holding that "the Constitutional demand is not a demand that a statute necessarily apply equally to all persons . . . legislation may impose special burdens upon defined classes in order to achieve permissible ends.")

> The appropriate level of equal protection review in this case is the rational basis test, which applies to challenges of legislative acts that neither affect the exercise of fundamental rights, nor classify persons based on protected characteristics, such as race, alienage, national origin, or sex. Under this test, statutes are generally presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to legitimate state interest. In essence, a legislative classification subject to rational basis scrutiny must be wholly irrational to violate equal protection. The challenger bears the burden of negating every conceivable basis which might support the legislative classification, whether or not the basis has a foundation in the record.

Fields v. Legacy Health Sys. 413 F.3d 943, 955 (9th Cir. 2005) (citations omitted).

In "applying rational basis review . . . , any hypothetical rationale for the law [will] do." Witt v. Dep't of Air Force, 527 F.3d 806, 817 (9th Cir. 2008). Additionally legislative action can pass rational basis review "even when there is an imperfect fit between means and ends." Heller v. Doe,

509 U.S. 312, 321 (1993).

Plaintiff fails to plausibly plead facts in the FAC that undermine the legitimacy of California's interest in preventing cruelty to mountain lions. Whether or not animal cruelty was the formally stated purpose of the legislation is immaterial since "[i]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993).

In addition, California's allowance of similar hunting methods employed against other animals is not sufficient to defeat rational basis review since "reform may take one step at a time" to prevent perceived harm. Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489 (1955) (internal citations omitted) (upholding a statute challenged under the Equal Protection Clause, reasoning that "[legislative] reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind . . . [t]he legislature may select one phase of one field and apply a remedy there, neglecting the others"); see also Minn. v. Clover Leaf Creamery Corp., 449 U.S. 456, 466 (1981) (quoting City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976)) (holding a legislature may "adopt[] regulations that only partially ameliorate a perceived evil and defer[] complete elimination of the evil to future regulations.")

For the stated reasons Defendants' motion to dismiss Plaintiff's Equal Protection Clause claim is granted.

### B. Dormant Commerce Clause

Defendants also seek dismissal of Plaintiff's dormant Commerce Clause claim arguing: "[P]laintiff has failed to allege a substantial burden on interstate commerce," as required to state a plausible claim under the dormant Commerce Clause. (Mot. 9:25.) Defendants further contend that even assuming arguendo that Plaintiff could plausibly allege a substantial burden "any burdens on interstate commerce caused by the [Import Ban] are not 'clearly excessive' to its putative benefits" as required to plausibly allege this claim. (Id. 9:26-28.)

Plaintiff counters that the Import Ban is "a substantial burden on interstate commerce that outweighs the illusory and tenuous local interests purportedly served by the import ban." (Opp'n 11:7-9.)

Plaintiff alleges in its FAC:

> [T]he impact on interstate commerce is significant on an annual basis and even more excessive when considered in light of the commerce that would occur immediately after the Import Ban was lifted, combined with the commerce lost over the history of the Import Ban and expected continued duration of the ban.

(FAC ¶ 75.)

Plaintiff further alleges in the FAC that "the adverse impacts on interstate commerce . . . are clearly excessive in light of the asserted local interest the State Defendants might claim or have claimed is advanced by the Import Ban[;]" (Id. ¶ 75) "[m]ountain lion hunting is not animal cruelty" and "[t]he State has not adopted prevention of alleged animal cruelty as the purpose for the Import Ban." (Id. ¶ 76)

12

Plaintiff alleges in the FAC:

> [T]he substantial impacts on interstate commerce are clearly excessive in relation to the State's putative interest in habitat and wildlife conservation, health and safety of its residents, and alleged concern that legal mountain lion hunting in other states is 'animal cruelty,' in part because these purposes are illusory or nonexistent . . . .[T]he State can promote [any legitimate and non-illusory state interest] . . . with a lesser impact on interstate activities."

(Id. ¶76:16-20; ¶77: 23.)

> The Commerce Clause provides that "[t]he Congress shall have Power ... [t]o regulate Commerce ... among the several States." Art. I, § 8, cl. 3. Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.

Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or., 511 U.S. 93, 98 (1994).

> This limitation on state power has come to be known as the dormant Commerce Clause.
>
> Modern dormant Commerce Clause jurisprudence primarily "is driven by concern about economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." "The principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." "The central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism," because these are the "laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." Thus, a corollary concern of the dormant Commerce Clause is that "this Nation is a common market in which state lines cannot be made barriers to the free flow of both raw materials and finished goods."

13

> Given the purposes of the dormant Commerce Clause, it is not surprising that a state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce. A critical requirement for proving a violation of the dormant Commerce Clause is that there must be a substantial burden on interstate commerce. Most regulations that run afoul of the dormant Commerce Clause do so because of discrimination, but in a small number of dormant Commerce Clause cases courts also have invalidated statutes that imposed other significant burdens on interstate commerce. These other significant burdens on interstate commerce generally result from inconsistent regulation of activities that are inherently national or require a uniform system of regulation. A classic example of this type of regulation is one that imposes significant burdens on interstate transportation.
>
> Although dormant Commerce Clause jurisprudence protects against burdens on interstate commerce, it also respects federalism by protecting local autonomy. Thus, the Supreme Court has recognized that "under our constitutional scheme the States retain broad power to legislate protection for their citizens in matters of local concern such as public health" and has held that "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States."

Nat'l Ass'n of Optometrists & Opticians v. Harris 682 F.3d 1144, 1147-48 (9th Cir. 2012) (citations omitted).

"[Ninth Circuit] precedents . . . preclude any judicial 'assessment of the benefits of [a state] law[ ] and the . . . wisdom in adopting' it unless the state statute either discriminates in favor of in-state commerce or imposes a 'significant burden on interstate commerce.'" Chinatown Neighborhood Ass'n v. Harris, 794 F.3d 1136, 1146 (9th Cir. 2015) (quoting Nat'l Ass'n of Optometrists, 682 F.3d at 1156). "Here, . . . [P]laintiff[] do[es] not allege the [Import Ban] has any

14

discriminatory effect, and [it] cannot establish a significant burden on interstate commerce." Id.; see also Chinatown Neighborhood Ass'n, 794 F.3d at 1147 (finding "no significant interference with interstate commerce" because the challenged statute banning the importation of shark fins did "not interfere with activity that is inherently national or that requires a uniform system" and "[t]he purpose of the Shark Fin Law is to conserve state resources, prevent animal cruelty, and protect wildlife and public health").

Further, Plaintiff does not allege facts showing that the hunting of mountain lions and showcasing them as trophies is "inherently national" nor that it requires a "uniform system of regulation." Nat'l Ass'n of Optometrists, 682 F.3d at 1148. Although Plaintiff points to lost profits resulting from the Import Ban, "[e]vidence that interstate . . . commerce is in some way affected by the [Import Ban] is not enough to meet [Plaintiff's] burden." Pac. Nw. Venison Producers v. Smitch, 20 F.3d 1008, 1015 (9th Cir. 1994).

The Ninth Circuit has held that when no significant burden on interstate commerce is found it is "inappropriate to determine [the law's] constitutionality . . . based on our assessment of the benefits of th[e] law [ ] and the state's wisdom in adopting [it]." Nat'l Ass'n of Optometrists 682 F.3d at 1156-57; see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 952 (9th Cir. 2013)(finding an inquiry into "whether the benefits of the challenged laws are illusory" unwarranted because the regulation of the *foie gras* market is not inherently national). Since Plaintiff has failed to

allege a substantial burden on interstate commerce sufficient to state a plausible claim under the Dormant Commerce Clause, it would be improper for the Court to examine the benefits of the Import Ban. Therefore, Defendants' motion to dismiss Plaintiff's Commerce Clause claim is granted.

## IV.  CONCLUSION

For the stated reasons, Defendants' motion to dismiss is GRANTED. However, Plaintiff is granted fourteen (14) days leave from the date on which this order is filed to file an amended complaint addressing the referenced deficiencies in any dismissed claim.

Dated: January 5, 2016

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge